Westlaw.

Slip Copy                                                                                                   Page 1

Slip Copy, 2006 WL 1548968 (W.D.Ky.)
**(Cite as: Slip Copy)**

C
Briefs and Other Related Documents
Railey v. Cooperative Ben. Adm'rs, Inc.W.D.Ky.,2006.Only the Westlaw citation is currently available.
United States District Court, W.D. Kentucky, Owensboro Division.
Theresa A. RAILEY, Plaintiff
v.
COOPERATIVE BENEFIT ADMINISTRATORS, INC., and National Rural Electric Cooperative Association Group Benefits Program, Defendants.
**Civil Action No. 4:05CV-104-M.**

June 5, 2006.

Charles L. Lamar, Jr., Clifton A. Boswell, Charles L. Lamar, PLC, Charles S. Wible, Charles S. Wible Law Offices, P.S.C., Owensboro, KY, for Plaintiff.
John Jay Range, Hunton & Williams LLP, Washington, DC, R. Michael Sullivan, Sullivan, Mountjoy, Stainback & Miller, P.S.C., Owensboro, KY, for Defendants.

*MEMORANDUM OPINION AND ORDER*
JOSEPH H. McKINLEY, JR., Judge.
*1 This matter is before the Court on a motion by Defendants, Cooperative Benefit Administrators, Inc. and National Rural Electric Cooperative Association Group Benefits Program [DN 27], for an entry of judgment on the administrative record. Also before the Court is a motion by Plaintiff, Theresa A. Railey [DN 24], for an entry of judgment. Fully briefed, these matters stand ripe for decision. For the following reasons, Plaintiff's motion for an entry of judgment is **GRANTED,** and Defendants' motion for an entry of judgment on the administrative record is **DENIED.**

**I. BACKGROUND**

This action, brought under section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), arises out of a claim for total disability benefits by Plaintiff, Theresa A. Railey ("Railey"). Plaintiff made her claim to recover benefits under a long-term disability plan sponsored by Defendant, National Rural Electric Cooperative Association (" NRECA"), and administered by the other Defendant in this action, NRECA's wholly-owned subsidiary, Cooperative Benefit Administrators, Inc. ("CBA"). Plaintiff had also filed a claim against her employer, Kenergy Corporation ("Kenergy"), but the Court dismissed that claim.

In a declaration, Ted Nelson ("Nelson"), President of CBA, clarified the relationship between the remaining Defendants, as well as Kenergy. Kenergy is a member of NRECA and adopted the NRECA Group Benefits Program for its employees. NRECA has at all times delegated full and final authority to CBA to interpret the provisions of its plans. The Plan at issue in this case is the NRECA LTD Plan (the "Plan"), an "employee welfare benefit plan," which provides long-term disability benefits to employees of rural electric cooperatives that elect to participate in the Plan through a trust fund called the NRECA Group Benefits Trust. Neither CBA nor NRECA have a financial stake in the outcome of the benefit claims that CBA adjudicates, as benefits under the NRECA LTD Plan are paid from the Trust, and not from CBA's or NRECA's own assets.

At Kenergy, Plaintiff was employed as manager of member accounts. Her job required approximately two to three hours of walking per day, one to two hours of standing per day, and five to six hours of sitting per day. Plaintiff participated in the Plan through her employment at Kenergy. By virtue of her participation, Plaintiff was a candidate for longterm disability benefits which provide 66 2/3% of monthly earnings, but no more than $10,000.00 per month and no less than $65.00 per month, offset by other benefits she may receive, upon becoming "

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                           Page 2

Slip Copy, 2006 WL 1548968 (W.D.Ky.)
**(Cite as: Slip Copy)**

totally disabled." Under the Plan, 'Totally Disabled ' means that the Participant is both:
(I) due to sickness or accidental bodily injury
(A) completely unable to perform any and every duty pertaining to the Participant's occupation with the Participating Cooperative, and
(B) after two years measured from the end of the Benefit Waiting Period, completely unable to engage in any and every gainful occupation for which the Participant is reasonably fitted by education, training or experience, and
*2 (ii) not engaged in any Gainful Occupation and is not confined in a penal institution or other house of correction as a result of conviction for a criminal or other public offense.

