Brewster H. Jamieson, ASBA No. 8411122
LANE POWELL LLC
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone: 907-277-9511
Facsimile: 907-276-2631
Email:      jamiesonb@lanepowell.com
Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA AT ANCHORAGE

DANIELA VALENOTE,

                              Plaintiff,

v.

METROPOLITAN LIFE INSURANCE COMPANY,
and RIM ARCHITECTS (ALASKA), INC.,

                              Defendants.

Case No. 3:05-cv-00196-TMB

**DEFENDANTS' CROSS MOTION
FOR SUMMARY JUDGMENT**

## I.  INTRODUCTION

Defendants Metropolitan Life Insurance Company ("MetLife") and RIM Architects, Inc. (collectively "Defendants") hereby cross-move this Court for an Order dismissing Plaintiff Daniela Valenote's claims in their entirety.

Plaintiff seeks long-term disability ("LTD") benefits from MetLife after leaving her employment as an intern architect with RIM Architects in February 2003.  Plaintiff seeks LTD benefits under RIM Architects' employee welfare benefit plan (the "Plan") which is governed by the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 *et seq*. ("ERISA").  Plaintiff agrees that the plan confers discretion upon MetLife to determine eligibility for benefits.  As discussed herein, MetLife properly exercised its discretion in denying Plaintiff's benefits and reasonably determined after consulting one nurse manager and two independent board certified medical doctors that Valenote was not disabled under the terms of the Plan.  MetLife determined, upon exhaustive review that (a) Valenote and her attending physicians could provide no objective evidence that she was disabled from performing her own occupation, and (b) Valenote was

LANE POWELL LLC
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

not continuously disabled throughout the Plan's 90-day elimination period.  Despite Valenote's efforts to paint MetLife as tainted by self-interest in administering her claim, MetLife's decision that Valenote was not eligible for continued benefits must be affirmed under any standard of review.

## II.  FACTUAL BACKGROUND

By virtue of her employment as an intern architect with RIM, Valenote became a participant in the Plan RIM established and maintained for the benefits of its eligible employees.  The plan was insured by a group policy of insurance issued by MetLife to RIM.  MetLife is the Plan's claim administrator.  Valenote agrees that her claim is governed by ERISA and that ERISA's civil remedy provision provides her exclusive remedy.

**A.**  **The Structure and Critical Terms of the Plan.**

The Plan provides LTD benefits only if a participant satisfies its specific requirements.  The Plan defines Disability as:

> "Disabled" or "Disability" means that, due to sickness, pregnancy or accidental injury, you are receiving Appropriate Care and Treatment from a Doctor on a continuing basis; and
>
> > 1.      during your Elimination Period and the next 24 month period, you are unable to earn more than 80% of your Predisability Earnings or Indexed Predisability Earnings at your Own Occupation for any employer in your Local Economy; or
> >
> > 2.      after the 24 month period, you are unable to earn more than 80% of your Indexed Predisability Earnings from any employer in your Local Economy at any gainful occupation for which you are reasonably qualified taking into account your training, education, experience and Predisability Earnings.
>
> Your loss of earnings must be a direct result of your sickness, pregnancy or accidental injury.  Economic factors such as, but not limited to, recession, job obsolescence, paycuts and job-sharing will not be considered in determining whether you meet the loss of earnings test.

MR 0017-18.[1]

---

[1] In order to avoid cluttering the court's files with redundant copies of documents, the reference "MR ____" refer to MetLife's administrative record (Docket No. 41), which was filed with plaintiff's Motion for Summary Judgment (Docket No. 37)

LANE POWELL LLC
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

LANE POWELL LLC
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

The Plan defines Own Occupation" as

the activity that you regularly perform and that serves as your source of income.  It is not limited to the specific position you held with your Employer.  It may be a similar activity that could be performed with your Employer or any other employer.

MR 0018.

The Plan defines the Elimination Period as follows:

**Elimination Period**

Your Elimination Period begins on the day you become Disabled.  It is a period of time during which no benefits are payable.  Your Elimination Period is shown in Plan Highlights

MR 0016.

The Plan Highlights defines the Elimination Period as "90 days of continuous disability."

MR 0012.

The Plan also expressly states what a participant must do to receive benefits under the Plan:

**Benefits Checklist**

In order to receive benefits under This Plan, you must provide to us at your expense, and subject to our satisfaction, all of the following documents.  These are explained in this Certificate.  Initial submission of these documents should be made no later than the 12th week following your original date of disability.

- ✓ Proof of Disability.
- ✓ Evidence of continuing Disability.
- ✓ Proof that you are under the Appropriate Care and Treatment of a Doctor throughout your Disability.
- ✓ Information about Other Income Benefits.
- ✓ Any other material information related to your Disability which may be requested by us.

MR 0014.

Finally, the Plan specifically confers discretion upon MetLife to determine eligibilty for benefits and provides:

MetLife in its discretion has authority to interpret the terms, conditions, and provisions of the entire contract.  This includes the Group Policy, Certificate and any Amendments.

MR 0002.  As discussed below, applicable standard of review for MetLife's determination is therefore whether MetLife abused its discretion.

B.     **Valenote's Claim and MetLife's Initial Review and Denial.**

As part of her disability claim, Valenote, age 38, submitted a Disability Claim Employee Statement dated May 15, 2003.  MR 0068-71.  Valenote's last day of work was February 21, 2003.  She stopped working at that time and claimed disability due to chronic pain.  Although plaintiff had not worked since February 21, 2003, her employment with RIM continued until May 31, 2003.  MR 0080.  Valenote resigned her position with RIM on May 1.  When asked to state the cause of her disability, plaintiff wrote: "Not sure what caused it—chronic pain."  She also wrote that her disability began in December 2002.  *Id.*  RIM also submitted to MetLife a Long Term Disability Claim Form Employer Statement.  MR 0077-78; 0081-82.  In that statement, RIM advised that plaintiff was absent from work from December 18, 2002 to January 3, 2003, because of chronic pain.  RIM also reported that Valenote sat 7-8 hours per day and never had to climb, kneel, balance, push or pull.  MR 0082.  She never had to carry more than 10 pounds.  *Id.*

In an Attending Physician Statement dated June 5, 2003, Joella Beard, M.D., diagnosed plaintiff with myalgia, secondary to "pain in limb."  MR 0120-22.  Dr. Susan Anderson of the Advanced Pain Centers of Alaska, listed plaintiff's complaints as of July 21, 2003, as "Right buttock pain, secondary complaint is right arm and left arm pain."  MR 0209-12.  In addition, Dr. Anderson's Progress Note of September 4, 2003 makes the following assessments:

1.     Discogenic low back pain at L3-4 with anterial thigh radiation to the right.
2.     Discogenic low back pain at L5-S1 with posterior right leg pain radiating to the foot.
3.     Right SI joint dysfunction to right pubic symphysis dysfunction.
4.     Right gluteal bursitis.

