**JOHN D. PROVENCIO, Plaintiff, v. SBC DISABILITY INCOME PLAN, Defendant.**

**Civil Action No. SA-05-CA-0032-WWJ**

**UNITED STATES DISTRICT COURT FOR THE WESTERN DIS-TRICT OF TEXAS, SAN ANTONIO DIVISION**

**2006 U.S. Dist. LEXIS 94845**

**December 5, 2006, Decided**
**December 6, 2006, Filed**

**COUNSEL:** [*1]  For John D. Provencio, Plaintiff, Counter Defendant: Jeffrey E. Dahl, LEAD ATTORNEY, Harkins, Latimer & Dahl, P.C., San Antonio, TX.

For SBC Disability Income Plan, AT&T Disability Income Plan, also known as SBC Disability Income Plan, Defendant, Counter Plaintiff: Madeleine E. Dabney, LEAD ATTORNEY, Attorney at Law, San Antonio, TX.

**JUDGES:** William Wayne Justice, Senior United States District Judge.

**OPINION BY:** William Wayne Justice

**OPINION:**

### MEMORANDUM OPINION

Plaintiff, John D. Provencio, filed the instant civil action under 29 U.S.C. § 1132 of the Employee Retirement Income Security Act of 1974 ("ERISA"), complaining that Defendant SBC Disability Income Plan wrongly denied his application for short-term disability benefits. The Court has jurisdiction over the instant action under the terms of 29 U.S.C. § 1132(e)(1).

After careful consideration of the relevant evidence presented at the bench trial, the Court hereby adopts the following findings of fact and conclusions of law. For the reasons stated below, the Court will issue final judgment in favor of Defendant.

### I. FINDINGS OF FACT

1. Provencio worked for SBC Communications, [*2]  Inc. ("SBC") or its affiliate as a, systems technician for 22 years. Provencio's duties were physical; they included climbing ladders and telephone poles, and lifting up to 150 pounds.

2. Provencio applied for short-term disability benefits under the SBC Disability Income Plan ("the Plan"), the ERISA disability plan sponsored by his employer. Provencio complained that he was suffering from depression, anxiety, and panic attacks.

3. Provencio qualifies to receive 52 weeks of short-term disability benefits, if he is found to be "totally disabled," as defined by the Plan.

4. According to the Plan's terms, "Total Disability for (short-term disability) benefits means that due to an illness or injury you are

unable to perform all of the essential functions of your job or another available job assigned by your company with the same full- or part-time classification for which you are qualified." n1

> n1 Neither party addresses Provencio's eligibility for STD benefits based on "partial disability" under the Plan; thus, the Court does not address the issue.

[*3]

### A. Initial Benefits Determination

5. The SBC Medical Absence & Accommodations Resource Team ("SMAART"), a division of Sedgwick Claims Management Services, Inc. ("Sedgwick"), reviewed Provencio's application for benefits. n2

> n2 Sedgwick is an independent third party under contract with SBC Communications, Inc., to administer claims filed under the Plan. The Parties stipulate that Sedgwick is not an affiliate of SBC Communications, Inc., that Sedgwick has no role in the Plan's insurance, and that Sedgwick receives a flat fee for its services, without regard to whether it approves or denies claims under the Plan.

6. In a letter dated May 14, 2004, SMAART advised Provencio that "medical information to substantiate your disability is due" by May 21, 2004. n3 In an effort to obtain such documentation, a SMAART case manager contacted Provencio's primary care physician, Kevin Comfort, M.D., and his therapist, Charles Tatum, Ph.D., by telephone on May 18, 2004, to request copies of Provencio's medical [*4] records. n4

> n3 SBC DIP 0102.

> n4 SBC DIP 0006.

7. Provencio contacted SMAART on May 19, 2004, and May 20, 2004, to check the status of his claim. n5 On both occasions, SMAART informed Provencio that his claim was still pending, given that SMAART had not received his medical records. n6

> n5 SBC DIP 0007.

> n6 Id.

