Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 21556932 (N.D.Cal.)
**(Cite as: 2003 WL 21556932 (N.D.Cal.))**

Page 1

C

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
N.D. California.
Joyce STROUSE, Plaintiff,
v.
PRUVALUE INSURANCE, Defendant.
**No. C 02-04237 TEH.**

July 8, 2003.

Beneficiary of an employee group disability insurance plan governed by the Employee Retirement Income Security Act of 1974 (ERISA) sued the plan administrator, challenging a denial of long term disability benefits. Following the administrator's removal of the action from state court, the District Court, J., held that the administrator's decision to deny benefits was not an abuse of discretion.

Summary judgment granted for the defense.

West Headnotes

**[1] Labor and Employment ⚖ 629(2)**
231Hk629(2) Most Cited Cases
(Formerly 296k126)
ERISA disability plan administrator's decision not to accept the opinion of a plan beneficiary's treating physician that the beneficiary was disabled was a rational determination based on the entirety of the medical record, and thus, denial of long term disability benefits was not an abuse of discretion; while it was clear that the physician was willing to be supportive of the beneficiary's desire to seek long-term disability benefits, his specific statements, and the medical record as a whole, did not provide substantial objective documentation to support the beneficiary's application. Employee Retirement Income Security Act of 1974, § 2 et seq., 29 U.S.C.A. § 1001 et seq.

**[2] Labor and Employment ⚖ 629(2)**
231Hk629(2) Most Cited Cases
(Formerly 296k126)
Failure of an ERISA plan administrator to have another health care provider review a plan beneficiary's medical file or to require the beneficiary to submit to a medical examination by a physician of its choosing did not render the administrator's decision to deny long term disability benefits arbitrary or capricious. Employee Retirement Income Security Act of 1974, § 2 et seq., 29 U.S.C.A. § 1001 et seq.

ORDER

HENDERSON, J.

I. *INTRODUCTION*

*1 Plaintiff's employer, Eric Electronics, provided long-term disability ("LTD") insurance coverage to its employees through an employee group disability insurance plan insured by defendants ("The LTD Plan"). The plaintiff, Joyce Strouse, applied for LTD benefits from defendants in February 2002 and was denied initially and after an administrative appeal. Thereafter, she filed the instant action against defendants in Alameda County Superior Court seeking review of defendants' decision denying benefits.

In September 2002, defendants removed this action to federal court pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"). On April 29, 2003, after receipt of the parties' trial briefs, this Court issued an Order to Show Cause why a trial was appropriate in this case, given the nature of the evidence plaintiff intended to present at trial. The parties' responses confirmed that a trial in this matter was not appropriate. Accordingly, on May 15, 2003, this Court vacated the trial date in this action and stated that the matter would be submitted on the papers and the administrative record before the Court. Shortly thereafter, on May 27, 2003, the Supreme Court decided *Nord v. Black & Decker Disability Plan,* 538 U.S. 822, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003). Given that *Nord* substantially impacted the trial briefs already filed in this action, the Court directed the parties to file supplemental briefs. Based on all of the trial briefs and supplemental filings submitted by the parties, and the entire record herein, the Court concludes, for the reasons set forth below, that defendants are entitled to a summary judgment in this case.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 21556932 (N.D.Cal.)
(Cite as: 2003 WL 21556932 (N.D.Cal.))

Page 2

## II. STANDARD OF REVIEW

Plaintiff does not dispute that the LTD Plan at issue is governed by ERISA, and that the LTD Plan vests the Plan Administrator with discretionary authority to determine eligibility for benefits. In such cases, the Administrator's decision is reviewed for abuse of discretion--even, where as here, there is an apparent conflict of interest because defendants are both the insurer and the claims review fiduciary--*unless* the plaintiff can demonstrate that the administrator acted under a serious or actual conflict of interest. To so demonstrate, the plaintiff must provide "material, probative evidence," beyond the apparent conflict, tending to show that the fiduciary's self-interest caused a breach of the administrator's fiduciary obligations to the beneficiary. In the event the plaintiff successfully satisfies this burden, the standard of review shifts from "abuse of discretion" to *"de novo"* unless the defendant can demonstrate that the conflict of interest did not affect its decision to deny benefits. Bendixen v. Standard Ins. Co., 185 F.3d 939, 943 (9th Cir.1999); Friedrich v. Intel Corp., 181 F.3d 1105, 1109-10 (9th Cir.1999).