Railey had been employed with Kenergy or its predecessors for thirty-one years prior to July 9, 2003, when she took an indefinite leave of absence due to numerous medical conditions.[FN1] On that date, Plaintiff's regular family physician, Dr. Jeffrey Hofer, examined her and concluded that "she will probably have to go on Disability permanently." Plaintiff suffered from numerous conditions, including but not limited to, chronic pancreatitis, dyslipidemia, fibromuscular dysplasia of the internal carotid arteries and right renal artery, migraines, extremely elevated triglycerides, chronic cholecystitis and cholesterolosis, fibromyalgia, hypokalemia, diffuse myositis, lumbar radiculitis, chronic gastritis, restless leg syndrome, degenerative joint disease of the cervical spine, and anxiety. On December 16, 2003, Plaintiff completed a claim for benefits under the Plan, in which she set forth her numerous medical problems as well as a description of her job duties. She also alerted CBA to the fact that she was in the process of applying for disability from the Social Security Administration ("SSA"). In her claim, Plaintiff noted that she was under the regular care of Beth A. Holmes, D.O. ("Dr.Holmes"), Joseph Zerga, M.D. ( "Dr.Zerga"), and L. Creed Pettigrew ("Dr.Pettigrew "). Dr. Holmes stated that Plaintiff was totally disabled as of the date of the evaluation but that she could be re-evaluated in six months. A nurse analyst for CBA reviewed the records from the three doctors and determined that there was no objective medical information to support Plaintiff's claim for total disability. CBA issued a formal denial of Plaintiff's claim on January 28, 2004.

> FN1. It is undisputed that Plaintiff has not worked since July 9, 2003.

The appeal procedure for the NRECA LTD Plan is a two-step process, the second of which is voluntary. If a claim is denied, the participant must appeal to the CBA Appeal Administrator. If the CBA Appeal Administrator denies the claim, the participant has the option of an additional appeal to the three member Appeal Committee. In this event, the Appeal Committee makes the final determination on the participant's benefit claim. According to Nelson, the members of the Appeal Committee do not have a personal or financial interest in the outcome of the appeal.

Plaintiff appealed her claim on February 11, 2004. In her appeal letter, she detailed that she spent July, August, and September of 2003 at home in bed due to pain. She also wrote that she "wake[s] up 4-5 times a night with pain." Prior to rendering a decision on Plaintiff's Appeal, CBA forwarded her file to ProPeer Resources, Inc. ("ProPeer") for an independent medical review. J. Kevin Lee, M.D. (" Dr.Lee") reviewed Plaintiff's file and submitted a report dated March 8, 2004 in which he concluded that Railey was not totally disabled. In his report, Dr. Lee stated as follows:
*3 While it is evident that [Plaintiff] is not in good health and has multiple organ problems, it is nonetheless not at all substantiated that she is completely incapable of performing minimal sedentary duties. All of her disorders taken by themselves or as a whole do not in and of themselves constitute evidence of complete disability but could if one or more were severely active or functionally limiting. There is no evidence of that presented.

The CBA Appeal Administrator formally denied Plaintiff's appeal of the initial claim by letter dated March 17, 2004. The letter concluded that the objective medical documentation showed that Plaintiff "does not meet the definition of total disability regarding her own occupation as manager of member accounts." CBA also advised Plaintiff of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                    Page 3

Slip Copy, 2006 WL 1548968 (W.D.Ky.)
**(Cite as: Slip Copy)**

her right to another appeal.

On May 12, 2004, Plaintiff appealed the denial of benefits to the Appeal Committee and submitted additional medical records. CBA again employed a medical reviewer from ProPeer, Jayne E. Clark, M.D. ("Dr.Clark"), to examine Plaintiff's file. In her report, Dr. Clark stated that "[b]ased on the records available, [Plaintiff's] stated medical conditions would not grant her disability benefits. None of her medical problems listed should keep her from returning to employment with consideration of these records." Dr. Clark also found that "[t]he records do not clarify her cervical and lumbar problems to support her inability to regularly attend and perform the duties of her job as the manager of member accounts." Consequently, CBA formally denied Plaintiff's appeal on July 12, 2004, concluding that the information contained in the medical records and the opinions expressed by the independent medical consultants demonstrated that Plaintiff did not meet the definition of total disability for her own occupation.

Plaintiff's attorney, by letter dated July 15, 2004, submitted a psychological evaluation of Plaintiff by Robert W. Adams ("Dr.Adams"), Psy.d, a clinical psychologist. The Appeals Committee voluntarily reconsidered Plaintiff's appeal based on Dr. Adams' report, which found that Plaintiff had "high school reading recognition skills," and "significant problems with concentration," thus rendering her unable "to function as manager of an accounting department in a corporation at this time." The report, however, offered no reason as to why Plaintiff had problems concentrating. CBA forwarded the psychological evaluation to Dr. Clark, who concluded that Plaintiff's subjective complaints of "concentration problem and mind wandering" were not sufficient to justify total disability. Dr. Clark also recommended that to the extent Plaintiff is "now trying to claim disability on the basis of psychological problems, I suggest you have a psychiatrist review this claim." Based on that recommendation, Samuel M. Rock, Ph.D. ("Dr.Rock"), a licensed psychologist, evaluated Plaintiff's claim. Dr. Rock concluded that "there is no objective evidence that the claimant is disabled psychologically ... the documentation submitted does not establish a causal relationship between the patient's psychological status and her alleged inability to perform her job duties."