MR 0181.

MetLife conferred with Valenote's treating neurologist, Dr. Downs, who advised MetLife that Valenote's neurological examination was unremarkable.[2]  ML 00067.  Dr. Downs' office advised that it

---

[2] In her Motion for Summary Judgment, Valenote repeatedly asserts that MetLife failed to confer with her medical providers in making its determination or to fully consider her asserted restrictions and limitations.  Plaintiff's assertions are belied by MetLife's claims diary (identified as ML 0065-77; 0217-22) which was recently produced to plaintiff.  This portion of the administrative record was inadvertently excluded from MetLife's prior document production.  A copy of pages ML 0065-80 and 0217-22 are submitted herewith. Exhibit A. These documents confirm that MetLife was in

(continued . . .)

LANE POWELL LLC
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

LANE POWELL LLC
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

had not restricted Valenote from returning to work.  ML 00067; 00066; 00068.  Valenote's treating physician, Michael Orzechowski, M.D., advised MetLife that Valenote was not released from work (and, therefore, was able to work) until September 23, 2003.  ML 00068.  This was consistent with Dr. Beard's office visit note and communications with Dr. Orzechowski's office.  Dr. Beard and her office released Valenote to return to work in May 2003.

In order to evaluate and consider Valenote's claim, MetLife sought the opinion of board certified physician Gary P. Greenhood, M.D.  Dr. Greenhood summarized plaintiff's medical history as and pain complaints as follows:

> Information in the file indicates that this patient complains of pain predominately in the right-buttock region.  In December of 2002, a MRI of lumbar spine showed up to a 4-mm posterior disk protrusion at L5-S1 without dural sac or nerve root compression and a 3-mm anteriod disk protrusion L3-L4 without posterior disk protrusion.  The patient is intact neurologically.  An elecrodisagnostic study; MRI scans of the brain, hips, thoraic spine; and a bone scan are unremarkable.  Diskography is positive at L5-S1.  The patient has received injections to the right sacroiliac joint and pubis symphysis.  Medications have included neurontin, gabatril, bextra, vioxx, and topamax.

> Neurological examinations, a total body bone scan, and an electrodiagnostic study were unremarkable.  The findings on the December of 2002 MRI scan of the lumbar spine are not likely to be clinically significant in view of no disk extrusion, nerve root compression, spinal cord compression, etc.  The positive diskogram at L5-S1 may explain some of the patient's pain.

MR 0244.

Dr. Greenhood noted that plaintiff's treatment plan "implies that the patient's pain is severe." *Id.*  However, Dr. Greenhood concluded in part: "Available information does not include an opinion provided by any of the patient's medical professionals that the patient's pain has been sufficiently severe to preclude work subsequent ot 5/1/03."  MR 0246.

On July 31, 2003 MetLife interviewed Valenote and discussed her LTD claim.  ML 00221.  MetLife's case manager explained that Valenote would need to have her attending physician provide additional medical documentation supporting objective medical findings.  *Id.*  The case manager's

---

(. . . continued)
frequent contact with Valenote, her "patient advocate," Valenote's former employer, Dr. Downs' office and Dr. Lorentzen.  ML 0065-77.

note indicates that Valenote understood this request and was going to follow up with her physician. *Id.* Valenote never provided this information.

In a letter dated August 29, 2003, MetLife notified plaintiff that it was denying her claim. MR 162B. MetLife explained that benefits were not payable as Valenote had not remained continuously disabled throughout the 90-day elimination period. *Id.* MetLife advised that the elimination period began on February 22, 2003. Therefore, the elimination period extended through May 23, 2003. *Id.* MetLife advised that the medical records provided confirmed that Valenote was released to return to work by Dr. Beard on May 1, 2003 and that she was discharged from physical therapy on May 12, 2003. *Id.* In addition, the records did not show that plaintiff was unable to work after May 12, 2003. In denying Valenote's claim, MetLife concluded.

> Based on your release to return to work from Dr. Beard and your discharge from physical therapy, you have not met the 90-day elimination period. The end of your 90-day elimination period is 05/23/2003. We have no medical documentation to support your inability to work after 05/12/2003. Therefore we are denying liability and closing your claim.

MR 0162B.

Pursuant to ERISA, that letter also advised Valenote of her right to seek administrative review if she disagreed with the adverse benefits decision. She was advised to:

> state the reason(s) you believe the claim was improperly denied, and submit any additional comments, documents, records, or other information relating to your claim that you deem appropriate for us to give your appeal proper consideration. Upon request, MetLife will provide you with a copy of the documents, records, or other information we gave that are relevant to your claim and identify any medical or vocational expert(s) whose advice was obtained in connection with your claim.

MR 0162C.

## C.    MetLife's Two Subsequent Reviews.

Valenote appealed and submitted additional medical evidence and correspondence stating that she had not returned to work during the elimination period. Apparently dissatisfied that Dr. Beard would not support her claim for disability benefits, Valenote wrote to Dr. Beard on October 8, 2003, demanding that Dr. Beard retract her statement that Valenote had been released to return to work. MR 0208. In that letter, Valenote accused Dr. Beard of making negligent statements and threatened legal action against her for reporting to MetLife that she had been released to return to work as of May 2003.

LANE POWELL LLC
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

*Id.* Dr. Beard responded to MetLife on behalf of Valenote by letter of October 22, 2003. Contrary to Valenote's position, De. Beard did not assert that plaintiff was disabled. Dr. Beard advised:

> Ms. Valenote was seen by the advanced nurse practitioner (ANP) in his clinic on 3/27/03 and advised to remain off work until 5/1/03. Although she reported to the ANP on 6/10/03 that she was working about 10 hours per week, Ms. Valenote wishes that we point out that this was not a full-time position and feels she should be considered disabled to some extent during the period from 5/1/03 to at least the time of her dismissal from our clinic which was 7/24/03.

MR 0220 (emphasis added).[3]

On October 23, 2003, MetLife's nurse manager spoke with Valenote to discuss her condition, restrictions and limitations. ML 00070. MetLife's nurse manager reviewed Valenote's medical records and diagnostic test results and concluded that the findings of the December 2002 MRI were not clinically significant as there was no evidence of disc extrusion, nerve root compression or spinal cord compression. ML 0073. By letter of November 26, 2003, and after performing additional review of Valenote's claim, MetLife affirmed its decision that no benefits were payable. MR 0248-50. MetLife advised "the information received and reviewed by MetLife fails to establish that you are experiencing a level of continued impairment that prevents you from performing the duties of your own occupation as an Intern Architect. The objective medical evidence we have reviewed is incongruent with a long-term disability." MR 0249.