8. On May 21, 2004, the day that SMAART imposed as the deadline for the submission of Provencio's medical records, the SMAART case manager again contacted Dr. Tatum's office. n7 The case manager reiterated the request for medical records, explained that such records are "due today," and also noted that, if SMAART did not receive any medical records, Provencio's claim "will be denied for no medical." n8

> n7 Id.

> n8 Id.

[*5]

9. SMAART denied Provencio's disability claim in a letter dated May 24, 2004, which states:

"The determination to deny benefits is based on the fact that as of the date of this letter, we have not received medical documentation to estab-

2006 U.S. Dist. LEXIS 94845, *

lish your inability to perform your job as a Systems Technician, with or without reasonable accommodations." n9 In addition, the letter noted that SMAART bad not received any medical records from Dr. Comfort or Dr. Tatum. n10

n9 SBC DIP 0051.

n10 SBC DIP 0051-52.

10. SMAART had, however, received some of Provencio's medical records before it mailed the denial letter. Those records consisted of handwritten "progress notes" from Dr. Tatum, which were received by SMAART on the afternoon of May 21, 2004. Dr. Tatum wrote those progress notes during Provencio's office visits, on May 11, 2004, and May 18, 2004, According to the progress notes, Provencio exhibited extremely severe anxiety at that time. n11 The progress notes scored Provencio's job stress level and [*6] "physical symptoms" level as high. n12 In addition, the progress notes reveal that Provencio suffered from "moderate-severe depression" and that he reported experiencing moderate chest pain. n13 Apart from these concerns, however, the progress notes do not indicate any other major problems with Provencio's health. n14 In fact, using a scale of one to five (with one being not present, and five being "extremely severe"), Dr. Tatum assigned scores of one and two to all other symptoms listed on the progress notes. n15

n11 SBC DIP 0072.

n12 SBC DIP 0074.

n13 SBC DIP 0073; SBC DIP 0072.

n14 SBC DIP 0072; SBC DIP 0074.

n15 Id.

11. SMAART discovered that Dr. Tatum's progress notes had been submitted in a timely manner, and that they had not been reviewed before the denial letter was mailed. In an effort to correct this error, both the SMAART case manager, and a business unit manager reviewed Dr. Tatum's progress notes on May 25, 2004. n16 A notation in the SMAART claims log states that, [*7] even after Dr. Tatum's progress notes were reviewed, Provencio's medical records did "not support" a finding of disability. n17

n16 SBC DIP 0013.

n17 Id.

12. SMAART mailed a letter to Provencio on May 28, 2004, informing him that the review of Dr. Tatum's progress notes did "not alter the previous denial decision." n18

n18 SBC DIP 0050.

**B. Administrative Appeal of the Initial Benefits Determination**

13. SMAART advised Provencio of his right to appeal the denial of his initial claim determination to SMAART's appellate division, the "Quality Review Unit," and outlined in writing the procedures for doing so. n19

2006 U.S. Dist. LEXIS 94845, *

n19 SBC DIP 0067.

14. [*8] According to the "Appeal Procedures" document provided to Provencio, "medical evidence" is due "at the time that you file your appeal." n20 Among the medical evidence required to be submitted with the appeal were the following: a description of how Provencio's "level of functionality" impacted his ability to work and his daily activities, findings from mental and physical health examinations, diagnostic test results, and a list of Provencio's medications. n21

n20 Id.

n21 SBC DIP 0067-68.

15. On May 26, 2004, Provencio filed an administrative appeal of the denial with SMAART's Quality Review Unit. n22 Provencio did not submit additional medical documentation of his condition at the time he filed the appeal, as required by the Plan.

n22 SBC DIP 0064.

16. As a courtesy, SMAART extended the deadline for the filing of additional [*9] medical records for consideration in the appeal. Provencio ultimately presented additional medical evidence in support of his disability claim. That evidence consisted of notes from Provencio's visits to his primary care physician, Dr. Comfort, and a letter from his therapist, Dr. Tatum. n23

n23 SBC DIP 0056-60. The Court is unable to address the progress notes submitted by Dr. Comfort, as they are largely illegible.