As discussed in this Court's May 29, 2003 Order Directing Further Briefing, plaintiff's argument that she had demonstrated a serious or actual conflict rested on defendants' alleged failure to follow the "treating physician rule" set forth in Regula v. Delta Family-Care Survivorship Plan, 266 F.3d 1130, 1144-45 (9th Cir.2001). Given, however, that *Nord* rejected this rule, and plaintiff has not otherwise come forward with material, probative evidence (beyond the apparent conflict) tending to show a serious, actual conflict, this Court is limited to reviewing the Plan Administrator's decision for abuse of discretion. Bendixen, 185 F.3d at 942-43. Indeed, plaintiff concedes that an "abuse of discretion" standard applies to this matter in light of *Nord.* See Pl.'s June 9, 2003, Suppl. Brief at 2 ("In light of ... *Nord,* the appropriate standard of review ... is [the abuse of discretion standard] ... set forth in Taft v. Equitable Life Assurance Society, 9 F.3d 1469 (9th Cir.1993)).

*2 The abuse of discretion standard has been equated with "arbitrary and capricious" review. Canseco v. Construction Laborers Pension Trust, 93 F.3d 600, 605 (9th Cir.1996). Specifically, a plan administrator abuses her discretion if she (1) renders decisions without any explanation, (2) construes provision of the plan in a way that conflicts with the plain language of the plan, or (3) relies on clearly erroneous findings of fact in making benefit determinations. Taft v. Equitable Life Assurance Society, 9 F.3d 1469, 1472-73 (9th Cir.1993). In reviewing the administrator's decision, this Court is limited to reviewing the record that was before the administrator at the time of her decision. *Id.* at 1471-72. [FN1]

> FN1. Where an administrator's decision is reviewed for abuse of discretion, the matter is appropriately resolved on motions for summary judgment. Bendixen v. Standard Insur. Co., 185 F.3d at 942-43, and n. 2; *see also* Alford v. DCH Foundation Group Long-Term Disability Plan, 311 F.3d 955 (9th Cir.2002); *Taft,* 9 F.3d at 1472-73. As the Court indicated in its May 15, 2003 Order Vacating Trial, it intended to adjudicate this action based on the trial briefs already submitted (which fully addressed all issues) once the Court determined the appropriate standard of review (abuse of discretion or *de novo* ). No party objected to proceeding in this matter. Accordingly, for purposes of this Order, the Court construes the parties' trial briefs, and subsequent filings, as cross-motions for summary judgment.

## III. BACKGROUND FACTS

Strouse, now 58 years old, began employment as a Products Manager at Eric Electronics, located in San Jose, California, on October 12, 1983. Strouse remained at this company until February 16, 2003, at which point she left work, claiming that she was disabled due to dysfunctional peripheral neuropathy [FN2] and degenerative disc disease.

> FN2. The term "neuropathy" refers to any disease of the nervous system.

Beginning in 1997, plaintiff began experiencing various symptoms including back pain, hip pain, light-headedness, ankle swelling, balance problems, dizziness, and right-ear pain. She underwent numerous tests and evaluations, and in April 1999 an MRI of plaintiff's lumbosacral spine found a progression of moderate to moderately severe degenerative osteoarthritic changes at the L4- L5 disc level but no acute fractures or dislocations. (JS 106). [FN3] A May 1999 MRI of plaintiff's lumbar spine showed degenerative disk disease at the L4-5 level, with extensive end plate marrow changes, but no evidence of disk herniation or spinal stenosis (JS 40).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 3
Not Reported in F.Supp.2d, 2003 WL 21556932 (N.D.Cal.)
**(Cite as: 2003 WL 21556932 (N.D.Cal.))**

> FN3. All "JS" references are references to the administrative record, attached as Exhibits A and B to Plaintiff's Trial Brief, and Exhibit A to the Declaration of Ronald K. Alberts, filed in support of Defendants' Opening ERISA trial brief.