*4 Plaintiff's attorney subsequently submitted a letter dated August 20, 2004 from Dr. Pettigrew, in which he concluded on August 6, 2004 that "the complexity of [Plaintiff's] overlapping medical problems will prohibit her return to the workplace and that she has no capacity for vocational rehabilitation." Plaintiff also requested that the Appeal Committee hold open the appeal pending a disability determination by the Social Security Administration. By letter dated September 1, 2004, CBA informed Plaintiff that the Appeal Committee would reconsider Plaintiff's appeal based only on the information she had submitted on July 15, 2004 and on August 20, 2004.[FN2]

> FN2. Plaintiff argues that the Appeals Committee did not consider the letter of Dr. Pettigrew dated August 20, 2004. Defendants note that they did consider the letter but ultimately were not persuaded.

By a letter dated September 30, 2004, the Appeal Committee reaffirmed the denial of the Plaintiff's claim. The Appeals Committee determined that, based on the information submitted, "there is no objective evidence that Plaintiff is disabled psychologically" because "the documentation submitted does not establish a causal relationship between [her] psychological status and her alleged inability to perform her job duties" as manager of member accounts. Based on this finding, and its previous review of Plaintiff's complete file, the Appeal Committee determined that Plaintiff did not meet the NRECA LTD Plan's definition of total disability. The Appeal Committee further declined the request by Plaintiff's attorney to hold open the record pending a disability decision by the SSA. Thus, Plaintiff had exhausted her administrative remedies. The SSA subsequently rendered a fully favorable decision for Plaintiff on January 11, 2005. The SSA determined that Plaintiff had been totally disabled as of July 9, 2003. Plaintiff filed her case before the Court on July 8, 2005, and both parties now move for judgment.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## II. STANDARD OF REVIEW

In ERISA cases, federal courts review a plan administrator's denial of benefits de novo "unless the benefit plan gives the plan administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Wilkins v. Baptist Healthcare Sys., Inc.,* 150 F.3d 609, 613 (6th Cir.1998)(citing *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989)). When a plan administrator has discretionary authority to determine benefits, courts review a decision to deny benefits under "the highly deferential arbitrary and capricious standard of review." *Yeager v. Reliance Standard Life Ins. Co.,* 88 F.3d 376, 380 (6th Cir.1996).

"The arbitrary and capricious standard is the least demanding form of judicial review of administrative action. When applying the arbitrary and capricious standard, the Court must decide whether the plan administrator's decision was rational in light of the plan's provisions. Stated differently, when it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Williams v. International Paper Co.,* 227 F.3d 706, 712 (6th Cir.2000)(internal citations and quotations omitted). "[A]n ERISA benefit plan administrator's decisions on eligibility for benefits are not arbitrary and capricious if they are 'rational in light of the plan's provisions.' " *Miller v. Metro. Life Ins. Co.,* 925 F.2d 979, 984 (citing *Daniel,* 839 F.2d 263, 267).

*5 In this case, the NRECA Group Benefits Program specifically delegated to CBA "final, absolute, conclusive and exclusive" discretionary authority "to interpret and construe the Plans" and "to determine coverage and eligibility for benefits under the Plans ." Thus, the highly deferential arbitrary and capricious standard of review is appropriate. Plaintiff must show that CBA can offer no rational explanation for its decision that she was unable to return to her own job, and if there is credible evidence supporting CBA's determination, the Court must rule in CBA's favor. *McDonald v. Western-Southern Life Ins. Co.,* 347 F.3d 161, 169 (6th Cir.2003).

## III. DISCUSSION

Plaintiff argues that, based on the evidence in the record, CBA arbitrarily and capriciously denied her claim for ERISA benefits. CBA contends that its decision was reasonable under the arbitrary and capricious standard. The parties raise a number of issues, including conflict of interest, adequacy of the file review, and the SSA disability determination, which the Court addresses below.

### A. Conflict of Interest of the Defendants

Plaintiff argues that CBA was tainted by a financial conflict of interest because of its relationship with NRECA. The Defendants contend that NRECA has no financial stake in the decisions of CBA.

A conflict of interest exists when the insurer both decides whether the employee is eligible for benefits and pays those benefits. *Gismondi v. United Techs. Corp.,* 408 F.3d 295, 299 (6th Cir.2005). However, such a conflict of interest does not displace the arbitrary and capricious standard of review, but instead it is simply a factor to consider when determining whether the administrator's decision to deny benefits was arbitrary and capricious. *Kalish v. Liberty Mut./Liberty Life Assurance Co. of Boston,* 419 F.3d 501, 506 (6th Cir.2005). In other words, the existence of a conflict of interest shapes the application of, but does not change, the 'arbitrary and capricious' standard of review. *Id.* When the operator of the Plan is both the insurer and the administrator, that situation creates a conflict of interest. *Id.* It has also been held that the subsidiary of a plan insurer in the capacity of ERISA claims administrator may have a disincentive to grant claims that the insurer would have to pay, notwithstanding the delegation of claim determinations to that subsidiary. *Vega v. Nat'l Life Ins. Serv. Inc.,* 188 F.3d 287, 295 n. 8 (5th Cir.1999) (en banc).