Although additional administrative appeals were not required to be undertaken by MetLife, MetLife advised Valenote that it would perform additional review. *Id.* Valenote was advised that if she wished MetLife to further consider her claim that she should:

> submit any additional comments, documents, records, or other information relating to your claim that you deem appropriate for us to give your appeal proper consideration. Upon request, MetLife will provide you with a copy of the documents, records, or other information we have that are relevant to your claim and identify all medical or vocational expert(s) whose advice was obtained in connection with your claim."

*Id.*

Valenote sought additional review by letter of May 4, 2004. MR 0261. Valenote recounted her medical history and her disagreements with MetLife's decision; however, she did not request

---

[3] Valenote stopped treating with Dr. Beard shortly after she wrote this letter.

LANE POWELL LLC
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

documents considered by MetLife in reaching its decision even though MetLife previously offered to provide her with those documents. She did not submit additional medical records. Finally, Valenote did not request identification of MetLife's consulting physicians as MetLife offered in its November 26, 2003 letter.

MetLife reviewed the materials submitted and obtained the opinion of a second independent physician consultant Dennis S. Gordan, M.D., board certified in physical medicine and rehabilitation. Dr. Gordan reviewed plaintiff's entire claim file including the documents submitted on appeal. Plaintiff's assertion that "MetLife was unhappy with Dr. Greenhood's original review and, therefore shopped for another paid consultant" is specious and evidences plaintiff's fundamental misunderstanding of the full and fair review required by ERISA and performed by MetLife. MetLife did not "shop" for another consulting physician; rather it obtained a second independent opinion from another physician consultant.[4] In his report, Dr. Gordan concluded after reviewing Valenote's medical history that the records contianed "no reference to any atrophy, and atrophy would be expected in any patient who had one and one-half years of severely curtailed physical activity, regardless of the reason. Without atrophy, I can't imagine that function is physiologically significantly impaired." MR 0319.

By letter of June 22, 2004, MetLife informed plaintiff that it was upholding the original denial of benefits. MR 0321-23. MetLife explained that it had plaintiff's entire file reviewed by another independent consulting physician and that although plaintiff's pain complaints were acknowledged, those complaints did not limit Valenote from performing her own occupation:

> The medical records support a slight impairment on the basis of pain and this would not limit you from your own occupation.
>
> Your employer's plan requires that you submit medical evidence of a continued disability. As discussed above, there is a lack of medical information submitted in your file that would suggest you were unable to perform the usual duties of your own occupation. Therefore, the original claim determination was appropriate.

*Id.*

---

[4] Although this was a courtesy review and not a mandatory appeal review, MetLife again sent Valenote's file for review by an independent physician consultant. Department of Labor regulations require such a review only during an appeal review.

**LANE POWELL** LLC
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511 Facsimile 907.276.2631

The June 22, 2004 letter advised Valenote that administrative review had been exhausted. MR 0321-23. Thereafter, Valenote commenced this suit under ERISA's civil remedy provision. These motions follow.

## III.  MOTION TO STRIKE

**A.**    **As Fully Discussed in MetLife's Motion to Strike, Evidence Beyond the Administrative Record Should Not Be Considered.**

Concurrent with the filing of this Opposition and Cross-Motion for Summary Judgment, MetLife is filing its Motion to Strike from consideration any evidence not submitted to MetLife during the administrative process. As set forth in that motion, that information should not be considered by this Court under any standard of review. *Abatie v. Alta Health & Life Ins.*, 458 F.3d 955, 969-70 (9th Cir. 2006) (en banc); *McKenzie v. General Tel. Co. of Cal.*, 41 F.3d 1310, 1316 (9th Cir. 1994). For the sake of judicial economy, MetLife incorporates by reference its Motion to Strike.

**B.**    **Hearsay Must Be Excluded from Consideration.**

MetLife moves to strike the declaration testimony of plaintiff Valenote and "patient advocate" Virginia Valenote on the additional basis that their declaration testimony contains hearsay not within any exception as to conversations with MetLife as to MetLife's understanding. *See, e.g.,* Motion for Summary Judgment at 32 n.44 (regarding MetLife's knowledge of plaintiff's failure to return to work supposedly based upon Virginia Valenote's perception of a conversation). Such statements are offered for their truth and cannot be considered. Fed. R. Evid. 801(c); Fed. R. Evid. 802. Similarly, Dr. Polston's declaration (prepared in 2007 and not contained within the administrative record) should be stricken for the additional reason that it is not within his province as a physician to opine that an individual does or does not satisfy the definition of disability under an ERISA plan. Such determination is the sole province of the claim or plan administrator. Further, it is not within his providence to interpret a CFR section regarding "physical exertional requirements" which is not the same as a vocational assessment or job description. Finally, Dr. Polston did not examine plaintiff during the relevant time period.

LANE POWELL LLC
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

# IV.  ARGUMENT

## A.    Plaintiff's Claims are Governed by ERISA.

In her Complaint, Plaintiff asserts that her action is brought under ERISA.  *See* Complaint (Docket No. 5) at ¶¶ 1, 23.  Hence, her only viable claim is one for benefits and attorneys' fees pursuant to 29 U.S.C. § 1132.  She also agrees that the plan confers discretion to determine eligibility for benefits.  *See* Motion for Summary Judgment at 3.

## B.    MetLife's Decision to Discontinue Benefits Is to Be Reviewed Only for Abuse of Discretion.

The standard of review to be applied in this case is "abuse of discretion"—whether MetLife was arbitrary and capricious in its interpretation and application of the policy's provisions.

> Where the decision to grant or deny [ERISA] benefits is reviewed for abuse of discretion, a motion for summary judgment is merely the conduit to bring the legal question before the district court <u>and the usual tests of summary judgment, such as whether a genuine issue of material fact exists, do not apply</u>.

*Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 942 (9th Cir. 1999) (emphasis added); *Frick v. U.S. Bancorp*, 98 F. Supp. 2d 1202, 1206 (W.D. Wash. 2000).

### 1.    The Abuse of Discretion Standard of Review.

The "abuse of discretion" standard of review is a deferential standard.  An ERISA claim administrator's determination must be upheld unless the court finds that the claim administrator abused its discretion by: (1) rendering decisions without any explanation; (2) construing provisions of the plan in a way that conflicts with the plain language of the plan; or (3) relying on clearly erroneous findings of fact in making benefit determinations.  *See Bendixen*, 185 F.3d at 944; *Futamura v. Unum Life Ins. Co. of Am.,* 305 F. Supp. 2d 1181, 1190 (W.D. Wash. 2004).  The decision will be upheld "if it is based upon a reasonable interpretation of the plan's terms and was made in good faith."  *Bendixen*, 185 F.3d at 944 (citations omitted).  Where there is relevant evidence in the administrative record "that reasonable minds might accept as adequate to support a conclusion even if it is possible to draw two inconsistent conclusions from the evidence," the decision must be upheld.  *Taft v. Equitable Life Assur. Soc.*, 9 F.3d 1469, 1473 (9th Cir. 1993) ("[i]n the ERISA context, even decisions directly contrary to evidence in the record do not necessarily amount to an abuse of discretion").