17. Dr. Tatum's letter first explained that Dr. Tatum had treated Provencio "for a number of years" in connection with an "anxiety disorder." n24 Anxiety disorders, Dr. Tatum explained, result from arousal of the sympathetic nervous system, which, in turn, simulates the body's neurons and hormones. n25 Dr. Tatum noted that, in the past, arousal of Provencio's sympathetic nervous system caused Provencio to suffer from fainting spells. n26 Dr. Tatum wrote that, on May 11, 2004, Provencio's electrodermal response score, one measure of his sympathetic nervous system's activity, was "very high. [*10] " n27 After reviewing the electrodermal response score in light of his patient's previous medical history, Dr. Tatum wrote that, "I felt that Mr. Provencio could not work with his high level of anxiety[,] as it would place him in jeopardy of injury if he had one of his panic attacks while at work." n28

n24 SBC DIP 0056A.

n25 Id.

n26 Id.

n27 Id.

n28 Id.

18. According to the letter, Dr. Tatum saw Provencio again on May 18, 2004. During that office visit, Provencio complained of "dyspho-

ria, anergia, loss of motivation, concentration problems, short-term memory problems, and lower back pain," and registered a "Moderate-Severe" score on the Beck Depression Inventory. n29 "Again," Dr. Tatum explained, "I felt that [Provencio] needed to stay out of work[,] as I felt his symptoms were severe enough that he would not be able to safely perform his duties. Due to the amount of anxiety and depressive symptoms he was displaying, I did not think, that he was capable of performing [*11] any type of job until he could be stabilized." n30

n29 *Id.*

n30 *Id.*

19. An independent board certified psychiatrist, Robert N. Polsky, M.D., reviewed Provencio's claim for benefits on behalf of SMAART and the Quality Review Unit. As part of that review, Dr. Polsky considered the following documents: Provencio's claim file, the progress notes submitted by Dr. Comfort and Dr. Tatum, and Provencio's job description. n31 In addition, Dr. Polsky spoke with Dr. Tatum by telephone, about his diagnosis of Provencio's condition. n32

n31 SBC DIP 0044.

n32 SBC DIP 0045.

20. Dr. Polsky reported that "the rationale for the disability as given by Dr. Tatum is that of problems with memory and cognition[,] as well as concentration." n33 Dr. Polsky noted, however, that Dr. Tatum based this diagnosis not

"on a formal mental [*12] status examination[, but] rather on self reports and observations in general[,] such as that Mr. Provencio locked his keys and wallet in the car recently." n34 "The objective findings," Dr. Polsky concluded, "indicate that Mr. Provencio is not suicidal, parasuicidal, homicidal, or psychotic, nor is he unable to perform his activities of daily living. There are no formal mental status findings of an objective nature to substantiate significant problems with memory, cognition, or concentration. This lack of findings does not support an inability to perform job duties." n35 Accordingly, Dr. Polsky determined that Provencio was "not disabled." n36 Instead, Dr. Polsky diagnosed Provencio's condition as "major depression and panic disorder." n37

n33 *Id.*

n34 *Id.*

n35 *Id.*

n36 *Id.*

n37 *Id.*

21. After reviewing both Provencio's medical records and Dr. Polsky's report, the Quality Review Unit concluded that Provencio was not disabled under the terms of the Plan. As a result [*13] of this determination, the Quality. Review Unit upheld the denial of Provencio's benefits claim. n38 The Quality Review Unit explained the basis for this decision in a letter to Provencio, which states: "although some findings on examination are evident and support the need for continued treatment, your treatment providers did not provide sufficient observational clinical [sic] to support your self-

reported symptoms in the medical information they provided." n39 In addition, the Quality Review Unit noted that "the medical information does not show observational evidence of severe cognitive dysfunction documented in the form of mental status examination or functionality related to job duties. Evidence in the medical records does not support that a psychiatric condition has significantly impaired your ability to perform basic activities of daily living. n40

n38 SBC DIP 0040-42.

n39 SBC DIP 0041.

n40 *Id.*

22. SMAART did not directly notify Provencio of Dr. Polsky's identity at the time it issued [*14] the June 24, 2004 letter upholding the decision to deny disability benefits. n41 Instead, that letter merely informed Provencio that an unnamed, board certified psychiatrist had reviewed his file. n42 Because Dr. Polsky and Dr. Tatum discussed Provencio's condition over the phone, however, Dr. Tatum was aware of Dr. Polsky's identity prior to the conclusion of the administrative appeal.