Plaintiff also underwent a brain MRI and audiological evaluations, all of which came back normal. In November 1999, however, she was diagnosed by a Dr. Gibbs as having some degree of peripheral neuropathy. He further stated, however, that given normal nerve conduction studies and other findings, he concluded that it would "probably fit in a relatively mild category." (JS 93- 94)

In September 2001, Strouse complained of severe back pain in the morning and was referred for physical therapy for several weeks (JS 119-121). In November 2001, Dr. John Ribaudo, Chief of the Neurology Department at Kaiser Permanent Medical Center in Fremont, California, examined plaintiff regarding her complaints that she could not walk at night in the dark and had trouble judging steps. She also complained of being depressed. Dr. Ribaudo concluded that plaintiff had peripheral neuropathy but was "stable" (JS 117-118). He also noted "chronic pain/depression," and bad arthritis. *Id.* Dr. Ribaudo saw Strouse again on February 20, 2002, and assessed her as "stable" (JS 115). Dr. Ribaudo's notes from a follow up visit on March 20, 2002 simply state "neuropathy, chronic pain" and identify various medications Strouse was taking: a hormone replacement, atenolol and HCTZ for hypertension, Motrin, and Welbutrin (for smoking cessation)) (JS 116).

*3 In January 2002, Strouse contacted Dr. Ribaudo, and informed him that she had decided that she needed to stop working permanently as of March 10, 2002. Strouse further asked Dr. Ribaudo if he would support a claim for long term disability (JS 114). Dr. Ribaudo responded that he would, and on February 28, 2002, he completed a "Disability Status Form" in which he stated that plaintiff was diagnosed with peripheral neuropathy and that she had a "permanent" disability (JS 25). He also referred to an "abnormal nerve conduction study" and "abnormal sensory testing" but provided no documentation or test reports.

On March 25, 2002, he completed an Attending Physician Statement required by defendants which identified plaintiff as having "peripheral neuropathy and low back pain" and stated that these illnesses caused plaintiff to stop working as of February 16, 2002 due to "a gradual progression of symptoms" which "are not expected to improve." He further stated that plaintiff's condition is "stable" but will "slowly worsen with time." In the "Return to Work Plan" section of the form he wrote "N/A." With respect to the specific impacts of plaintiff's condition on her employment, however, Dr. Ribaudo stated only that (1) the peripheral neuropathy impacts plaintiff's job performance by causing "unsteady walking," and (2) that her lower back pain impacts her job performance by causing "pain." In response to the question, "Did the employee have specific problems on the job?," Dr. Ribaudo answered "no." (JS 34-37).

In the Employer Statement provided by Eric Electronics, plaintiff's employer indicated that plaintiff's position was sedentary, requiring 7 1/2 hours of sitting, 15 minutes of walking, and 15 minutes of standing. (JS 12).

On April 18, 2002, defendants denied Strouse's claim for LTD benefits as of February 16, 2002, the date she stopped working. Defendants explained the decision as follows:

> The current available documentation does not support a significant change in ... your chronic peripheral neuropathy or degenerative disc disease that would have prevented performance of your sedentary job duties. Although you have conditions that may require medical treatment, the medical evidence does not support that you have impairments so severe that you are unable to perform the material and substantial duties of your regular occupation.