In this case, the Court acknowledges that NRECA and CBA are distinct entities, however, CBA is the wholly-owned subsidiary of NRECA. NRECA is the trade association of rural electric cooperatives that fund the Trust from which the benefits are paid.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                 Page 5
Slip Copy, 2006 WL 1548968 (W.D.Ky.)
**(Cite as: Slip Copy)**

The Court is not willing to ignore the possibility that CBA may have some incentive to decide in favor of its parent company, NRECA. The Court notes that such an inherent conflict is a factor in the arbitrary and capricious standard of review calculus.

### B. Conflict of Interest of ProPeer

*6 Plaintiff also argues that ProPeer had an incentive to make findings against Plan claimants. It is true that "[w]hen a plan administrator's explanation is based on the work of a doctor in its employ, we must view the explanation with some skepticism." *Kalish,* at 507 (citing *Moon v. Unum Provident Corp.,* 405 F.3d 373, 381-82) (6th Cir.2005)). A determination of bias "might be aided by empirical investigation." *Calvert v. Firstar Fin., Inc.,* 409 F.3d 286, 292 (6th Cir.2005). "[P]hysicians repeatedly retained by benefits plans may have an incentive to make a finding of 'not disabled' in order to save their employers money and preserve their own consulting arrangements." *Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 832 (2003) (internal citation omitted). Therefore, it is appropriate to consider this incentive as a factor in determining whether a plan administrator acted arbitrarily and capriciously in crediting the opinions of its paid experts.

Here, Plaintiff does not present any empirical data which would be helpful, such as whether ProPeer finds for plan administrators, especially CBA, at an abnormally high rate. However, the Court's eyebrow is raised by the fact that all three ProPeer physicians concluded from a file review that the Plaintiff was not disabled, despite the numerous and significant medical issues facing her. It also seems odd that not a single one of them thought it prudent to have the Plaintiff subjected to an independent medical examination. Despite the lack of empirical data, the Court views the opinions of the ProPeer physicians with some skepticism.

### C. File Review and Terms of the Plan

Plaintiff's main argument is that the file review, especially in light of CBA's reservation of the right to give Plaintiff an independent medical exam, was arbitrary and capricious. Plaintiff notes a troubling mismatch between the ultimate conclusions of the ProPeer doctors and the language of the Plan, which requires a participant to be unable to perform "any and every duty of her own occupation." Defendants argue that Plaintiff cannot meet that standard.

The general rule is that "when a plan administrator chooses to rely upon the medical opinion of one doctor over that of another in determining whether a claimant is entitled to ERISA benefits, the plan administrator's decision cannot be said to have been arbitrary and capricious." *Kalish,* 419 F.3d at 510 (quoting *McDonald v. Western-Southern Life Ins. Co.,* 347 F.3d 161, 169 (6th Cir.2003)). In *Kalish,* the Sixth Circuit also stated,

Whether a doctor has physically examined the claimant is indeed one factor
that we may consider in determining whether a plan administrator acted arbitrarily and capriciously in giving greater weight to the opinion of its consulting physician. *See Calvert,* 409 F.3d at 295 ( "We find that the failure to conduct a physical examination ... may, in some cases, raise questions about the thoroughness and accuracy of the benefits determination."). But "reliance on a file review does not, standing alone, require the conclusion that [a plan administrator] acted improperly." *Id.*
*7 *Kalish,* 419 F.3d at 508.

The court in *Kalish* then went on to note that though a plan administrator's reliance on an independent file review may not necessarily be arbitrary and capricious, a plan administrator's reliance on an inadequate file review could be a basis to deny a claim. *Id.* at 509. In particular, *Kalish* expressed concern about the lack of explanation as to how the plaintiff in that case could meet all of the job requirements of his former position. *Id.*

Both *Kalish* and *Calvert* placed great importance on the inadequacy of the file review in finding that the plan administrator acted arbitrarily and capriciously. In *Calvert,* the reviewer appeared to be ignorant about important parts of the plaintiff's medical history, leading the court to conclude that he had not actually done a thorough review of the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                          Page 6
Slip Copy, 2006 WL 1548968 (W.D.Ky.)
**(Cite as: Slip Copy)**

plaintiff's medical records. 409 F.3d at 296. The court found the physician hired by the plan administrator reached conclusions which were " incredible on their face." *Id.* Furthermore, although solely relying on an adequate file review is not problematic, "the failure to conduct a physical examination-especially where the right to do so is specifically reserved in the plan-may, in some cases, raise questions about the thoroughness and accuracy of the benefits determination." *Id.* at 295.