LANE POWELL LLC
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

a.    **MetLife's decision was supported by the medical consultant's review and reports of the attending physician.**

In this case, the interpretation and application of the applicable definition of disability is supported by the explicit terms of the Plan, and the opinions of independent physician consultants Gary Greenhood, M.D. and Dennis Gordan, M.D.  The decision is also consistent with the opinion of Valenote's contemporaneous treating physicians who reported a normal neurological examination and recommended return to work.

The Ninth Circuit will "uphold the decision of an ERISA plan administrator 'if it is based upon a reasonable interpretation of the plan's terms and was made in good faith.'"  *Boyd v. Bert Bell/Pete Rozelle NFL Players Retirement Plan*, 410 F.3d 1173, 1178 (9th Cir. 2005) (quoting *Estate of Shockley v. Alyeska Pipeline Serv. Co.,* 130 F.3d 403, 405 (9th Cir. 1997)).  The Court should affirm the plan administrator's decision if it was based upon substantial evidence and complied with the terms of the plan. *See, e.g., Meditrust Fin. Servs. Corp. v. Sterling Chemicals, Inc.,* 168 F.3d 211, 215 (5th Cir. 1999); *Ellis v. Metropolitan Life Ins. Co.,* 126 F.3d 228, 232 (4th Cir. 1997). Substantial evidence does not mean that the plan administrator's decision must be proven correct by a preponderance of the evidence. Rather, substantial evidence "is such relevant evidence as reasonable minds might accept as adequate to support a conclusion even if it is possible to draw two inconsistent conclusions from the evidence." *Gilbrook v. City of Westminster,* 177 F.3d 839, 856 (9th Cir. 1999).

MetLife appropriately exercised its discretion and the terms of the plan in evaluating plaintiff's claim.  MetLife stated in its August 29 letter:  "Based on your release to return to work from Dr. Beard and your discharge from physical therapy, you have not met the 90-day elimination period."  MetLife's requirement that plaintiff be under the continuous care of a doctor during the entire 90-day elimination period was consistent with the Plan language regarding the elimination period.

In addition, MetLife stated in its August 29 letter:  "We have no medical documentation to support your inability to work after 05/12/2003."  A prerequisite to benefits was thus not satisfied because there was no evidence that plaintiff's wage loss was a "direct result" of her

LANE POWELL LLC
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

claimed disability.  MetLife thus acted consistently with the Plan language in determining that plaintiff had not shown she was "disabled."

Consistent with this conclusion, MetLife's November 26, 2003, decision to uphold the original denial of benefits was also based on the Plan's definition of "disability."  The Plan required a claimant to be continuously disabled during the elimination period.  To satisfy this definition, plaintiff would have had to remain disabled from her last day of work, February 21, 2003, through May 22, 2003.

MetLife upheld the benefit denial because it determined that the "disability" requirement was not satisfied.  Also, under the Plan, it was Valenote's burden to submit "proof" of her disability by showing that "during [her] Elimination Period and the next 24 month period, [she was] unable to earn more than 80% of [her] Predisability Earnings or Indexed Predisability Earnings at [her] Own Occupation for any employer in [her] Local Economy."  Valenote never satisfied this burden.  As the November 26 letter shows, MetLife relied on these standards to deny benefits, and so the denial was consistent with the express language of the Plan.

**b.     MetLife reasonably concluded that Valenote was not entitled to benefits.**

In order to satisfy the elimination period, plaintiff would have had to remain totally disabled from her last day of work, February 21, 2003, through May 22, 2003.  However, the facts as expressly noted in the November 26, 2003 letter were that plaintiff's treating physician Dr. Beard released plaintiff to return to work on May 1, 2003 (MR 0240; 0159),[5] her other treating physicians never instructed her to stop working because of her condition on or before February 21, 2003, plaintiff resigned her position on May 1, 2003, and plaintiff was released from physical therapy on May 12, 2003.  MetLife did not abuse its discretion in concluding that "[t]his information is suggestive that your pain was not sufficiently severe to preclude work prior to March 27, 2003 and subsequent to May 1, 2003.  You chose not to return to work on May 1, 2003 as advised by your doctor, but instead resigned your position as an Intern Architect as of May 1, 2003."

---

[5] Valenote asserts that MetLife "redacted" this document (MR 88).  MetLife states, and review of the document confirms, that no redactions to the document were made.

LANE POWELL LLC
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

c.     **MetLife acknowledged and discussed Valenote's clinical findings.**

MetLife explained in the November 26 letter that it examined the objective medical evidence and noted that "the only two abnormal findings cited in the file include the MRI of the lumbar spine from December of 2002 and the diskography from October 2003." However, MetLife also noted all of plaintiff's other tests—which Metlife noted to include an electrodiagnostic study, MRI scans of the brain, hips and thoracic spine, total bone scan, and neurological examinations—were unremarkable. For instance, MetLife wrote in its November 26, 2003 letter: "The findings on the December of 2002 MRI scan of the lumbar spine are not likely to be clinically significant in view of no disk extrusion, nerve root compression, spinal cord compression, etc." This conclusion was based on the extensive review by MetLife's consulting physician, Gary P. Greenhood, M.D. In light of the medical facts, Dr. Greenhood conluded: "Available information does not include an opinion provided by any of the patient's medical professionals that the patient's pain has been sufficiently severe to preclude work subsequent to 5/1/03."[6] MetLife's credit of Valenote's complaints and conditions evidences its reasonable decision-making process and weighs against applying a heightened standard of review. *See Abatie*, 458 F.3d at 970; *Frost*, 2007 WL 135625 at *45.

Therefore, based on the lack of objective medical evidence proving plaintiff's disabilty as defined by the clear language of the plan, MetLife's November 26 decision was not clearly erroenous. MetLife advised:

> In conclusion, the information received and reviewed by Metlife fails to establish that you are experiencing a level of continued impairment that prevents you from performing the duties of your own occupation as an Intern Architect. The objective medical evidence we reviewed is incongruent with a long-term disability.

MR 0249.

The fact that a claim administrator's decision is in conflict with some evidence in the record is not sufficient to meet the clearly erroneous standard. *Gannon v. Metropolitan Life Ins. Co.,* 360 F.3d 211, 213-14 (1st Cir. 2004); *Martin*, 96 F. Supp. 2d at 989-90. "A court may overturn a

---

[6] Plaintiff's assertion that MetLife withheld information from Dr. Greenhood is specious; the fact that not all documents were referenced in his summary does not support the assertion that documents were withheld.