n41 SBC DIP 0041.

n42 *Id.*

### C. Medical Records Submitted After the Administrative Appeal

23. SMAART considered its review of Provencio's claim closed on June 24, 2004, when the Quality Review Unit upheld the denial of benefits. Despite this fact, Provencio submitted ad-

ditional medical information to SMAART on several occasions after his appeal had been adjudicated, and requested that his claim be, reconsidered in light of those new records.

24. Citing its view that Provencio's case had already been closed, SMAART declined to consider the new documents. Among those documents was a letter from Dr. Tatum, [*15] which offered an explanation of the causes of Provencio's panic attacks. SMAART also refused to consider a letter from Dr. Comfort that supported Provencio's claim for disability.

25. In August of 2004, Provencio received notification from his supervisor that his leave time had expired and that he was requited to begin working again. Provencio returned to light duty work on August 23, 2004. He requested a job accommodation for his condition. Provencio's employer initially denied this request, but later granted it, subject to the condition that Provencio not have contact with electric wires or be required to climb telephone poles.

### II. CONCLUSIONS OF LAW

26. The Court reviews a challenge to a denial of benefits in an ERISA case "under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the teens of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S. Ct. 948, 103 L. Ed. 2d 80 (1989). "Under *Bruch*, therefore, when an administrator has discretionary authority with respect to the decision at issue, the standard of review should be one [*16] of abuse of discretion." *Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 295 (5th Cir. 1999) *(en banc).* In the instant case, it is undisputed that the Plan administrator has such discretion; the Plan provides that the "Claims Administrator... shall have full and exclusive authority and discretion to grant and deny claims under the Plan, including the power to interpret the Plan." n43 In addition, "for factual

determinations under ERISA plans, the abuse of discretion standard of review is the appropriate standard," even if the Plan does not expressly give the administrator discretionary authority. *Vercher v. Alexander & Alexander, Inc.,* 379 F.3d 222, 226 (5th Cir. 2004). Accordingly, abuse of discretion is the appropriate standard of review in this case.

n43 SBC DIP 0194.

27. "In applying the abuse of discretion standard, the Court analyzes whether the plan administrate acted arbitrarily or capriciously." *Meditrust Fin. Servs. Corp.. v. Sterling Chems., Inc.,* 168 F.3d 211, 214 (5th Cir. 1999) **[*17]** *(quoting Sweatman, v. Commercial Union Ins. Co.,* 39 F.3d 594, 601 (5th Cir. 1994)). When reviewing for arbitrary and capricious actions resulting in an abuse of discretion, the Court affirms an administrator's decision if it is supported by substantial evidence. *Id.* at 215. A decision is arbitrary only if "made without a rational connection between the known facts and the decision or between the found facts and the evidence." *Id. (quoting Bellaire Gen. Hosp. v. Blue Cross Blue Shield,* 97 F.3d 822, 828-29 (5th Cir. 1996)).

28. The Court must, therefore, determine whether the denial of Provencio's claim for short-term disability benefits is arbitrary and capricious as a matter of law by analyzing the evidence upon which Defendant based its decision. In so doing, the Court's review of the administrator's decision "need not he particularly complex or technical; it need only assure that the administrator's decision fall somewhere on a continuum of reasonableness-even if on the low end." *Vega,* 188 F.3d at 297.

29. In addition, "[c]hallenges to ERISA procedures are evaluated under the substantial Com-

pliance standard." *Robinson v. Aetna Life Ins Co.,* 443 F.3d 389, 392-93 (5th Cir. 2006) **[*18]** *(citing Lacy v. Fulbright & Jaworski,* 405 F.3d 254, 257 (5th Cir. 2005)). Accordingly, the Court will not requite "technical" compliance with ERISA procedures, as long as the purposes of the statute have been fulfilled. *See Robinson,* 443 F.3d at 392-93.