(JS 208). [FN4] Defendants further informed Strouse that she had the right to appeal the decision, and could provide any additional evidence or medical documents along with her appeal. *Id.*

> FN4. The LTD Plan defines "disability" as follows:
> You are disabled when Prudential determines that:
> • you are unable to perform the *material and substantial duties* of your *regular occupation* due to your *sickness* or *injury;* and
> • you have a 20% or more loss in your indexed monthly earnings due to that sickness or injury.
> • After 24 months of payments, you are disabled when Prudential determines that due to the same sickness or injury, you are

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 4
Not Reported in F.Supp.2d, 2003 WL 21556932 (N.D.Cal.)
**(Cite as: 2003 WL 21556932 (N.D.Cal.))**

> unable to perform the duties of any *gainful occupation* for which you are resaonably fitted by education, training or experience.
> (JS 176) (emphasis in original)

Strouse appealed in a letter dated April 29, 2002, in which stated that her conditions of peripheral neuropathy and degenerative disc disease had in fact worsened since being first diagnosed. She stated she was no longer able to perform her job duties because she can only sit for short periods of time before her legs and feet become numb, she has to hold onto her chair while sitting because she feels like she is falling, and before standing up she has to stomp her feet a few times to make sure she can feel the floor. She also stated that she can only sit for a short period of time before the lower pain in her back becomes unbearable, and she has to shift positions constantly when sitting because of pain. She also stated that if she moves her head or eyes quickly she becomes light headed, that she has a difficult time going up or down steep steps, and she uses a cane to compensate for balance and numbness problems. She can also not bend over due to balance problems. She also explained that she could not concentrate on her job duties, could not handle the pressure related to her job, and did not want to associate with anyone at work because all her energy was spent trying to contain her discomfort and pain. Plaintiff also stated that she had deteriorated further the last several weeks, and that doing simple house work had become very difficult (JS 143).

*4 Along with her letter of appeal, plaintiff provided a letter from Dr. Ribaudo, dated May 21, 2002, in which he explained that had mistakenly checked "no" on the Attending Physician Form to the question "Did the employee have specific problems on the job" and that he should have marked "yes." He also stated that he had reviewed Strouse's April 29, 2002 letter of appeal and that "he agree[d] with her symptoms." Finally, he states briefly that he reexamined Strouse during her regular monthly visit on May 20, 2002, and "it again clinically demonstrated that the patient had a peripheral neuropathy. Many people with peripheral neuropathy such as [Strouse] are unsteady and do have difficulty walking and performing things." (JS 141). Neither plaintiff nor Dr. Ribaudo provided any additional medical documentation or evidence to support the appeal.

On July 11, 2002, defendants denied Strouse's appeal, stating that her medical records indicated that while she had a "long-standing peripheral neuropathy," they also indicated that the condition was "stable" and she had "provided no physical examinations to document a change in [her] condition." Specifically, defendants emphasized that Dr. Ribaudo "did not provide any physical examination findings to support [plaintiff's] reported symptoms [in her letter of appeal], and that he did "not indicate that [plaintiff] would be precluded from performing sedentary work." With respect to the back pain, defendants noted that she had previously reported pain, but had been able to work during that period. Defendants further stated that in an April 2002 telephone conversation with plaintiff she had stated that she was not taking any medications. Defendants concluded:

> You have a long-standing condition with which you have worked, and the medical evidence does not indicate any change in this condition, at the time you stopped working, that would prevent sedentary work with the ability to self accommodate by changing positions for comfort. Therefore we are upholding our decision to deny your claim.

(JS 216). Plaintiff was informed that she had an opportunity to appeal again; plaintiff did not, however, pursue the remaining two levels of administrative appeal, but instead filed the instant action.

IV. *DISCUSSION*

[1] Plaintiff contends that defendants abused their discretion in denying plaintiff's application for LTD benefits because her treating physician, Dr. Ribaudo, concluded that she was disabled, and there was no medical opinion from another doctor finding that she was *not* disabled. Therefore, plaintiff, contends, it was arbitrary for defendants to reject her doctor's opinion.

As the Supreme Court recently made clear in *Nord*, however, a Plan Administrator is not required to accord any special weight or deference to the opinion of a treating physician or otherwise credit the opinions of treating physicians over other evidence relevant to the claimant's medical condition. *Nord*, 538 U.S. at ----, ---- - ----, 123 S.Ct. at 1968, 1971-72. On the other hand, the Plan Administrator can also not "arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." *Id.* at 1972. Here, however, the record does not indicate that defendants "arbitrarily refuse[d] to credit" Dr. Ribaudo's opinion. Rather, as explained below, the record amply demonstrates that the Plan Administrator's decision not to accept Dr. Ribaudo's opinion was a rational determination based

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d    Page 5
Not Reported in F.Supp.2d, 2003 WL 21556932 (N.D.Cal.)
**(Cite as: 2003 WL 21556932 (N.D.Cal.))**

on the entirety of the medical record.