The other crucial issue in this case is the application of the definition of total disability. In *Kalish,* the plan language stated that a participant was disabled so long as "he is unable to perform *all* of the material and substantial duties of *his* occupation." 419 F.3d at 507. Thus, medical evidence showing that the plaintiff in Kalish could do sedentary work was insufficient, as his occupation required him to be active. *Id.* at 509.

Not only did the Defendants' physicians not personally examine the Plaintiff but they failed to relate their file only diagnoses to the Plaintiff's job descriptions. The diagnoses of Doctors Lee, Clark, and Rock all support that Plaintiff can perform sedentary work. However, Plaintiff's job requires more than sedentary work. She is required to walk for two to three hours per day and to stand for one to two hours per day. The ProPeer physicians all neglect to discuss the more active aspects of Plaintiff's job. Consequently, their file reviews were inadequate.

For instance, Dr. Lee stated that, "[w]hile it is evident that [Plaintiff] is not in good health and has multiple organ problems, it is nonetheless not at all substantiated that she is completely incapable of performing minimal sedentary duties." Dr. Lee only examined 18 pages of medical records. Dr. Lee does not at all comment on the more active aspects of Plaintiff's job and admits that he drew his ultimate conclusion as to her disability despite not having "a copy of the patient's job description available for review."

Dr. Clark notes that the Plaintiff's employer asked her to take disability leave because of Plaintiff's frequent absences from work due to illness. Dr. Clark acknowledges that "[c]ertainly over the past year, Theresa Railey as been significantly ill with numerous problems." Dr. Clark's report sets forth 18 health problems from which Plaintiff suffers. Yet, Dr. Clark concludes that Plaintiff can return to "her job as the manager of member accounts." Neither Dr. Clark's report nor any evidence in the record indicates the Plaintiff is exaggerating her symptoms or malingering, so how does Dr. Clark explain that for the past year, Plaintiff has been unable to perform every duty pertaining to her occupation? She simply does not.

*8 Finally, Dr. Rock makes no attempt to address Plaintiff's job duties, and, in fact, disregards evidence which suggests that she cannot perform even some of her sedentary duties. Dr. Rock wrote his report in response to the report of Dr. Adams. Dr. Adams indicated the Plaintiff had difficulty concentrating and could not even multiply seven by nine. Dr. Rock did not find Dr. Adams' report persuasive because Dr. Adams could not find a clear cause for Plaintiff's inability to concentrate and perform simple arithmetic problems. In his report, though, Dr. Rock admitted that "her multiple medications," as well as anxiety, could be potential causes. Despite acknowledging potential causes, Dr. Rock found no "causal relationship between the patient's psychological status and her alleged inability to perform her job duties." It does seem incredible on its face that a physician conducting a mere paper review could credit possible explanations for a Plaintiff's inability to concentrate and then completely disregard those explanations for a lack of causation. Perhaps the explanation comes from the fact that besides Dr. Adams report, the only other reports Dr. Rock reviewed were those of ProPeer physicians.

This is exactly the type of case where reliance on file review alone is inadequate. This case is complicated by the vast number of Plaintiff's overlapping medical problems. The Plaintiff's attending physicians, Dr. Hofer, Dr. Holmes, Dr. Pettigrew, and Dr. Adams, may not know exactly how all these problems are working together to affect the Plaintiff, but they know that they are. They know their patient. They have examined her. They know what she does at work and their findings

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                          Page 7
Slip Copy, 2006 WL 1548968 (W.D.Ky.)
**(Cite as: Slip Copy)**

support that she is "totally disabled," as that term is defined in the Plan.

The Defendants argue that those conclusions are not supported by objectively verifiable evidence. The Court disagrees. Results of x-rays and CT scans are objective medical evidence. *Calvert,* 409 F.3d at 297. The records in this case reveal MRIs, CT scans, and numerous other objective findings which corroborate Plaintiff's health conditions. Plaintiff's physicians relied in part of these objective medical findings in drawing their conclusions. Plaintiff's physicians considered the disabling effect that the combination of these documented medical problems had on their patient. It does not appear that the ProPeer physicians did so.

**D. Social Security Finding**

Finally, the Plaintiff has also moved to supplement the administrative record with the January 11, 2005 decision of the SSA awarding her disability benefits, alleging that the failure to do so would be tantamount to a denial of due process. The Sixth Circuit limits a district court's review of a denial of benefits claim under section 502(a)(1)(B) of ERISA, 29 U.S.C. 1132(A)(1)(B) to consideration of only the evidence that was before the fiduciary or plan administrator at the time it decided to deny the claim for benefits. *Wilkins,* 150 F.3d at 616. In cases where courts in this circuit have been faced with the question of whether to consider an SSA determination after the final decision by a plan administrator, they have declined to do so. *Lee v. MBNA Long Term Disability & Benefit Plan,* No. 04-3105, 2005 U.S.App. LEXIS 4990, at *37 (6th Cir. Mar. 29, 2005); *Seiser v. Unum Provident Corp.,* No. 04-1177, 2005 WL 943697, at *3 (6th Cir. Apr. 22, 2005); *Storms v. Aetna Life Ins. Co.,* No. 04-5621, 2005 U.S.App. LEXIS 15951, at *10 (6th Cir. Jul. 29, 2005). Moreover, even if the Court could consider the SSA's determination, "an ERISA plan administrator is not bound by an SSA disability determination when reviewing a claim for benefits under an ERISA plan." *Whitaker v. Hartford Life & Accident Ins. Co.,* 404 F.3d 947, 949 (6th Cir.2005).