LANE POWELL LLC
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511 Facsimile 907.276.2631

plan administrator's decision to deny benefits only if the decision was 'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" *Celardo v. GNY Auto. Dealers Health & Welfare Trust*, 318 F.3d 142, 146 (2d Cir. 2003). Here, MetLife is entitled to judgment in its favor because its decision is supported by the evidence.

> **d.  MetLife Was Not Required to Defer to Valenote's Treating Physician or to Obtain an Independent Medical Examination.**

In *Nord*, the Supreme Court recognized that nothing in ERISA "suggests that plan administrators must accord special deference to the opinions of treating physicians." 538 U.S. at 829-30. "Nor does the Act impose a heightened burden of explanation on administrators when they reject a treating physician's opinion." *Id*. at 832. Valenote's attempt to make an end-run around the *Nord* decision by asserting that MetLife's investigation was inadequate as a basis to alter the standard of review is wholly unsupported by any authority. A non-examining physician's review of a claimant's file constitutes reliable medical evidence on which a decision may be based. In fact, the regulations under ERISA require such review. *See* 29 C.F.R. § 2560-503(1)(h)(1).

An independent medical examination is not required, especially where the claimant initially has failed to offer sufficient evidence in support of her claim. *Brucks v. The Coca-Cola Co.*, 391 F. Supp. 2d 1193, 1205 n.12 (N.D. Ga. 2005); *Tuttle v. Standard Ins. Co.*, 459 F. Supp. 2d 1063, 1067 (W.D. Wash. 2006) (holding that there is "no requirement in the Ninth Circuit for an administrator to have an independent examination of the claimant, and this appears to be the better course"); *Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan*, 201 F.3d 335, 345 (4th Cir. 2000) (concluding that administrative committee acted reasonably in process of reviewing denial of claim for benefits in seeking two medical reviews by independent doctors of prior decision and claimant's medical file). Imposing such a requirement is inconsistent with ERISA, which places the burden on the claimant to demonstrate she is entitled to benefits under the plan, not on the administrator to demonstrate that the claimant is not disabled. *See Horton v. Reliance Std. Life Ins. Co.*, 141 F.3d 1038, 1040 (11th Cir. 1998) (A plaintiff suing under [Section 1132(a)(1)(B)] bears the burden of proving his entitlement to contractual benefits."); *Davis v. Unum Life Ins. Co. of Am.*, 444 F.3d 569, 577 (7th Cir. 2006). As the Supreme Court recognized in *Nord*:

> [T]he assumption that the opinions of a treating physician warrant greater credit than the opinions of plan consultants may make scant

LANE POWELL LLC
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

> sense when, for example, the relationship between the claimant and the treating physician has been of short duration, or when a specialist engaged by the plan has expertise the treating physician lacks. And if a consultant engaged by a plan may have an "incentive" to make a finding of "not disabled," so a treating physician, in a close case, may favor a finding of "disabled."

538 U.S. at 832.

LANE POWELL LLC
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511 Facsimile 907.276.2631

e.    **MetLife Properly Exercised Its Discretion:    There was Simply No Objective Medical Evidence to Support Plaintiff's Claim of Disability.**

Valenote's own physicians and health care providers were not supportive of her claim. MetLife asked Plaintiff and her doctors to provide information in support of her claim. The records provided, however, neither set forth objective medical evidence to support Valenote's claimed disability (as required by the plan) nor established her inability to perform her occupation when the requirements of her job were considered. Further, both independent physician consultant reports came to this same conclusion separately—that even though she had expressed subjective complaints of pain there was still no objective evidence to support her alleged disability. MetLife may properly require such evidence. *Pralutsky v. Metropolitan Life Ins. Co.*, 435 F.3d 833, 838-39 (8th Cir.), *cert. denied*, 127 S. Ct. 264 (2006); *Brucks*, 391 F. Supp. 2d at 1205; *Frost*, 2007 WL 135625 at *4-5.

Here, the fact that MetLife denied Valenote's claim for benefits due to a lack of objective medical evidence is not indicative of an unreasonable decision. To the contrary, the decision is fully supported by the response of both medical reviewers, an inarguable lack of objective evidence of impairment, and a medical record consisting almost entirely of the subjective reports of the claimant. Simply put, a diagnosis or list of medical conditions does not establish disability. *Renfro v. Unum Life Ins. Co. of Am.*, 920 F. Supp. 831, 839 (E.D. Tenn. 1996). Notwithstanding Valenote's self-serving complaints and statements of disability, the administrative record provides ample evidence that MetLife did not abuse its discretion in denying Plaintiff's claim for long-term disability benefits.

After considering all the information obtained, MetLife had reasonable grounds to determine that Valenote was not disabled. There is no evidence in the administrative record to conclusively and undeniably support a conclusion that Valenote could not perform her job functions.

Consequently, MetLife did not abuse its discretion. *See, e.g., Gannon,* 360 F.3d at 215-16; *Voight v. Metropolitan Life Ins. Co.,* 28 F. Supp. 2d 569, 580 (C.D. Cal. 1998).

**2.    ERISA Decisions Should Be Reviewed for an Abuse of Discretion with Consideration Given to the Existence or Effect of Any Conflict of Interest.**

The framework for determining the applicable standard of review in an ERISA benefits action has been clarified by the Ninth Circuit. *See Abatie v. Alta Health & Life Ins.,* 458 F.3d 955 (9th Cir. 2006); *Tuttle,* 459 F. Supp. 2d at 1065. The *Abatie* court held:

> We read *Firestone* to require abuse of discretion review whenever an ERISA plan grants discretion to the plan administrator, but a review informed by the nature, extent, and effect on the decision-making process of any conflict of interest that may appear in the record. This standard applies to the kind of inherent conflict that exists when a plan administrator both administers the plan and funds it, as well as to other forms of conflict.

*Abatie,* 458 F.3d at 967-68.

In explaining how a court's review of a benefits decision should be informed by the existence or extent of any conflict of interest such as in the example above, the *Abatie* court went on to instruct:

> The level of skepticism of a plan administrator's decision would be low if the conflict of interest is unaccompanied, for example, by any evidence of malice, of self-dealing, or of a parsimonious claims-granting history. A court may weigh a conflict more heavily if, for example, the administrator provides inconsistent reasons for denial, fails adequately to investigate a claim or ask the Plaintiff for necessary evidence, fails to credit a claimant's reliable evidence, or has repeatedly denied benefits to deserving participants by interpreting plan terms incorrectly or by making decisions against the weight of evidence in the record.

*Id.* at 968-69.