## A. Initial Benefits Determination

30. ERISA provides, in pertinent part:

> In accordance with regulations of the Secretary, every employee benefit plan shall-
>
> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
>
> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133 (2006). n44

> n44 The Plain Text of the SBC Disability Income Plan also states that the denial shall be in writing, and that the writing shall specify the reason for the denial. SBC DIP 0193.

**[*19]**

31. As a threshold matter, the Court finds that, proper written "notice" of the benefits determination, as required by 29 U.S.C. 1133(1), oc-

Case 3:05-cv-00196-TMB    Document 55-3    Filed 03/09/2007    Page 8 of 13

Page 8
2006 U.S. Dist. LEXIS 94845, *

curred when SMAART mailed Provencio the May 24, 2004, letter denying his claim.

32. Along with the requirement that the administrator notify the claimant in writing, 29 U.S.C. § 1133(1) also requires that such notification state the specific reasons for an administrator's decision to deny benefits. As quoted above, SMAART's May 24, 2004, letter provides the following specific reason for denying Provencio's claim: "The determination to deny benefits is based on the fact that as of the date of this letter, we have not received medical documentation to establish your inability to perform your job as a Systems Technician, with or without reasonable accommodations." n45 Provencio contends that this statement is false because SMAART had, in fact, received Dr. Tatum's progress notes before the date of the denial letter. As a result, Provencio claims, SMAART failed to substantially comply with 29 U.S.C. § 1133(1).

n45 SBC DIP 0051.

**[*20]**

33. As a factual matter, Provencio is correct; SMAART received Dr. Tatum's progress notes before it mailed the denial letter. Nevertheless, the administrative record reflects that on May 25, 2004, and May 26, 2004, SMAART did review Dr. Tatum's progress notes. n46 In fact, both the SMAART case worker and a business manager reviewed the progress notes, and noted in Provencio's file that the medical records did "not support" the established diagnosis, and that they were deficient, in that they "did not contain information from a mental status examination or description of [Provencio's] limitations based on observed" clinical findings. n47

n46 SBC DIP 0011-0013.

n47 SBC DIP 0013.

34. After reviewing Dr. Tatum's progress notes, SMAART mailed a second letter to Provencio, dated May 28, 2004, explaining that Dr. Tatum's progress notes did "not alter the previous denial decision," n48 *i.e.,* that "we have not received medical documentation to establish your inability to perform your job as a Systems **[*21]** Technician, with or without reasonable accommodations." Thus, even though the May 24, 2004, denial letter was based upon the erroneous assertion that SMAART had not received any medical evidence before denying the claim, SMAART cured this defect by reviewing Dr. Tatum's progress notes. Because SMAART ultimately reviewed Dr. Tatum's progress notes, and then notified Provencio in writing that the progress notes did not change the adverse benefit determination, SMAART substantially complied with its obligation under 29 U.S.C. § 1133(1) to provide Provencio with a specific, written reason for the adverse benefits determination. Accordingly, the Court does not find that Defendant abused its discretion in denying Provencio's initial benefits claim.

n48 SBC DIP 0050.

**B. Administrative Appeal of the Initial Benefits Determination**

35. Provencio also contends that his appeal to the Quality Review Unit did not amount to a "full and fair" review of his initial benefits determination, **[*22]** as required by 29 U.S.C. § 1133(2). In that respect, Provencio raises three arguments, which, he submits, constitute arbitrary and capricious behavior on the part of Defendant. First, Provencio contends that the Quality Review Unit did not review the same specific reasons that SMAART gave as a basis for denying his benefits claim. Second, Proven-

cio claims that there is no rational connection between the evidence that he presented in support of his disability claim and the Quality Review Unit's decision to uphold the denial of benefits. Third, Provencio suggests that SMAART improperly failed to disclose the identity of its expert, Dr. Polsky.

36. The Court first turns to Provencio's argument that the Quality Review Unit upheld the denial of benefits for reasons different from those stated at the time his initial claim was denied. Provencio contends that SMAART denied his initial benefits claim for one reason-that he failed to provide any medical evidence whatsoever to support his claim-and that the Quality Review Unit upheld the denial of benefits for another reason altogether-that Provencio's medical records were insufficient to establish that he was [*23] disabled under the terms of the plan.