*5 With respect to plaintiff's peripheral neuropathy, the record indicates that she was diagnosed with a "mild case" in 1999 by Dr. Gibbs. In 2001, Dr. Ribaudo confirmed the diagnosis, but describes plaintiff's condition as "stable." He did not, however, dispute Dr. Gibb' assessment that plaintiff's case was "mild," or otherwise indicate that it had progressed significantly since 1999. Similarly, notes from a February 2002 visit simply identify plaintiff as "stable." Thus, the objective medical evidence does not substantiate the assertion that plaintiff's condition had significantly worsened at the time benefits were denied. Significantly, Dr. Ribaudo only indicated on the Attending Physician Form that plaintiff's peripheral neuropathy impacted her job performance by causing "unsteady walking." Given, however, that plaintiff's job involves 7 1/2 hours of sitting, this statement fails to describe impacts that would preclude plaintiff from performing her job. While Dr. Ribaudo's May 21, 2002 letter, attached to plaintiff's appeal is sympathetic to plaintiff, it is not supported by any additional medical documentation. Moreover, Dr. Ribaudo's mild and rather vague statement that "[m]any people with peripheral neuropathy such as [plaintiff] are unsteady and do have difficulty walking and performing things" does not convincingly describe why plaintiff was unable to continue performing her sedentary job.

Similarly, with respect to plaintiff's degenerative disk ("DDD") disease, the medical documentation provided dates from 1999, and thus plaintiff fails to provide objective evidence of a significant change in her condition that required her to stop working altogether in February 2002. Again, Dr. Ribaudo's Attending Physician Form only indicated that plaintiff suffered "pain" as a result of her DDD, but did not detail the duration or severity of such pain. In addition, the record indicates that plaintiff did not feel that the pain was severe enough to require specific medication.

In sum, while it is clear that Dr. Ribaudo was willing to be supportive of plaintiff's desire to seek long-term disability benefits, his specific statements, and the medical record as a whole, did not provide substantial objective documentation to support plaintiff's application or appeal. As such, defendants did not act irrationally, or abuse their discretion, in deciding to reject Dr. Ribaudo's ultimate opinion regarding plaintiff's ability to return to work, and denying plaintiff's application for long term disability benefits.

[2] Finally, plaintiff summarily complains that the Plan Administrator could have had another health care provider review plaintiff's medical file but "did not do so." *See* Pl's Suppl. Brief. at 3. Nor, plaintiff points out, did the Plan Administrator "exercise its power" to require plaintiff to submit to a medical examination by a physician of its choosing. *Id.* As plaintiffs own argument indicates, however, such actions were discretionary. Thus, plaintiff has failed to show that defendants' failure to take such steps was automatic error. Nor has plaintiff demonstrated that such failures rendered defendants' decision arbitrary or capricious under the specific facts of this case. *See also Layes v. Mead Corp.*, 132 F.3d 1246, 1251-52 (8th Cir.1998) (Plan Administrator not required to obtain additional medical examination where medical evidence relied upon by plaintiff, on its, face, was insufficient to support claim of total disability).

V. *CONCLUSION*

*6 Accordingly, and for all the reasons set forth above, this Court finds, based on the administrative record before the Court, that the Plan Administrator's decision to deny plaintiff LTD benefits did not constitute an abuse of discretion. Good cause appearing therefore, the Court denies summary judgment in favor of plaintiff and grants summary judgment in favor of defendants.

IT IS SO ORDERED.

Not Reported in F.Supp.2d, 2003 WL 21556932 (N.D.Cal.)

**Motions, Pleadings and Filings (Back to top)**

• 3:02cv04237 (Docket) (Sep. 06, 2002)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.