*9 Therefore, the Court will not supplement the record with the Social Security Administration decision. However, it is difficult to see how the Defendants would have been prejudiced by waiting for the SSA determination. Their unwillingness to do makes one wonder if they were afraid of the result.

**IV. CONCLUSION**

The Defendant complains that the Plaintiff's physicians opinions regarding disability are simply conclusory and without foundation. Yet, the same can be said about the ProPeer Physicians opinions. At least the opinions of the Plaintiff's physicians are based on first hand physical examination of the patient. A decision to discount these opinions in a medically complex case of a woman who has been unable to work for the past year due to significant illness from a variety of medical problems in favor of opinions based solely on a review of a file strikes the undersigned as arbitrary.

Factoring the inherent conflict of interest between the parent and the subsidiary, the inclination of the hired ProPeer physicians to decide matters favorable to their employer, the inadequate file-only review, and the failure to consider the fact that Plaintiff's occupation involved more than just sedentary work, all combine to persuade the Court that the Defendant acted arbitrarily and capriciously in denying the Plaintiff disability benefits for the first 24 months of disability. For the foregoing reasons, Plaintiff's motion for an entry of judgment [DN 24] is **GRANTED,** and Defendants' motion for an entry of judgment on the administrative record [DN 27] is **DENIED.**

W.D.Ky.,2006.
Railey v. Cooperative Ben. Adm'rs, Inc.
Slip Copy, 2006 WL 1548968 (W.D.Ky.)

Briefs and Other Related Documents (Back to top)

• 2006 WL 1443511 (Trial Motion, Memorandum and Affidavit) Plaintiff's Response to Memorandum of Defendants (Apr. 7, 2006) Original Image of this Document (PDF)
• 2006 WL 1443510 (Trial Motion, Memorandum

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                          Page 8
Slip Copy, 2006 WL 1548968 (W.D.Ky.)
**(Cite as: Slip Copy)**

and Affidavit) Defendants' Response Memorandum in Opposition to Plaintiff's Motion for Judgment (Mar. 7, 2006) Original Image of this Document (PDF)
• 2006 WL 810945 (Trial Motion, Memorandum and Affidavit) Defendants' Response Memorandum in Opposition to Plaintiff's Motion to Supplement Administrative Record (Feb. 17, 2006) Original Image of this Document (PDF)
• 2005 WL 2890764 (Trial Motion, Memorandum and Affidavit) Reply in Support of Motion to Dismiss By Defendant Kenergy Corp. (Sep. 2, 2005) Original Image of this Document (PDF)
• 2005 WL 2577710 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Motion to Dismiss by Defendant Kenergy Corp. (Aug. 16, 2005) Original Image of this Document (PDF)
• 4:05cv00104 (Docket) (Jul. 8, 2005)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                                           Page 1

Not Reported in F.Supp.2d, 2006 WL 66721 (M.D.Fla.)
**(Cite as: Not Reported in F.Supp.2d)**

C
Briefs and Other Related Documents
Rementer v. Metropolitan Life Ins. Co.M.D.Fla.,2006.Only the Westlaw citation is currently available.
United States District Court,M.D. Florida.
Patricia REMENTER, Plaintiff,
v.
METROPOLITAN LIFE INSURANCE COMPANY, Defendant.
**No. 604CV11480RL22JGG.**

Jan. 10, 2006.

Gregory D. Swartwood, The Nation Law Firm, Longwood, FL, for Plaintiff.
Kelly J. H. Garcia, Ralph C. Losey, Akerman Senterfitt, Orlando, FL, for Defendant.

ORDER
CONWAY, J.

I. INTRODUCTION

*1 This cause comes before the Court for consideration of the Magistrate Judge's Report and Recommendation (Doc. 48) in this ERISA disability benefits denial case. The Magistrate Judge recommends that Metropolitan Life Insurance Company ("MetLife") be granted a final judgment on Plaintiff Patricia Rementer's claim. Although the Court concurs in many of the Magistrate Judge's conclusions, it respectfully declines to adopt the ultimate recommendation of entry of final judgment in MetLife's favor.