According to the Ninth Circuit, a district court must still decide each ERISA case on its merits by relying solely on the administrative record. *Id.* at 970. If the district court were to find some form of conflict of interest, however, it may look to extrinsic evidence but only for the sole purpose of determining the nature, extent and effect of that conflict. *See id.* After the existence or effect of any conflict is determined, the court must return to the evidence provided in the record and base its decision on that evidence. *Id.*

LANE POWELL LLC
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511 Facsimile 907.276.2631

3.      **Although MetLife Both Administers and Funds Benefits, Plaintiff has Marshaled No Evidence to Establish Any Resulting Bias.**

The *Abatie* court identified an inherent conflict of interest when the same entity both administers and funds a plan. *Id*. at 967-68. Simultaneously, the Ninth Circuit explained that the effect of a "*per se*" conflict such as this one ought to be negligible to a district court's review if there is no evidence of malice or self-dealing. *Id*. at 968-69.

Here, the record is replete with examples of MetLife avoiding even the appearance of a conflict of interest and ensuring it did not elevate its own interests above the rights of the claimant. For example, review of the administrative record confirms that MetLife conferred with Valenote's physicians, reviewed her medical records, interviewed Valenote, corresponded with her "patient advocate," obtained statements from her physicians and obtained the opinions of two board certified physicians and a nurse case manager.

Despite this workup, Valenote attempts to show bias and conflict by presuming it and by attempting to shift the burden to MetLife to disprove plaintiff's disability. MetLife appropriately denied plaintiff's claim for benefits once it determined that Valenote was not disabled as defined by the plan. From the outset, MetLife worked with Valenote in a cooperative effort to fully and fairly administer her claim for benefits and attempted to explain the terms and conditions of the Plan to her so that she could submit the necessary information. ML 00219; 00221.

Despite her knowledge that she needed to submit additional medical evidence in order to demonstrate disability and entitlement to benefits (ML 0221), Valenote failed to submit the necessary documentation. MetLife's review of the information submitted neither set forth objective medical evidence to support Valenote's claimed disability nor established her inability to perform her occupation as required by the plan. Further, each of the medical reviews came to this same conclusion—that the medical records did not support plaintiff's alleged disability.[7] In fact, the

---

[7] In the decision of *The Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 829-30 (2003), the Supreme Court rejected the "treating physician" rule in ERISA cases, holding instead that administrators are <u>not</u> required to automatically give deference to the opinions of treating physicians. In a case following *Nord*, the court upheld the administrator's decision to deny the plaintiff's LTD benefits where the objective medical records provided to the administrator failed to support the treating physician's statements of opinion regarding the severity of the plaintiff's condition. *Strouse* (continued . . .)

LANE POWELL LLC
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

medical records demonstrated that Valenote asked her doctors to support her disability claim even though they never previously reported that or told Valenote she could not work. To the contrary, Dr. Beard advised MetLife that Valenote was working as of June 2003. MR 0220. Similarly, the vocational information provide by her employer (MR 0082) differs significantly from the self-serving document Valenote prepared that purports to be her "job description" and stated that she felt she should be on disability. MR 0214-16. Understandably, Valenote attempts to distance herself from Dr. Beard's conclusion and her admission to Dr. Beard that she was working by pointing to contradictory evidence in the file. Similarly, she would rather distract the Court with the "job description" she created rather than focus on the sedentary nature of her position as described by RIM. RIM advised that Valenote sat 7-8 hours per day and never had to climb, kneel, balance, push or pull. MR 0082. She never had to carry more than 10 pounds. *Id.* MetLife had the discretion to evaluate all evidence in the record, not only that evidence which Valenote wishes MetLife to consider.

4.    **MetLife May Require Objective Evidence of Restrictions and Limitations.**

It was reasonable for MetLife to require objective medical evidence and plaintiff's citation to and reliance upon cases calling into doubt the propriety of such a requirement is misplaced. As the court recognized in *Brucks*:

> The requirement that a plaintiff submit objective evidence of the impact of a diagnosed disease, illness or other condition is logical and necessary, especially in the case of diagnoses such as [chronic fatigue syndrome]. The objective-evidence requirement promotes integrity in the application of the law. It assures claimants are treated fairly and with parity by providing that coverage decisions are not based on varying subjective expressions by claimants of a disease, illness or condition with which they have been diagnosed. That is, it requires claimants to establish that the diagnosed disease, illness or condition results in an actual disability, not just a perceived one. The requirement of objective evidence also promotes integrity by assuring there is corroboration for a claimant's subjective complaints, thus deterring embellished allegations of the effect of the diagnosed malady as well as deterring fraud in the claims process.

_____

(. . . continued)

v. *Pruvalue Ins.*, 2003 WL 21556932 (N.D. Cal., July 8, 2003); *LaPrease v. Unum Life Ins. Co. of Am.,* 347 F. Supp. 2d 944 (W.D. Wash. 2004) (no obligation to give more weight to treating physician).

LANE POWELL LLC
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511 Facsimile 907.276.2631

391 F. Supp. 2d at 1205 (emphasis added).

In *Brucks*, the court noted that "[p]laintiff was advised throughout the claims process that she was required to submit objective clinical findings to support her alleged physical limitations and their impact on her ability to perform the normal duties of her job." The same is true here. The denial letters and MetLife's case manager's conversation with Valenote advised her of this requirement. MR 0321-23; MR 0249; ML 0221. Within the Ninth Circuit, a claim administrator's decision to deny a claim where a participant failed to provide proof of objective evidence of disability— regardless of whether a plan explicitly requires proof of objective evidence—will be enforced. *Jordan v. Northrop Grumman Corp. Welfare Benefit Plan*, 370 F.3d 869, 876-77 (9th Cir. 2003); *Martin v. Continental Cas. Co.*, 96 F. Supp. 2d 983, 989-90 (N.D. Cal. 2000).

For instance, in *Martin*, the plaintiff brought suit against the plan administrator following its denial of a claim for disability benefits under an employee welfare benefit plan. Martin, a senior underwriter for AIG Insurance Company, claimed he was totally disabled due to post-polio syndrome, which was based solely on his subjective pain complaints. There were no objective findings to support his pain complaints or conclusory opinions as to the cause of that pain. *Id.* at 987-90. His claim was denied on the basis that there were no "objective medical findings" to support his claimed disability or that his medical impairment prevented him from performing his job duties. *Id.*

The same result followed more recently in *Frost v. Metropolitan Life Ins. Co.*, ___ F. Supp. 2d ___, 2007 WL 135625 at *4 (C.D. Cal., Jan. 12, 2007). In that case, MetLife denied plaintiff's claim on the basis that plaintiff's "file 'failed to establish a pathological level of impairment that would preclude [plaintiff] from performing the material duties of [her] job as an OPS Manager.'" *Id.* MetLife's consulting physician opined that Frost "has many complaints but little in terms of objective findings." *Id.* On appeal, MetLife affirmed the original decision concluding that "medical information on file does not support a condition(s) of such severity that would preclude [Plaintiff] from working beyond February 29, 2004." *Id.* Plaintiff filed suit and the district court analyzed the decision under the standard recently announced by the Ninth Circuit in *Abatie*. *Id.* at *4-5.