37. The most relevant case cited in support of Provencio's argument that the Quality Review Unit did not review the same "specific reasons" upon which SMAART denied his initial benefits claim is *Robinson v. Aetna Life Insurance Company,* 443 F.3d 389 (5th. Cir. 2006). *Robinson* requires that the administrative appeal review the same "specific reasons" for the administrator's initial denial of benefits, and not the denial of benefits generally. *See id* at 393. In *Robinson,* the plan administrator first approved the claimant's initial application for benefits, after finding that the claimant's impaired vision precluded him from performing a material duty of his "field sales rep" job-driving a vehicle. *Id.* at 391. The plan administrator terminated the claimant's benefits, however, after reviewing a physician's statement, which said that the claimant had "no restrictions due to ocular history." *Id.* The claimant appealed the termination of benefits to the plan administrator, and included a letter from his physician, which stated that it was, in fact, hazardous for the claimant to drive. [*24] *Id.* at 392. The

plan administrator considered this evidence, but upheld the termination of benefits after determining that driving was not a material duty of a sales representative. *Id.* Thus, in *Robinson,* the plan administrator gave the claimant two different reasons for his benefits determination-first, that he was ineligible for benefits in light of the fact that he was able to perform the material duty of his job-driving-and second, that he was ineligible for benefits, in light of the fact that driving was *not* a material duty of the job. This "shifting justification" effectively meant that the plan administrator's specific reason for terminating the claimant's benefits was never reviewed at the administrative level, and therefore violated 29 U.S.C. § 1133(2): *Id.* at 393-94.

38. The facts of this case are unlike those in *Robinson,* however. As stated above, SMAART did not deny Provencio's initial benefits claim because he failed to provide any medical records at all. Rather, it considered the documents that were timely filed, and concluded that they did not support a finding of disability. n49 On appeal, [*25] the Quality Review Unit upheld the denial of benefits for exactly the same reason: Provencio's medical records did not support a finding of disability. n50 Thus, unlike the facts in *Robinson,* the Court finds that the plan administrator in the instant case did not abuse its discretion by giving one reason for the initial benefits determination and a wholly different reason for the benefits determination at the administrative appeal.

n49 SBC DIP 0050-53.

n50 SBC DIP 0040-0042.

39. Provencio next argues that there is no rational connection between the Quality Review

Unit's reason for upholding the denial of benefits and the medical evidence that supported his claim for disability. Provencio alleges, for example, that Dr. Polsky's conclusion that Provencio was "not suicidal, parasuicidal, homicidal, or psychotic" simply ignores evidence such as Dr. Tatum's progress notes and letter, which indicate that Provencio's depression, anergia, and anxiety prevented him from working. "Nothing" in ERISA, however [*26] "suggests that plan administrators must accord special deference to the opinions of treating physicians." *Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 831, 123 S. Ct. 1965, 155 L. Ed. 2d 1034 (2003). "Nor does the Act impose a heightened burden of explanation on administrators when they reject a treating physician's opinion. *Id.* Even though Dr. Polsky might well have addressed Provencio's reported symptoms more directly, and thoroughly, the administrative record makes clear that Dr. Polsky nevertheless reviewed all of the relevant information in Provencio's file, including Dr. Tatum's progress notes and letter. Although Dr. Polsky disagreed with Dr. Tatum's analysis of Provencio's condition, the Count cannot say that Dr. Polsky's report was so cursory as to fall below the "low end" on a "continuum of reasonableness." Similarly, the Court cannot hold that the Quality Review Unit's decision to rely upon Dr. Polsky's report, in making the ultimate decision to uphold the decrial of benefits, falls so far below the same standard, so as to constitute an abuse of discretion.