II. SUMMARY JUDGMENT IN ERISA CASES

At the outset, the Court reiterates what it has stated in recent cases of this type:
In an ERISA benefit denial case [subject to deferential review], ... in a very real sense, the district court sits more as an appellate tribunal than as a trial court. It does not take evidence, but, rather, evaluates the reasonableness of an administrative determination in light of the record compiled before the plan fiduciary." *Leahy v. Raytheon Co.,* 315 F.3d 11, 17-18 (1st Cir.2002) [FN1] (quoted with approval in *Curran v. Kemper Nat. Servs., Inc.,* No. 04-14097, 2005 WL 894840 *7 (11th Cir. Mar.16, 2005) (unpublished *per curiam* opinion)). Accordingly, "[w]here the decision to grant or deny benefits is reviewed for abuse of discretion, a motion for summary judgment is merely the conduit to bring the legal question before the district court and the usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply." *Bendixen v. Standard Ins. Co.,* 185 F.3d 939, 942 (9th Cir.1999).[FN2]

FN1. Although the First Circuit did not qualify the foregoing quote, this Court interprets the appellate court's statements as applying to those cases where a plan administrator has been granted discretion, rather than to those subject to *de novo* review.

FN2. What this means to the First Circuit is that "the district court must ask whether the aggregate evidence, viewed in the light most favorable to the non-moving party, could support a rational determination that the plan administrator acted arbitrarily in denying the claim for benefits." *Leahy,* 315 F.3d at 18.

*Fish v. Unum Life Ins. Co. of Am.,* No. 6:04-cv-1716-Orl-22JGG, 2005 WL 3186089 *13 (M.D.Fla. November 29, 2005) (order granting defendant's motion for summary judgment and denying plaintiff's cross-motion) (some footnotes omitted); *Bruce v. Metropolitan Life Ins. Co.,* No.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                          Page 2
Not Reported in F.Supp.2d, 2006 WL 66721 (M.D.Fla.)
**(Cite as: Not Reported in F.Supp.2d)**

6:04-cv-482-Orl-22JGG (M.D.Fla. Sept. 28, 2005) (order denying summary judgment and remanding matter to claims administrator for further consideration). Judges Whittemore, Presnell and Kovachevich of this Court have reached the same conclusion in orders addressing summary judgment motions. *See Providence v. Hartford Life & Acc. Ins. Co.,* 357 F.Supp.2d 1341, 1342 n. 1 (M.D.Fla.2005) (citing *Bendixen*) (Whittemore, J.); *Smorto v. 3DI Techs., Inc.,* 393 F.Supp.2d 1304, 1313 (M.D.Fla.2005) (citing *Providence* and *Bendixen*) (Presnell, J.); *Stenner-Muzyka v. Unum Life Ins. Co. of Am.,* No. 8:04-cv-984-T-17TBM, 2005 WL 1610708 *3 (M.D.Fla. Jul.7, 2005) (citing *Providence* and *Bendixen*) (Kovachevich, J.).

The Court recognizes, as it has in the past, that the Eleventh Circuit's unpublished *Curran* opinion represents merely persuasive authority, rather than binding precedent. *See* 11th Cir. R. 36-2 and I.O.P. 6. It is also true that there are Eleventh Circuit decisions, including published opinions, which apply the normal summary judgment rules to ERISA benefit denial cases. *See, e.g., Slomcenski v. Citibank, N.A.,*-F.3d-, 2005 WL 3423156 *5 (11th Cir. Dec.14, 2005) (applying ordinary summary judgment procedures to ERISA benefits claim). The Magistrate Judge aptly noted the existence of such authority. However, *Curran* is the only Eleventh Circuit decision of which this Court is aware that confronts this issue in the fashion addressed in *Leahy* and *Bendixen.*[FN3]

> FN3. However, *Curran* is not completely free from ambiguity. After implying that " the factual review standard applicable to summary-judgment review" is supplanted by the "the deferential review owed to the administrator in an ERISA case," 2005 WL 894840 *7, the appellate court ultimately concluded that Curran "failed to show genuine issues of material facts to preclude summary judgment under the proper review standard," *id.* at *9.

*2 In a case like this, where the ultimate issue to be determined is whether there is a reasonable basis for a claims administrator's benefits decision, it is difficult to ascertain how the "normal" summary judgment rules can sensibly apply. After all, the ultimate question is not whether the claimant is truly disabled, but whether there is a reasonable basis in the record to support the administrator's decision on that point. In other words, conflicting evidence on the question of disability cannot alone create an issue of fact precluding summary judgment, since an administrator's decision that rejects certain evidence and credits conflicting proof may nevertheless be reasonable. More fundamentally, perhaps, if the "normal" summary judgment rules apply to these kinds of cases, and it is determined that an issue of material fact exists, thereby precluding summary judgment, what is the next step in the case resolution process? In other kinds of cases, the next step would be a trial. But what is this Court to "try" when it ordinarily cannot consider evidence outside the administrative record,[FN4] and the ultimate issue to be determined is whether there is a reasonable basis in that record for the fiduciary's decision? These considerations lead this Court to believe that unless it receives contrary guidance from the Eleventh Circuit, the proper method of evaluating these cases is as expressed in *Curran, Leahy* and *Bendixen.*