In an attempt to demonstrate structural conflict, Frost asserted that MetLife's investigation and the reports of its consulting physicians were inadequate. *Id.* For example, Frost claimed "that

**LANE POWELL** LLC
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511 Facsimile 907.276.2631

MetLife's consultants were biased as demonstrated by the fact that they did not examine Plaintiff or consult with Plaintiff's treating physicians." *Id.* The court noted that plaintiff conceded during the trial that there is no statutory or other requirement that MetLife's consultants examine Frost or consult with Plaintiff's treating physicians prior to rendering their opinions. *Id.* The court also dismissed plaintiff's criticism of the consulting physicians on the basis that they did not credit Frost's physicians stating:

> The Court disagrees, as each of MetLife's consultants considered and summarized the findings of Plaintiff's treating physicians in their reports . . . Indeed, it is important to note that neither [treating physician] concluded that Plaintiff was not suffering from any pain. Rather, they concluded that given the evidence of her retained cognitive ability and functional gait, coupled with the lack of any objective medical evidence to support her complaints, her condition did not rise to such severity that it would render her totally disabled from working.

*Id.*

As such, the court concluded that "Plaintiff failed to establish that MetLife failed to adequately investigate or failed to credit Plaintiff's evidence. MetLife's reasons for discontinuing Plaintiff's LTD benefits were consistent with its reasons for denying Plaintiff's appeal. There is simply no evidence in the record of any malice, self-dealing, or that MetLife has a 'parsimonious claims-granting history.'" *Id.*

The *Martin* court reached a similar conclusion. The court held that denial of the claim due to lack of objective medical findings or evidence to support plaintiff's inability to perform his sedentary job duties was not unreasonable. *Martin*, 96 F. Supp. 2d at 994; *see also Voight v. Metropolitan Life Ins. Co.*, 28 F. Supp. 2d 569 (C.D. Cal. 1998) (holding that "[i]t was not unreasonable for MetLife to require objective medical evidence as 'proof' of total disability. Given that MetLife has discretionary authority to construe the terms of the plan, Voight must prove that MetLife's interpretation of 'Total Disability,' or its 'proof' requirements, were arbitrary and capricious. Voight has failed to meet her burden in that regard.")

Here, the fact that MetLife denied Valenote's claim for benefits due to insufficient medical documentation, *i.e.*, lack of objective medical evidence and the lack of evidence demonstrating functional impairment is not evidence of an unreasonable decision. To the contrary, it is fully supported by the lack of appropriate diagnostic testing, lack of objective evidence of impairment,

LANE POWELL LLC
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511 Facsimile 907.276.2631

opinions of MetLife's consulting physician and independent physician consultant, and by the terms
of the plan which plaintiff asks this Court to ignore.

>    **5.    It Was Valenote's Burden to Present Evidence of Disability to Establish Her
>           Entitlement to Benefits.**

Under ERISA, the "burden [is] on the claimant to demonstrate she is entitled to benefits
under the plan, not on the administrator to demonstrate that the claimant is not disabled." *Brucks*,
391 F. Supp. at 1205 n.12 (citing *Horton v. Reliance Std. Life Ins. Co.*, 141 F.3d 1038, 1040 (11th
Cir. 1998) ("A plaintiff suing under [Section 1132(a)(1)(B)] bears the burden of proving his
entitlement to contractual benefits"); *Tuttle*, 459 F. Supp. 2d at 1067 (recognizing "it was Tuttle's
burden to provide evidence showing disability"). As the court recently reaffirmed in *Wilson v.
Metropolitan Life Ins. Co.*, 2006 U.S. Dist. LEXIS 90044, *21 (E.D. Pa., Dec. 13, 2006) "[u]nder the
Plan, the <u>claimant is responsible for demonstrating continued eligibility for benefits, which
necessarily entails submitting supporting medical documentation.</u>[] It is the role of the claimant's
physician to determine the appropriate diagnostic test given the particular symptoms presented.
Then, <u>based on the medical documentation provided by the claimant</u>, the administrator will make an
eligibility determination." *Id.* (emphasis added). The same is true under the terms of the Plan in this
case. *See* MR 0014.

Here, Valenote attempts to impermissibly shift the burden of proof to MetLife to disprove her
alleged disability. This is inconsistent with ERISA as it remains plaintiff's burden to establish
entitlement to benefits under the Plan. *Horton*, 141 F.3d at 1040. For instance, Valenote argues that
after her treating physician referred her for a FCE MetLife was obligated to send her for one. Motion
for Summary Judgment (Docket No. 37) at 38. In fact, Valenote herself should have followed her
own physician's recommendation. Similarly, Valenote's argument that MetLife asserted a "new
reason" for its decision in its final denial thereby precluding her from receiving a full and fair review
is unavailing. Valenote may not hijack the administrative process by asserting that MetLife asserted a
new reason for its decision. If that were allowed, "a plan administrator would be forced to consider
medical documentation of a claimant's purported disability *ad infinitum*, even after, and in spite of,
the fact that the claimant's initial adverse benefits determination had been upheld on appeal."

LANE POWELL LLC
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

*Provencio v. SBC Disability Income Plan*,  2006 U.S. Dist. LEXIS 94845, *33 (W.D. Tex., Dec, 5, 2006).  In *Provencio*, the court noted that

> Provencio was well aware of the Plan's requirement that he submit all of his additional medical information at the time he filed his appeal. Nevertheless, Provencio failed to present any new medical evidence at that time. Rather than dismiss the appeal outright, Defendant graciously granted Provencio an extension of time in order to file medical records to support his appeal. But even when Provencio had this second chance to make his case on appeal, he submitted only a limited set of additional medical records (all of which the Quality Review Unit considered). Thus, it is clear that Provencio had not one, but two opportunities to present additional medical evidence in such a way that would have allowed the administrator a fair opportunity to review that information on appeal. Indeed, he had even more of an opportunity to do so at the administrative level than the express terms of the Plan allowed. To permit Provencio yet a third opportunity to submit medical information-well after the conclusion of his appeal-would be to sanction an abuse of the administrative process, and would thwart the legitimate statutory purpose of allowing the claims administrator to decide the matter under fair and reasonable circumstances.

> Because Provencio did not present the additional medical information in such a manner that would have allowed the administrator a fair opportunity to consider it, the Court cannot maintain that Defendant abused its discretion in refusing to consider the four letters that Provencio submitted after the conclusion of his administrative appeal.

*Id*.

The same result should follow here.  MetLife's letters to Valenote invited her to submit additional evidence to support her claim.  MR 0249; 0321-23.  She was also told this during her conversations with her case manager.  ML 00219; 00221.