40. Provencio next contends that the plan administrator abused its discretion by failing to identify Dr. Polsky, the [*27] board certified psychiatrist who reviewed Provencio's medical information in connection with his administrative appeal. An ERISA plan administrator is requite to "[p]rovide for the identification of medical or vocational experts whose advice was obtained on behalf of the plan in connection with a claimant's adverse benefits determination, without regard to whether the advice

was relied upon in making the benefit determination." 29 C.F.R. § 2560.503-1(h)(3)(iv) (2006). Provencio reads this regulation as a requirement that the plan administrator identity the plan's medical expert directly to the claimant, before the conclusion of an administrative appeal. The express language of the regulation, however, merely requires the plan administrator to "provide for" the identification of a medical expert. *Id.*

41. Several reasons support the Court's conclusion that SMAART met its requirement to "provide for" the identification of its medical expert, Dr. Polsky. First, SMAART complied with Provencio's request to provide a copy of his entire file, which included Dr. Polsky's findings. n51

n51 SBC DIP 0036.

**[*28]**

42. Second, although Provencio did not request this information until after the conclusion of his administrative appeal, it is clear that Provencio's own doctor, Dr. Tatum, was aware of Dr. Polsky's identity during the course of the administrative appeal. Indeed, the two doctors spoke by telephone regarding Dr. Polsky's review of Provencio's medical records. Thus, Dr. Polsky's identity was no secret.

43. Third, the facts of this case are dissimilar to those in *Robinson,* to which Provencio again turns for support. In *Robinson,* the plan administrator purported to base its decision to deny benefits on the conclusions of a vocational expert. *Robinson,* 443 F.3d at 392. But in that case, the administrator never even contacted the expert upon whose opinion it purported to rely in malting that decision. *See id.* In Provencio's case, by contrast, it is undisputed that SMAART actually consulted Dr. Polsky.

2006 U.S. Dist. LEXIS 94845, *

44. Moreover, in *Robinson,* the nondisclosure of the expert's identity alone did not rise to the level of a failure to substantially comply with ERISA. Rather, it was the nondisclosure of the expert's identity, coupled with the administrator's **[*29]** "shifting justification" for denying the claimant's benefits claim, that amounted to a failure on the part of the administrator to substantially comply with 29 U.S.C. § 1133. *See id.* at 394.

45. Thus, after careful review, the Court cannot hold that the plan administrator abused its discretion by failing to "provide for the identification" of Dr. Polsky, in violation of 29 C.F.R. § 2560.503-1(h)(3)(iv).

## C. Medical Records Submitted After the Administrative Appeal

46. Last, Provencio contends that SMAART failed to consider medical records properly submitted after the conclusion of his administrative appeal on June 24, 2004. In particular, Provencio objects to SMAART's refusal to consider a July 1, 2004, letter from Dr. Tatum, n52 a July 15, 2004, letter from Dr. Comfort, n53 an October 12, 2004, letter from Dr. Tatum, n54 and a December 9, 2001, letter from Dr. Comfort. n55

n52 Defendant's Objections to Plaintiff's Trial, Exhibits, Exhibit A.

n53 *Id.,* Exhibit B.

n54 *Id.,* Exhibit C.

n55 *Id.,* Exhibit D.

**[*30]**

47. Assuming that both parties had an opportunity to present facts to the administrator, the Court's review of factual determinations is confined to the record available to the administrator. *Meditrust Fin. Servs. Corp.,* 168 F.3d at 215 (citing *Wildbur v. Arco Chem. Co.,* 974 F.2d 631, 639 (5th Cir. 1992)).

48. "A long line of Fifth Circuit cases stands for the proposition that, when assessing factual questions, the district court is constrained to the evidence before the plan administrator." *Vega,* 188 F.3d at 299. "Once the administrative record has been determined, the district court may not stray from it except for certain limited exceptions." *Id.*

49. Provencio alleges that, under *Vega,* the administrative record in this case should include the letters submitted by Dr. Tatum and Dr. Comfort after the conclusion of the administrative appeal. In support of that argument, Provencio points to the following language from *Vega:* "[T]he administrative record consists of relevant information made available to the administrator prior to the complainant's filing of a lawsuit and in a manner that gives the administrator **[*31]** a fair opportunity to consider it." *Id.* at 300. *Vega* also provides that:

> Before filing suit, the claimant's lawyer can add additional evidence to the administrative record simply by submitting it to the administrator in a manner that gives the administrator a fair opportunity to consider it. In *Moore,* we said that "we may consider only the evidence that was available to the plan administrator in evaluating whether he abused his discretion in making the factual determination." If the claimant submits additional information to the administrator, however, and requests the administrator to reconsider his decision, that additional information should

2006 U.S. Dist. LEXIS 94845, *

be treated as part of the administrative record. Thus, we have not in the past, nor do we now, set a particularly high bar to a party's seeking to introduce evidence into the administrative record.