> FN4. The Court recognizes that even under abuse of discretion review, there may be some instances when evidence beyond the administrative record (e.g., evidence relevant to a plan administrator's conflict of interest) may be relevant. *See Cerrito v. Liberty Life Assurance Co. of Boston,* 209 F.R.D. 663, 664 (M.D.Fla.2002) (in the context of a discovery ruling, identifying purposes for which matters outside the administrative record might be relevant).

III. ANALYSIS

Turning to the merits, the Court agrees with the Magistrate Judge's articulation of the six-step analysis set forth in *Williams v. BellSouth Telecomms., Inc.,* 373 F.3d 1132, 1138 (11th Cir.2004), his conclusion that the arbitrary and capricious standard of review applies, and his initial

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                          Page 3

Not Reported in F.Supp.2d, 2006 WL 66721 (M.D.Fla.)
**(Cite as: Not Reported in F.Supp.2d)**

determination that MetLife's benefit denial decision was *de novo* wrong. However, this Court parts company with the Magistrate Judge's conclusion that MetLife's decision must be upheld.

As the Magistrate Judge noted, the November 2003 Transferable Skills Analysis ("TSA"), which MetLife cited in denying Rementer's claim, omitted functional limitations identified by Rementer's treating physician and relied instead on the conclusions of MetLife's paid "independent" medical consultant. However, this circumstance alone would not render MetLife's decision unreasonable. What was patently unreasonable is that in denying Rementer's claim, MetLife purported to rely on the opinion of another hired medical consultant, Dr. Ito, yet ignored Dr. Ito's specifically-identified limitation of no "prolonged sitting (ie needs to change position)." Rementer AR 175. In fact, MetLife's June 29, 2004 final denial letter mentioned every single restriction identified by Dr. Ito except the one concerning sitting. This omission is telling. MetLife essentially accepted all of Dr. Ito's findings except the one that was the most damaging to MetLife's position. While it is possible MetLife could have totally rejected Dr. Ito's opinions and still rendered a reasonable decision, it was arbitrary and capricious for the insurer to "cherry-pick" among the limitations specifically identified by Dr. Ito.

*3 Since MetLife chose to rely on Dr. Ito's findings in rejecting Rementer's claim, it was also arbitrary and capricious for the insurer to utilize the "old" vocational assessment without taking into account the additional limitations identified by Dr. Ito, particularly regarding prolonged sitting. The November 2003 TSA assumed that Rementer could engage in purely sedentary work "where lifting and carrying was limited to not more than 10 pounds." Rementer AR 120. Moreover, the assessment contained the following definition of "sedentary work":

Exerting up to 10 pounds of force occasionally and/or a negligible amount of force frequently to lift, carry, push, pull or otherwise move objects, including the human body. *Sedentary work involves sitting most of the time but may involve walking or standing for brief periods of time.* Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.

*Id.* (emphasis added).

However, in June 2004, Dr. Ito identified restrictions more significant than assumed in the earlier TSA. After discussing Rementer's daily activities, Dr. Ito stated: "While this level of activity would support [the] ability to participate in [the] full range of sedentary activities, the objective medical would support pain could be a limiting factor for consistency in terms of these activities, intolerance to physical therapy and medications." Rementer AR 175. Dr. Ito then identified the following specific restrictions:

Restrictions in terms of lifting greater than 10 lb on a rare occasion, repetitive push-pull, walking on uneven surfaces, climbing, stooping and crawling, bending only [on] an occasional basis, overhead work and work requiring rapid or quick neck rotation, extension, or bending, and prolonged sitting (ie needs to change position) are supported with the documentation of her cervical and lumbar spondylitic changes and left lower extremity radiculopathy. The limiting issue appears to be pain which is supported by the current objective medical on file, but certainly is subjective in nature in terms of severity.

*Id.*

The old TSA did not take into account the restriction of no prolonged sitting and the limitations pain imposed on Rementer's ability to work. These deficiencies rendered the old vocational assessment essentially worthless. Since MetLife chose to rely on Dr. Ito's report in its denial letter, it was arbitrary and capricious for the insurer to base its denial on a vocational assessment that did not take into account the restrictions identified by Dr. Ito. As the Magistrate Judge noted, because " MetLife never re-presented these restrictions to a vocational expert," "[n]o vocational expert ever opined that a person with such additional limitations actually could work full time at the four alternate sedentary occupations that exist locally." Doc. 48 at 27. [FN5] Accordingly, there was no basis in the record for MetLife to conclude that Rementer could

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.