**6.**     **MetLife Did Not Impermissibly Advance a "New Reason" for its Benefits Decision.**

MetLife's August and November 2003 letters clearly articulated Valenote's failure to provide medical documentation as a basis for the decision.  MR 0162C (no medical documentation to support your inability to work); MR 0249 (objective medical evidence presented is incongruent with long-term disability).   The June 2004 decision is also consistent.   MR 0321-23 (lack of medical information).   Plaintiff Provencio advanced similar arguments regarding alleged "new reasons" as inconsistent with a full and fair review.   The court soundly rejected Provencio's argument.  *Provencio*, 2006 U.S. Dist. LEXIS 94845 at *23.   Provencio contended that his initial claim was denied for one reason—that he failed to provide any medical evidence whatsoever to support his

LANE POWELL LLC
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

claim—and that the denial on appeal was based on another reason altogether—that Provencio's medical records were insufficient to establish that he was disabled under the terms of the plan. *Id.*

Provencio relied on *Robinson v. Aetna Life Ins. Co.*, 443 F.3d 389 (5th. Cir. 2006) to support his assertion. In *Robinson*, the plan administrator gave the claimant two different reasons for his benefits determination. First, that he was ineligible for benefits in light of the fact that he was able to perform the material duty of his job and, second, that he was ineligible for benefits, in light of the fact that driving was not a material duty of the job. *Id.* at 393-94. This "shifting justification" effectively meant that the plan administrator's specific reason for terminating benefits was never reviewed at the administrative level, and therefore violated 29 U.S.C. § 1133(2). *Id.*

The *Provencio* court distinguished *Robinson*, recognizing that the claim administrator initially denied benefits because plaintiff failed to provide any medical records at all. Rather, it considered the documents that were timely filed, and concluded that they did not support a finding of disability. 2006 U.S. Dist. LEXIS at 94845 at *25. The court stated:

> On appeal, the Quality Review Unit upheld the denial of benefits for exactly the same reason: Provencio's medical records did not support a finding of disability. Thus, unlike the facts in *Robinson*, the Court finds that the plan administrator in the instant case did not abuse its discretion by giving one reason for the initial benefits determination and a wholly different reason for the benefits determination at the administrative appeal.

*Id.*

The same is true in this case. The November 2003 and June 2004 decisions on appeal are consistent in their reasoning and conclusion. There was no objective evidence of disability submitted by Valenote during the administrative process. Desperate to avoid this lack of evidence, Valenote attempts to manufacture evidence of conflict to justify her submission of voluminous new evidence she never submitted during MetLife's administrative review of her claim.

**C.    Even Under the *De Novo* Standard, MetLife's Motion for Summary Judgment Must Be Granted as the Benefits Decision Was Correct.**

Even if this Court determines that the *de novo* standard of review applies, MetLife's decision should be upheld as a matter of law. Dr. Beard (and her advanced nurse practitioner) and Dr. Orzenchowski recognized Valenote could work as of May 2003. MR 0208; ML 00068. Under the *de novo* standard, this Court must review the administrative record and determine whether Valenote

**LANE POWELL LLC**
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

met her burden of proving total disability and entitlement to benefits based upon the evidence contained therein. *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1090 (9th Cir. 1999); *Juliano v. Health Maint. Org. of New Jersey*, 221 F.2d 279 (2d Cir. 2000). Under the *de novo* standard, Valenote has the "burden of proving by a preponderance of the evidence that she has been totally disabled" as defined by the ERISA plan. *Robyns v. Reliance Std. Life Ins. Co.*, 2003 U.S. Dist. LEXIS 13682 (S.D. Ind., July 10, 2003).[8] Valenote did not meet that burden as she neither established disability throughout the elimination period nor submitted objective evidence of the impact of her medial conditions on her ability to work as required by the language of the Plan.

MetLife's investigation confirmed that Valenote reported she worked, or was not medically precluded from working, during the elimination period and that she presented no objective evidence of the effects of any disabling conditions. Ample evidence supports the correctness of MetLife's decision. Even if this Court reviews her claim *de novo*, summary judgment should still be granted. Plaintiff's submission of documentation from later in 2003 and 2004 is irrelevant as the question is whether she was disabled during the relevant time period in May 2003 and shortly thereafter.

---

[8] If this Court concludes that MetLife's determination was arbitrary and capricious, the proper remedy would be remand to the claim administrator, not retroactive reinstatement of benefits. *Pisciotta v. Teledyne Indus., Inc.*, 91 F.3d 1326, 1331 (9th Cir. 1996); *McKenzie v. General Tel. Co. of Cal.*, 41 F.3d 1301, 1315 (9th Cir. 1994), *cert. denied*, 514 U.S. 1066 (1995); *Pengilly v. The Guardian Life Ins. Co. of Am.*, 81 F. Supp. 2d 1019 (C.D. Cal. 2000). In *Schadler v. Anthem Life Ins. Co.*, 147 F.3d 388, 398 (9th Cir. 1998), the court recognized that "[w]e would stand ERISA on its head if we countenanced bypassing the procedures provided by the statute for making benefits decisions in favor of making the initial benefits decision ourselves. . . [T]he case should have been remanded to the administrator for the development of a full factual record and for the making of the decision on whether to grant or deny benefits . . . ." In this case, remand would be necessary to determine whether Valenote qualifies for benefits under the "any occupation" standard of disability which she must satisfy after 24 months of benefits have been paid. MR 0017-18. To date, her claim has never been evaluated on that standard. Similarly, the Plan limits benefits to a maximum of 24 months for disabilities due to "neuromusculoskeletal and soft tissue disorders" as defined in the Plan. MR 0025. Evaluation of whether Valenote's disability is due to a condition subject to a limited benefit duration must also be undertaken by MetLife. *See Schadler*, 147 F.3d at 398. Moreover, remand would also be necessary if the Court determines that MetLife should have considered the documents Valenote has attempted to submit in support of her claim for the first time during this litigation. *Id.*

**LANE POWELL** LLC
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

## V.  <u>CONCLUSION</u>

Upon a full and fair review of Valenote's claim, following consultation with medical consultants and input from Valenote's medical providers, MetLife made the reasonable determination that Plaintiff was not disabled from her own occupation.  MetLife did not abuse its discretion in making this determination and this Court should affirm the decision.  Summary judgment should be granted and Valenote's claims dismissed in their entirety.

DATED this 2nd day of March, 2007.

LANE POWELL LLC
Attorneys for Defendants


By  s/ Brewster H. Jamieson
    301 West Northern Lights Boulevard, Suite 301
    Anchorage, Alaska  99503-2648
    Tel:  907-277-9511
    Fax: 907-276-2631
    Email:  jamiesonb@lanepowell.com
    ASBA No. 8411122

I certify that on March _2, 2007, a copy of the foregoing
was served by mail on:

Timothy W. Seaver, Esq., tseaver@seaverwagner.com
George T. Freeman, Esq., gtf@gci.com


 s/ Brewster H. Jamieson
159113.1

**LANE POWELL** LLC
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631