*Id.* (internal citations omitted).

50. Defendant argues that if the Court admits the above-mentioned letters into the administrative record, a plan administrator's review process would become perpetual. That is, a plan administrator would be forced to consider medical documentation of a claimant's [*32] purported disability *ad infinitum,* even after, and in spite of, the fact that the claimant's initial adverse benefits determination had been upheld on appeal. n56

    n56 The Court notes that the Honorable Orlando L. Garcia, United States District Judge, before whom the instant action was originally filed, concurred with Defendant's position. In his Order Denying Defendant's Motion to Dismiss (Docket No. 6), Judge Garcia wrote that *"Vega* does not stand for the proposition that plaintiffs can insert evidence into the record after the administrative process has concluded."

51. The Court notes that there is some tension between the "long line" of cases that limit the district court's review to the evidence that the administrator itself considered, and the ability of the claimant to supplement the administrative record under *Vega.* On this point, *see Needham v. Tenet Select Benefit Plan,* No. Civ. A. 02-3291, 2004 U.S. Dist. LEXIS 1267, 2004 WL 193131, at *6-*9 (E.D. La. Jan. 30, 2004).

52. In this case, [*33] however, Defendant's argument is particularly persuasive. Provencio was well aware of the Plan's requirement that he submit all of his additional medical information at the time he filed his appeal. Nevertheless, Provencio failed to present any new medical evidence at that time. Rather than dismiss the appeal outright, Defendant graciously granted Provencio an extension of time in order to file medical records to support his appeal. But even when Provencio had this second chance to make his case on appeal, he submitted only limited set of additional medical records (all Of which the Quality Review Unit considered). Thus, it is clear that Provencio had not one, but two opportunities to present additional medical evidence in such away that would have allowed the administrator a fair opportunity to review that information on appeal. Indeed, he had even more of an opportunity to do so at the administrative level than the express terms of the Plan allowed. To permit Provencio yet a third opportunity to submit medical information-well after the conclusion of his appeal-would be to sanction an abuse of the administrative process, and would thwart the legitimate statutory purpose of allowing [*34] the claims administrator to decide the matter under fair and reasonable circumstances.

53. Because Provencio did not present the additional medical information in such a manner that would have allowed the administrator, a fair opportunity to consider it, the Court cannot maintain that Defendant abused its discretion in refusing to consider the four letters that Provencio submitted after the conclusion of his administrative appeal.

### III. CONCLUSION

For the reasons stated above, the Court finds that Defendant substantially complied with the requirements of ERISA.

### IV. ATTORNEYS' FEES

2006 U.S. Dist. LEXIS 94845, *

When determining whether to award attorneys' fees and costs in an ERISA case, the Court considers the following factors:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing party would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; [*35] and (5) the relative merits of the parties' position.

*Lain v. UNUM Life Ins. Co. of America,* 279 F.3d 337, 347-48 (5th Cir. 2002) (quoting *Iron Workers Local No. 272 v. Bowen,* 624 F.2d 1255, 1266 (5th Cir. 1980)). After careful consideration of these factors, the Court finds that an award of attorneys' fees is not warranted.

**SIGNED** this 5th day of December, 2006.

William Wayne Justice

Senior United States District Judge

**FINAL JUDGMENT**

On the basis of the findings of fact and conclusions of law set forth in the Memorandum Opinion of the Court, which has been issued simultaneously herewith, it is

**ADJUDGED** that the Plaintiff, John D. Provencio, take nothing from the Defendant, SBC Disability Income Plan, on his claims in the above-styled and numbered civil action.

**SIGNED** this 5th day of December, 2006.

William Wayne Justice

Senior United States District Judge