CO-COUNSEL FOR PLAINTIFF

Timothy W. Seaver
Seaver & Wagner, LLC
421 West First Ave., Suite 250
Anchorage, Alaska 99501
Tel. 907-646-9033
Fax. 907-276-8238
Email: tseaver@seaverwagner.com

George T. Freeman
 Attorney at Law
1152 P Street
Anchorage, Alaska 99501
Tel. 907-274-8497
Fax 907-274-8497 (call first)
Email: gtf@gci.net

UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF ALASKA

DANIELA VALENOTE,

        Plaintiff,

vs.

METROPOLITAN LIFE
INSURANCE
COMPANY, and RIM
ARCHITECTS
(ALASKA), INC.,

        Defendants.

Case No. 3:05-cv-00196 (TMB)

**PLAINTIFF DANIELA C. VALENOTE'S REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT AND OPPOSITION
TO DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT**

## Table of Contents

1.    DEFENDANT'S STATEMENT OF THE FACTS MISSTATES THE
      ACTUAL RECORD IN NUMEROUS RESPECTS..........................2

2.    METLIFE'S    ARGUMENT    REGARDING    ITS    DEMAND    FOR
      "OBJECTIVE" EVIDENCE MISSTATES THE LAW AND DISTORTS
      THE RELEVANT FACTS ...........................................10

3.    EVEN IF DEFENDANT'S COULD REQUIRE OBJECTIVE EVIDENCE
      OF  A  CONDITION  (THEY  CLEARLY  CANNOT)  VALENOTE
      PROVIDED SUCH EVIDENCE ......................................18

4.    DEFENDANT'S   ARE   EITHER   SILENT   AS   TO   NUMEROUS
      IRREGULARITIES AND THEREFORE CONCEDE THEM OR WHEN
      THEY  ARE  NOT  SILENT  FAIL  TO  OFFER  ANY  PERSUASIVE
      OPPOSITION TO VALENOTE'S CLAIMS .............................21

      a.  MetLife Failed to Dispute that it Provided Inconsistent Reasons for its
          Denials...................................................21

      b.  MetLife  Failed  to  Dispute  that  it  Improperly  Required   Objective
          Medical Evidence of Ms. Valenote's Condition..........................24

      c.  MetLife Failed to Dispute that it did not to Give Ms. Valenote a Full
          and Fair Review of the Denial...............................24

      d.  MetLife  Failed  to  Dispute  that  it  did  not  Ask  Ms.  Valenote  for
          Necessary Evidence and to Properly Investigate the Claim..............24

      e.  MetLife Does Not Dispute that it Failed to Consider Evidence Received
          After the First Denial......................................26

      f.  MetLife Cannot Dispute that it Failed to Credit Ms. Valenote's Reliable
          Evidence and Cherry Picked Other Evidence..........................27

      g.  MetLife Does Not Dispute that it Failed to Provide Necessary Records
          to its "Independent" Consultants............................27

5.    METLIFE MISTATES THE LAW REGARDING THE ADMISSION OF
      ADDITIONAL EVIDENCE..........................................29

a.  Contrary to MetLife's Claims, *Abatie* Instructs that Additional Evidence May be Admitted in Several Circumstances.................................29

b.  Based on Defendant's Procedural Irregularities, The Court should Admit Ms. Valenote's Additional Evidence................................32

6.    JUDGMENT AWARDING BENEFITS IS PROPER REMEDY ...........36

Conclusion.......................................................................38

## Table of Authorities

### Statutes

29 U.S.C. § 1133 (ERISA)..............................................................13

20 C.F.R. Section 404.1567.........................................................9, 32

20 C.F.R. § 2560.501-1(g)................................................13, 15, 22, 24

### Case Authorities

*Abatie v. Alto Health & Life Ins. Co.,* 458 F.3d 955 (9th Cir. 2006)..................passim

*Baker v. MetLife,* 2006 WL 3782852 (M.D.Tenn.).....................................19, 23, 35

*Black & Decker Disability Plan v. Nord,* 538 U.S. 822 (203)...............................28

*Booten v. Lockheed Med. Benefit Plan,* 110 F.3d 1461 (9th Cir. 1997)..................14, 25

*Canseco v. Const. Laborers Pension Trust,* 93 F.3d 600, 609 (9th Cir. 1996)..............35

*De Dios Cortes v. MetLife, Inc.,* 122 F.Supp.2d 121, 132-33.................................35

*Brucks v. Coca-Cola Company,* 391 F.Supp. 2d (N.D. Ga. 2005).......................10-16

*Dabertin v. HCR Manor Care, Inc.,* 235 F.Supp.2d 853, 867(N.D.Ill. 2002)..............35

*Dionida v. Reliance Standard Life Ins. Co.,* 50 F.Supp.2d 934, 942 (N.D.Cal. 1999).....35

*Glenn v. MetLife,* 461 F.3d 660 (6th Cir. 2006).........................................23

*Govindarajan v. FMC Corp.,* 932 F.2d 634 (7th Cir. 1991)................................35

*Grossmuller v. International Union, United Auto., Aerospace & Agric. Implement Workers of Am., UAW,* 715 F.2d 853, 858-59 (3rd Cir. 1983)................................35

*Kalish v. Liberty Mutual/Liberty Life,* 419 F.3d 501 (6th Cir. 2005).........................28

*Kearney v. Standard Ins. Co.,* 175 F.3d 1084, 1096 (9th Cir. 1999).........................35

*Lang v. LTD Plan of Sponsor Applied Remote Technology, Inc.*, 125 F.3d 794 (9th Cir. 1997)............................................................................................30

*Laucks v. Provident Companies*, 1999 WL 33320463 (M.D.Pa. 1999)....................36

*May v. Metropolitan Life Ins. Co.*, 2004 WL 2011460 (N.D. Cal. 2004)…....…....19, 32

*Mongeluzo v. Baxter Travenol Disability Ben. Plan*, 46 F.3d 938, 943 (9th Cir. 1995)...35

*Pralutzky v. Metropolitan Life Ins. Co.*, 435 F.3d 833 (8th Cir. 2006)...................10-16

*Rementer v. MetLife*, 2006 WL 66721 (M.D.Fla.)..........................................9, 23

*Schleibaum v. Kmart Corp.*, 153 F.3d 496, (7th Cir. 1998)...................................25

*Schneider v. Century Group LTD Plan*, 442 F.3d 621, 628-29 (2005 7th Cir.)............25

*Sin v. Metropolitan Life Ins. Co.*, 2006 WL 3716750 (D.Or. Dec. 13, 2006)….......passim

*Smith v. Continental Cas. Co.*, 450 F.3d 253(6th Cir. 2006)..................…........29

*Vanderklok v. Provident Life & Accident Ins. Co.*, 956 F.2d 610, 617 (6th Cir. 1992)....25

*White v. Aetna Life Ins. Co.*, 210 F.3d 412, (D.C.Cir. 2000)..................................25

CO-COUNSEL FOR PLAINTIFF

Timothy W. Seaver
Seaver & Wagner, LLC
421 West First Ave., Suite 250
Anchorage, Alaska 99501
Tel. 907-646-9033
Fax. 907-276-8238
Email: tseaver@seaverwagner.com

George T. Freeman
Attorney at Law
1152 P Street
Anchorage, Alaska 99501
Tel. 907-274-8497
Fax 907-274-8497 (call first)
Email: gtf@gci.net

UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF ALASKA

DANIELA VALENOTE,

        Plaintiff,

vs.

METROPOLITAN LIFE
INSURANCE
COMPANY, and RIM
ARCHITECTS
(ALASKA), INC.,

        Defendants.

Case No. 3:05-cv-00196 (TMB)

## PLAINTIFF DANIELA C. VALENOTE'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT

At 37 years old and working in a well-respected architectural firm, Ms. Valenote had a bright future as an architect. That future is less bright now and disability benefits are a small consolation for what Ms. Valenote has lost. Among other things, those benefits replace only a fraction of what she was earning. It does nothing to replace the pleasure she took in her job and the success she had in performing that job. But those benefits are not insignificant and most importantly,

Plaintiff's Reply and Opposition to Cross Motion for Summary Judgment
*Valenote v. MeLife*, Case No. 3:05-cv-00196 (TMB)
Page 1 of 38

Ms. Valenote is entitled to them. She is entitled to them because she is disabled. That much is clear. Not only does she have the reasoned opinion of her treating physician, but she has the "objective" evidence of a functional capacity exam supporting that opinion. Moreover, the record demonstrates that this evidence could have and would have been provided to MetLife during the claim process had MetLife fulfilled its duties as a fiduciary to clearly state the reasons for its denial and to specifically inform Ms. Valenote what she needed to provide to respond to that denial. Even so, Ms. Valenote did provide MetLife with ample evidence of her disability. But those efforts were met with a studied contempt for Ms. Valenote's right to a full and fair review.

With so little to base its defense on it is little wonder that MetLife would seek to diminish the recent and seminal en banc decision from the Ninth Circuit in *Abatie*. Indeed, it is no wonder that *Abatie* is not even mentioned until half way through MetLife's brief and that most of the minimal discussion MetLife actually devotes to *Abatie* is completely contrary to the actual holding of the case. Much as MetLife would like to, it cannot turn the clock back to a pre-*Abatie* world and the numerous cases that MetLife cites that are inconsistent with *Abatie* must be disregarded as inconsistent with the current state of the law.

## 1. DEFENDANT'S STATEMENT OF THE FACTS MISSTATES THE ACTUAL RECORD IN NUMEROUS RESPECTS

Plaintiff's opening memorandum sets forth the facts in detail. Ms. Valenote will not reiterate those facts here. However, because MetLife's factual recitation includes numerous errors, discussion of those facts is necessary to insure the Court has an accurate picture of the record in this case. If anything, MetLife's repetition of obviously inaccurate statements reveals the depth of the conflict of interest and the effect of the procedural irregularities.

MetLife begins its brief with the claim that Ms. Valenote and her attending physicians "could provide no objective evidence that she was disabled from

Plaintiff's Reply and Opposition to Cross Motion for Summary Judgment
*Valenote v. MeLife*, Case No. 3:05-cv-00196 (TMB)
Page 2 of 38

performing her own profession."[1] The claim is false on several levels. First, Dr. Polston's disability determination demonstrates that the so-called "objective" evidence of work impact <u>could</u> have been obtained had MetLife simply asked for it as required by ERISA.[2]

Dr. Polston's disability opinion relies on a functional capacity evaluation and Ms. Valenote's October 6, 2003 intern architect job description, which was approved by her employer and was based on the Department of Labor's Occupational Outlook Handbook. MR202-204. Dr. Polston is a specialist in pain medicine and took over Ms. Valenote's primary treatment after Dr. Anderson left his pain clinic. Dr. Polston's opinion that Ms. Valenote's intern architect job required light to medium level of work and that she is incapable of performing even sedentary work for an 8 hour day is not only clearly relevant, but provides direct refutation of MetLife's blanket claim that Ms. Valenote "could provide no objective evidence that she was disabled." And, the MetLife's policy definition of disability as the inability to earn 80% of pre-disability intern architect occupation income is straightforward.    MetLife's protestations about Dr. Poston are unavailing.

Second, MetLife's claim is false for another reason – Ms. Valenote did provide substantial both objective and subjective evidence of her disability. That evidence is discussed in detail in section 3 below and will not be repeated here.

Third, MetLife's claim is contradicted by the statements of MetLife itself in its diary entry of October 23, 2003. That entry shows that MetLife understood that Ms. Valenote's "functional ability is questionable considering subjective complaints presented <u>and objective findings</u>." MetLife Exhibit A at 5 (Dkt. 51).[3]

---

[1]      Def. Cross Motion for SJ at 1.

[2]      Dr. Gregory M. Polston, M.D., affidavit, and attached Exhibits 1 though 7.

[3]      Notably, MetLife did not initially disclose this document in discovery. And only disclosed it after Ms. Valenote had filed her initial brief.

Plaintiff's Reply and Opposition to Cross Motion for Summary Judgment
*Valenote v. MeLife*, Case No. 3:05-cv-00196 (TMB)
Page 3 of 38

In addition, MetLife's own consultant stated in his November 20 report that Ms. Valenote's "intensity-of-service implies that patient's pain is severe" but noted that there was "no opinion by any of patient's medical professionals that patient's pain has been sufficiently severe to preclude work subsequent to 5/1/03." [See MR246] Even though MetLife never specifically informed her as required by ERISA that she needed to provide additional evidence along these lines, Ms. Valenote did provide such an opinion in the form of a letter from Dr. Lorentzen dated March 5, 2003. That letter stated that Ms. Valenote's "injuries have been debilitating and at no time since she initiated care with my office [in May 2003] has she been able to return to work." [MR264 and MR281] Notably, just as it did during the claim process, MetLife's brief continues to ignore Dr. Lorentzen's letter.

MetLife's memorandum also starts out with the remarkably inaccurate statement that Ms. Valenote "was not continuously disabled during the 90-day elimination period."[4]    MetLife's own "diary" shows that, in fact, MetLife completely abandoned the elimination period issue as early as September 17, 2003:

> EE continued to be seen by treating doctors and physical therapist during and after elimination period. She sought another AP [attending physician]. EE claims she has remained unable to work. Based on this info, the denial on the basis of not meeting the elimination period is null. Claim needs to be eval on the basis of the definition of disability.

MetLife Exhibit A at 3 (emphasis added). This shows that MetLife knew that the elimination period issue was bogus. Despite this admission, MetLife's opposition once again returns to the thoroughly discredited claim that Ms. Valenote was released to work, released by her doctor, released by her physical therapist, and

---

[4]    Def. Cross Motion for SJ at 1-2.

Plaintiff's Reply and Opposition to Cross Motion for Summary Judgment
*Valenote v. MeLife*, Case No. 3:05-cv-00196 (TMB)
Page 4 of 38

working part-time during the elimination period.    Indeed, MetLife's brief repeatedly returns to these thoroughly discredited claims.

For example, MetLife's brief at page 5 states that "Dr. Orzechowski, M.D., advised MetLife that Valenote was not released from work (and, therefore was able to work) until September 23, 2003" and cites the diary for October 2 at MetLife Exhibit A at 4.  MetLife then repeats this at page 12 of its brief.  By the time of the brief, however, MetLife certainly knew that that the diary and these representations were not accurate.  The diary shows that MetLife never actually spoke with Dr. Orzechowski, and instead only spoke with a staff member, who obviously misstated the facts.  MetLife certainly knew this because three days earlier, on September 26, Ms. Valenote provided MetLife with a September 22, 2003 from Dr. Orzechowski himself stating he released her from work on December 18, 2002.  MR174.  When MetLife got it wrong again on November 26, Ms. Valenote yet again provided another December 11, 2003 letter from Dr. Orzechowski stating that he released Ms. Valenote from work on December 18, 2002 and on February 19, 2003. MR268.  These are but two examples of the MetLife's ongoing disregard of reality.  That these thoroughly discredited issues appear yet again as justification of MetLife's actions merely demonstrates the paucity of MetLife's defense

MetLife's brief also distorts the record regarding Dr. Downs.  MetLife states that it "conferred" with Dr. Downs and that she "advised MetLife that the 'neurological examination was unremarkable.'"[5]   MetLife then sates that "Dr. Down's office advised that it had not restricted Valenote from returning to work."[6]  But MetLife never actually talked with Dr. Downs.  The diary entry for September 17 shows that MetLife instead reviewed Dr. Down's records, presumably provided on August 15. MetLife Exhibit A at 3 and MR111-117.

---

[5]    Def.Cross Motion for SJ at 4.5.
[6]    *Id.*

Plaintiff's Reply and Opposition to Cross Motion for Summary Judgment
*Valenote v. MeLife*, Case No. 3:05-cv-00196 (TMB)
Page 5 of 38

MetLife's brief and the diary ignores the June 3 record with Dr. Downs' opinion that Ms. Valenote suffered from "chronic pain." MR113. MetLife's brief and the diary also ignore Dr. Downs' July 7 record reporting that Ms. Valenote "feels very frustrated that she is now unable to work at her chosen profession due to her pain." MR112. The July 7 record indicates that Dr. Downs was going to "refer her to the pain clinic."

Even putting aside MetLife's inaccuracies regarding Dr. Downs, MetLife's reliance on Dr. Downs is inexplicable. The "diary" entries for September 19 and 25 show that MetLife realized that Dr. Beard was no longer the attending physician and that MetLife needed "to address who is certifying the EE disability[.]" MetLife Exhibit A at 3. But Dr. Downs was not the primary treating physician. This role had been transferred from Dr. Beard to Dr. Anderson at the pain clinic. Thus, a conference in September with Dr. Downs' staff was of minimal relevance to Ms. Valenote's claim in any case. Rather MetLife should have been attempting to contact Dr. Anderson, Ms. Valenote's actual treating physican. According to MetLife's "diary," MetLife never once sought to speak personally with Dr. Anderson during the claims process.

MetLife's brief repeats the inaccurate assertion that Dr. Beard released Ms. Valenote back to work on May 1, 2003, even though Ms. Valenote had resigned effective that day because of her chronic pain.[7] Plaintiff's opening memorandum refuted these inaccurate statements by pointing out that the source of this issue was a March 27, 2003 record which actually did not contain a return to work recommendation and instead indicated that she should not return to work before May 1.[8]  MR123.  Plaintiff also pointed out that Dr. Beard's April 29, 2003 records did not contain a return to work recommendation.[9]  MR195. As pointed

---

[7]     Def. Opp/Cross Motion for SJ at 5,6, 12.
[8]     Plaintiff Motion for SJ at 8-13, 15.
[9]     Plaintiff Motion for SJ at 9, 15.

Plaintiff's Reply and Opposition to Cross Motion for Summary Judgment
*Valenote v. MeLife*, Case No. 3:05-cv-00196 (TMB)
Page 6 of 38

out in Ms. Valenote's initial brief, these documents could not possibly be deemed return to work recommendations. Indeed, during the claim process, Ms. Valenote completely refuted this issue twice, and MetLife itself abandoned it in the final appeal. Thus, this issue provides yet another instance that MetLife has sought to return to an issue that it had itself abandoned by the time of its final denial.

In an effort bolster its bogus claim that Ms. Valenote had returned to work during the elimination period and to disparage and cast doubt on Ms. Valenote's character, MetLife points to a October 22, 2003 letter from Dr. Beard  MetLife points to Dr. Beard's incorrect assertion in this letter that Ms. Valenote had worked part-time after May 1. This was based on an incorrect nurse note. As discussed before, Ms. Valenote and her former employer completely refuted the part-time work misstatement on October 28 and November 11. MR232, MR237 MetLife was and is fully aware that Ms. Valenote never worked at all after February 21, 2003. Among other things, MetLife told Virgina Valenote, the patient advocate, that it understood that Ms. Valenote had never worked since February 2003.[10] And, Dr. Lorentzen's March 5, 2004 letter to MetLife indicated Ms. Valenote "has been unable to work" since he started treating her in May 2003. MR308. Not surprisingly given its own recognition that this issue was "null," MetLife abandoned the part-time work issue at the last appeal.

But MetLife's goal here is more insidious. Specifically, it uses the letter to criticize Ms. Valenote for being frustrated and upset regarding Dr. Beard's misstatements and for demanding that Dr. Beard correct the record. Something that Dr. Beard inexplicably failed to do. In fact, given MetLife's persistence in relying on a statement that the record repeatedly shows to be false and which

---

[10]    *See* reference to this MetLife statement in the May 4, 2004 appeal at MR265 and Virginia Valenote Affidavit; *see also* MetLife Exhibt A at 3. In addition, Virginia Valenote's statement is admissible because it is the statement of a party opponent and because it is part of the administrative record.

Plaintiff's Reply and Opposition to Cross Motion for Summary Judgment
*Valenote v. MeLife*, Case No. 3:05-cv-00196 (TMB)
Page 7 of 38

MetLife internally recognized as "null" demonstrates that Ms. Valenote's frustration was absolutely reasonable.

Even putting aside the obvious inaccuracy of Dr. Beard's letter, the letter is irrelevant because Dr. Beard was no longer the attending physician in October 2003. In September, Ms. Valenote explained that her care had been transferred to a specialist in pain medicine because Dr. Beard "could not figure out where pain originates." MR164. MetLife's "diary" confirms that MetLife realized by September 19 that Dr. Beard was no longer the attending physician. MetLife Exhibit A at 3. Moreover, MetLife's October 23, 2003 "diary" entry that Ms. Valenote's "functional ability is questionable considering subjective complaints presented and objective findings" shows that it did not rely on Dr. Beard's October 22 letter on this issue. MetLife Exhibit A at 5.

Attempting to show that it complied with the dictates of *Abatie* MetLife's brief states at page 4 footnote 2 that it was in "frequent contact" with Dr. Lorentzen. The claim is directly contradicted by MetLife's "diary." The only "diary" reference relating to Dr. Lorentzen is on July 14, 2004. MetLife Exhibit A at page 12. This was long after the June 22, 2004 final denial. This is all the more troubling because Ms. Valenote specifically asked MetLife, on May 4, 2004, to speak with Dr. Lorentzen. MR265. In addition, Ms. Valenote's patient advocate asked MetLife, on May 20, 2004, to speak personally with both Dr. Lorentzen and Dr. Anderson about Ms. Valenote's "intractable pain." MR316. Indeed, at MetLife's specific request, the patient advocate left Dr. Anderson's phone number with MetLife on November 3, 2003. MetLife Exhibit A at 7. But, the "diary" and other documents do not indicate even one attempt by either MetLife or its consultants to attempt to speak personally with Dr. Anderson or Dr. Lorentzen during the entire claim process. *See* MR249, MR243, MetLife Exhibit A. It is telling that these records show that instead of attempting to contact the actual

Plaintiff's Reply and Opposition to Cross Motion for Summary Judgment
*Valenote v. MeLife*, Case No. 3:05-cv-00196 (TMB)
Page 8 of 38

relevant treating professionals, MetLife instead continued to attempt to contact Dr. Beard's office long after she had ceased to be Ms. Valenote's attending physician.

Finally, MetLife's brief at page 4 and page 18 attempts to cast confusion regarding Ms. Valenote's actual job description. Specifically, against all of the evidence, MetLife seeks to argue that Ms. Valenote's position is sedentary. But to make such an argument MetLife must ignore most of the relevant evidence and distort the rest. First, MetLife ignores the October 6, 2003 intern architect job description submitted by Ms. Valenote and specifically approved by her employer. MR202-204. MetLife's brief also ignores the employer's June 12 letter stating that Ms. Valenote's "work included occasional field supervision of projects on the construction site." MR77. Instead, MetLife tries to shift the focus to the employer's June 16 completion of a MetLife form. MR82. But even in referring to the June 16 form MetLife distorts the actual meaning of the document. Specifically, MetLife ignores that, to the extent possible in a form provided by MetLife, it is essentially consistent with the October 6 job description and with the Department of Labor Occupational Outlook Handbook regarding the job duties of an intern architect. Thus, both the October 6 description and the June 16 form state that Ms. Valenote's duties required that she "walk on uneven ground" and that she spend up to 2 hours of each day in each of the following activities: walking, standing, bending over, twisting and climbing. In sum, contrary to MetLife's thoroughly disingenuous claim, none of these descriptions describe a "sedentary job," as only occasional walking or standing meets this definition.[11]

---

[11]    *See* 20 C.F.R. Section 404.1567 at Exhibit 6 to the Dr. Gregory M. Polston, M.D. affidavit. *See also, Rementer v. MetLife*, 2006 WL 66721 (M.D.Fla. 2006) at 3 (referencing a definition of sedentary work in part as "sedentary work involves sitting most of the time but may involve walking or standing for brief periods. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.").

Plaintiff's Reply and Opposition to Cross Motion for Summary Judgment
*Valenote v. MeLife*, Case No. 3:05-cv-00196 (TMB)
Page 9 of 38

MetLife's effort to distort Ms. Valenote's duties is all the more obvious in light of the Department of Labor's Occupation Outlook Handbook. There the position of architect includes carrying manuals from 3 to 20 pounds, business travel, walking on uneven ground, and site visits requiring bending, climbing ladders and scaffolds and crawling. As Dr. Polston reasonably concluded, these job duties describe light to medium level of work. Of course, this issue is essentially moot in light of the February 2005 functional capacity evaluation showing that Ms. Valenote could not perform the duties of even a sedentary occupation for more than four hours a day.

2.    **METLIFE'S ARGUMENT REGARDING ITS DEMAND FOR "OBJECTIVE" EVIDENCE MISSTATES THE LAW AND DISTORTS THE RELEVANT FACTS**

Much of MetLife's opposition hinges on its claim that it "may properly require" "objective evidence to support [Valenote's] alleged disability."[12] But MetLife misses the holdings of the very cases on which it principally relies: *Pralutzky v. Metropolitan Life Ins. Co.*,[13] and *Brucks v. Coca-Cola Company*.[14] Indeed, MetLife provides an extensive quote from *Brucks* that, on its face, contradicts MetLife's actions in this case.

In relying on *Brucks* MetLife seek to conflate two opposing concepts: first, the administrator's ability to require evidence of the impact of a disability on the claimant's ability to perform her job; and second, the administrator's ability to require objective evidence of the underlying condition itself. The cases, including *Brucks*, make absolutely clear that an administrator may lawfully require the second kind of evidence, but cannot require the first. For example, in the language

---

[12]    Def. Cross Motion for SJ at 15.
[13]    435 F.3d 833 (8th Cir. 2006).
[14]    391 F.Supp. 2d (N.D. Ga. 2005).

Plaintiff's Reply and Opposition to Cross Motion for Summary Judgment
*Valenote v. MeLife*, Case No. 3:05-cv-00196 (TMB)
Page 10 of 38

immediately preceding MetLife's lengthy quote from *Brucks*, the court cites another case to explain this distinction:

> A few guiding principles are evident from the case law. If the denial of [a plaintiff's] claim is based on the lack of objective medical evidence of disease, which a claimant with CFS would typically be unable to provide, it would run afoul of the courts' recognition that it is arbitrary and capricious for a plan to require objective evidence of the etiology of CFS, when it is widely recognized that there is no conclusive laboratory test for CFS. If the denial of [a plaintiff's] claim is based on the lack of substantial objective medical evidence of symptoms or their affect on her ability to work, ... that would be consistent with opinions upholding insurers' denials of long-term disability benefits. 2005 WL 1801943, at *15; *see also Boardman*, 337 F.3d at 17 n. 5 ("[The administrator] did not require [the plaintiff] to present objective medical evidence to establish her illnesses.... Rather, [it] wanted objective evidence that these illnesses rendered her unable to work. While the diagnoses of [CFS] and fibromyalgia may not lend themselves to objective clinical findings, the physical limitations imposed by the symptoms of such illnesses do lend themselves to objective analysis.").[15]

This distinction is reiterated in MetLife's quote from the next paragraph in which *Brucks* states that it is acceptable to require evidence of the "impact of a diagnosed disease...."[16]

Despite applying a standard significantly more favorable to the administrator than that articulated by the Ninth Circuit in *Abatie*, *Pralutzky* nevertheless makes clear that, in cases like that presented here where Ms. Valenote was diagnosed with chronic pain/fibromyalgia, it is per se unreasonable to require objective evidence of a disabling condition. As *Pralutzky* explains: "There may be other cases in which objective evidence simply cannot be obtained, and it would

---

[15]    391 F. Supp. 2d at 1205, *quoting Karvalis v. Reliance Standard Life Ins. Co.*, 2005 WL 1801943, at 18-19 (S.D. Tex. 2005).
[16]    *Id.*

Plaintiff's Reply and Opposition to Cross Motion for Summary Judgment
*Valenote v. MeLife*, Case No. 3:05-cv-00196 (TMB)
Page 11 of 38

be unreasonable for an administrator to demand the impossible."[17]    This conclusion is precisely consistent with *Sin v. MetLife*, which was cited and discussed by Ms. Valenote in her initial brief. Interpreting the exact same policy that is at issue here, *Sin* concluded that nothing in the policy permitted the administrator to require objective evidence of the claimant's actual condition.

Perhaps the most important lesson from both *Brucks* and *Pralutzky* is that an administrator may not require objective evidence under any circumstances where the administrator has not clearly articulated what is required of the claimant. As *Pralutzky* stated:

> This is not a case in which MetLife unreasonably expected Pralutsky to guess what evidence would satisfy the plan administrator. MetLife specifically identified and requested additional clinical evidence supporting the severity of Pralutsky's condition. Immediately after she applied for benefits, MetLife wrote a letter describing the information that it required to complete her application, including "treatment records from July 2000 to present" and test results, medication records, and a treatment plan. (A.R. at 65). MetLife directly provided the <u>Fibromyalgia</u> Initial Functional Assessment Form to Dr. Ormiston and sent a fax to both Dr. Tveten and Dr. Ormiston requesting office records from initial evaluation to the present, and information about her current restrictions, prognosis, course of treatment, whether Pralutsky had reached her maximum medical improvement, and whether the doctors would suggest a graduated return to work then or in the future. (A.R. at 56, 72). The nature of the evidence MetLife was seeking was brought to Pralutsky's attention later in the application process as well. In its response to her appeal letter, MetLife indicated that she should provide "treatment records from [her] treating physicians that indicate [her] current treating diagnosis, restrictions and limitations, and ongoing current treatment plans" and "clinical findings and rationale" to support her disability claim. (A.R. at 83).

*Brucks* is equally damning of MetLife's conduct here:

---

[17]    435 F.3d at 838.

Plaintiff's Reply and Opposition to Cross Motion for Summary Judgment
*Valenote v. MeLife*, Case No. 3:05-cv-00196 (TMB)
Page 12 of 38

Here, the Coca-Cola Defendants' objective-evidence requirement did not relate to fuzzy issues of causation… or the etiology of conditions such as CFS, <u>fibromyalgia</u>, etc.-conditions which do not admit readily to objective measurement or quantification. <u>Instead, Plaintiff was asked to provide objective evidence of the effect of her CFS symptoms on her ability to perform the normal duties of her job by, for instance, undergoing a functional capacity evaluation to determine Plaintiff's tolerance for standing, sitting, or walking</u>. Unlike the plaintiff in *Durr,* Plaintiff here was repeatedly advised during the claims process that she was required to submit objective evidence of the effect of CFS to support her claim, <u>even providing specific examples of the type of objective evidence that would be considered and how to obtain it.</u>[18]

These decisions are consistent with the other cases cited by both parties and merely reiterate what is required by the plain language of ERISA and the relevant regulations.    For example, ERISA Section 1133(a) requires the fiduciary to provide "adequate notice in writing" of the "specific reasons for such denial, written in a manner calculated to be understood by the participant." Moreover, 29 C.F.R. § 2560.501-1(g) requires the notification to set forth 'in a manner calculated to be understood by the claimant -- (i) the specific reason or reasons for the adverse determination" and (iii) [a] description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary." The Ninth Circuit has made clear that the administrator bears the burden of satisfying each of these requirements:

> But to deny the claim without explanation and without obtaining relevant information is an abuse of discretion. *See Kunin v. Benefit Trust Life Ins. Co.,* 910 F.2d 534, 538 (9th Cir.1990) (<u>burden is on plan to obtain adequate information to make decision</u>); *cf. Halpin v. W.W. Grainger, Inc.,* 962 F.2d 685, 691 (7th Cir.1992) (an ERISA plan cannot rely on a lack of information to support its denial of

---

[18]     391 F. Supp. 2d at 1205 (emphasis added).

Plaintiff's Reply and Opposition to Cross Motion for Summary Judgment
*Valenote v. MeLife,* Case No. 3:05-cv-00196 (TMB)
Page 13 of 38

benefits when it fails to inform the beneficiary about the missing information so that the beneficiary can provide it).[19]

Despite the dramatic difference between the administrators' conduct in *Brucks* and *Pralutzky* and MetLife's conduct here, Metlife nevertheless attempts to shoe horn the present case into the holdings of those cases. Thus, MetLife's claim that, just as in *Brucks*, Ms. Valenote was "advised throughout the claims process that she was required to submit objective clinical findings to support her alleged physical limitations and her impact on her ability to perform the normal duties of her job."[20] For this claim, MetLife points to three record citations. The first citation is to the <u>final</u> denial. This is little more than a cruel joke, as it is beyond dispute that even if the denial advised Ms. Valenote of any such requirements (it did nothing of the sort) it was too late for Ms. Valenote to do anything about it.

MetLife's second citation is to the November 26, 2003, denial (the second denial). MetLife does not explain what part of that letter allegedly advised Ms. Valenote "that she was required to submit objective clinical findings to support her alleged physical limitations and her impact on her ability to perform the normal duties of her job." The only part of that letter that offers anything even resembling an actual requirement for the submission of information is the obviously boilerplate language: "When requesting this review, please state the reason(s) you believe the claim was improperly denied, and submit any additional comments, documents records, or other information relating to your claim that you deem appropriate for us to give your appeal proper consideration." To argue that this language somehow equates to the kind of specific requests approved by *Brucks*

---

[19]    *Booton v. Lockheed Med Ben. Plan*, 110 F.3d 1461, 1464 (9th Cir. 1997) (emphasis added). Notably, in reference to this same proposition, *Abatie* cites favorably to <u>*Booton*. *Abatie*, 458 F.3d at 968.</u>

[20]    Def. Cross Motion for SJ at 19.

Plaintiff's Reply and Opposition to Cross Motion for Summary Judgment
*Valenote v. MeLife*, Case No. 3:05-cv-00196 (TMB)
Page 14 of 38

and *Pralutzky* or satisfies the burden imposed by 29 C.F.R. § 2560.501-1(g), fails the straight face test.

Finally, MetLife cites to a note of a phone call by the claims manager with Ms. Valenote. Putting aside the self serving nature of a written note of a phone call and the undisputed fact that the note was not followed up by any written correspondence clarifying what was required of Ms. Valenote, this note still fails to support MetLife's claim. The relevant part of the note is as follows: "[claims manager] explained that she would need to have [attending physician] provide add'l medical documentation supporting objective medical findings."[21]    In fact, as the following section explains, Ms. Valenote did respond to this request. In any case, this kind of vague request appears to be precisely what *Pralutzky* means when it refers to the kind of "case in which the [administrator] unreasonably expected [the claimant] to guess what evidence would satisfy the plan administrator."[22]    It is also appears to be consistent with the kind of "fuzzy issues of causation… or the etiology of conditions such as CFS, fibromyalgia, etc." deemed unreasonable by *Brucks*.[23]    Indeed, to the extent that this "request" is comprehensible at all, it appears to constitute precisely the kind of impermissible request for objective evidence of the condition itself.

It is particularly telling that *Brucks* makes specific reference to the administrator's request for "objective evidence of the effect of her CFS symptoms on her ability to perform the normal duties of her job by, for instance, undergoing a functional capacity evaluation to determine Plaintiff's tolerance for standing, sitting, or walking."[24]    In its cross motion, MetLife makes two connected assertions: first, it was Ms. Valenote's burden of proof to establish disability; and

---

[21]    MetLife Exhibit A at 21.
[22]    435 F.3d at 838.
[23]    391 F. Supp. 2d at 1205.
[24]    *Id.* (emphasis added).

Plaintiff's Reply and Opposition to Cross Motion for Summary Judgment
*Valenote v. MeLife*, Case No. 3:05-cv-00196 (TMB)
Page 15 of 38

second, that it was Ms. Valenote's obligation to obtain a functional capacity evaluation ("FCE"). In light of the plain language of ERISA and the holdings of the cases cited by both parties, these issues are red herrings. In other words, Ms. Valenote does not argue that MetLife bore the burden of "proving" that she was not disabled or that it was MetLife's obligation to obtain a FCE. On the contrary, she merely asserts, consistent with the law, that if MetLife required specific evidence from her it needed to request it specifically. It is beyond dispute that MetLife knew that Ms. Valenote had been diagnosed with chronic pain syndrome/fibromyalgia,[25] yet MetLife never once requested evidence of the "impact" of this condition "on her ability to perform the normal duties of her job by, for instance, undergoing a functional capacity evaluation to determine Plaintiff's tolerance for standing, sitting, or walking."[26]

In sum, a side-by-side comparison of the actual requests for additional evidence by the administrators in *Brucks* and *Pralutzky* with the vague and minimal requests by MetLife discussed above demonstrates that MetLife's conduct falls far short of MetLife's obligations under ERISA and the relevant regulations.

Finally, the ambiguous general conclusion in the November 26 denial clearly violates ERISA.[27] MR248-250. The November 26 denial primarily and deceptively focused on specific inaccurate factual reasons and the specific reason of the 90 day elimination period, even though MetLife's diary shows that it had long abandoned the elimination period reason. MetLife Exhibit A at 3. The November 26 denial also mentions the December 2002 MRI and the October 2003 discography, but then inaccurately states that Ms. Valenote continued to work

---

[25]    MetLife Exhibit A at 22, bottom.
[26]    *Brucks*, 391 F. Supp. 2d at 1205.
[27]    The ambiguous general conclusion in the November 26 denial parallels the ERISA violation in *Sin v. MetLife*, 2006 WL 3716750 (D.Or. Dec. 13, 2006) at 5 and 7.

Plaintiff's Reply and Opposition to Cross Motion for Summary Judgment
*Valenote v. MeLife*, Case No. 3:05-cv-00196 (TMB)
Page 16 of 38

part-time a fact that MetLife also knew to be untrue. *See* MR237. MetLife followed these specific reasons with an ambiguous general conclusion about "continued impairment" and "objective medical evidence" being "incongruent" with long term disability. The only reasonable way to interpret these vague statements is to assume that they reference the preceding specific reasons for the denial.

MetLife had the July 3, 2003 "Basic Function Exam." MR189-94. MetLife had the October 6, 2003 employer approved intern architect job description. MR202-204. MetLife's diary shows that it knew in September that the elimination period issue was "null" and that it would be evaluating the matter "on the basis of the definition of disability." MetLife Exhibit A at 3. MetLife's diary shows that it knew in October that Ms. Valenote's "functional ability is questionable considering subjective complaints presented and objective findings." MetLife Exhibit A at 5. MetLife knew that both Dr. Beard, and Dr. Anderson recommended a FCE.[28] MetLife also had its consultant's report stating that her "intensity-of-service implies that patient's pain is severe" but noting that he did not see any opinions by her medical professionals on her inability to work. MR243-246. Despite this knowledge, however, the November 26 denial chose to rely on much different specific factual reasons for the denial along with an ambiguous general conclusion that had no meaning except in connection with the prior false factual claims. This sent Ms. Valenote on a wild goose chase in which she again refuted the specific inaccurate factual reasons and the erroneous elimination period issue in her last appeal.

Importantly, the final ambiguous general conclusion in the November 26 denial gave no indication to Ms. Valenote that anything else was required of her. Ironically, if one takes Defendants' current cross-motion seriously, the very

---

[28]    See MR74 (Dr. Beard re FCE), MR229 (Dr. Anderson re FCE) and MetLife diary at MetLife Exhibit A at 8 (re FCE).

Plaintiff's Reply and Opposition to Cross Motion for Summary Judgment
*Valenote v. MeLife*, Case No. 3:05-cv-00196 (TMB)
Page 17 of 38

evidence that MetLife claims Ms. Valenote failed to provide is contained in Dr. Polston's current opinion.    Thus, had MetLife followed the clear dictates of ERISA and the very cases on which it relies here, Ms. Valenote could have provided precisely the sort of information that is included in Dr. Polston's opinion on disability based on the employer approved October 2003 job description and the February 2005 functional capacity examination.    If MetLife needed an FCE or further opinions from a medical doctor (other than Dr. Lorentzen) on the effect of Ms. Valenote's condition on her ability to work as an intern architect, ERISA required them to ask for it.    And had they done so they would have received the very documents they seek to exclude here.

### 3.    EVEN IF DEFENDANT'S COULD REQUIRE OBJECTIVE EVIDENCE OF A CONDITION (THEY CLEARLY CANNOT) VALENOTE PROVIDED SUCH EVIDENCE

Defendants' brief erroneously asserts that Ms. Valenote failed to provide "objective" medical evidence of her disability.[29] However one interprets this claim (whether objective evidence of her condition or evidence of the impact of that condition) the claim is false.

Ms. Valenote's opening memorandum sets forth the numerous medical records provided to MetLife by Ms. Valenote or which MetLife gathered itself. These records show multiple pain complaints and the doctors' opinions that Ms. Valenote suffered from chronic pain. As stated above, this is sufficient on the medical condition because the policy does not and could not require "objective"

---

[29]    See e.g., Def. Cross Motion for SJ at 5 ("additional medical documentation supporting objective medical findings"); 13 ("lack of objective medical evidence proving plaintiff's disability").

Plaintiff's Reply and Opposition to Cross Motion for Summary Judgment
*Valenote v. MeLife*, Case No. 3:05-cv-00196 (TMB)
Page 18 of 38

medical evidence of a condition that is not usually susceptible to "objective" evidence such as chronic pain.[30]

Regardless, in this case, MetLife admits that it actually received "objective" medical evidence of chronic pain. MetLife's "diary" entry for July 31, 2003 states that MetLife spoke with Ms. Valenote and "explained that she would need to have AP [attending physician] provide additional medical documentation supporting objective medical findings. EE understood and was going to f/u with AP." MetLife Exhibit A at 21.     (The MetLife diary also confirms that MetLife understood by September 19 that Dr. Beard was no longer the attending physician. Id. at 3.)   Dr. Beard sent additional medical documents on August 8 [MR105-110], Dr. Downs sent medical documents on August 18 [MR111-117], and Dr. Orzechowski sent medical documents on August 20. MR125-135  In addition, after the August 29 denial, Ms. Valenote sent MetLife medical records from Dr. Anderson's pain clinic. MR173-196

The October 23, 2003 "diary" entry states that MetLife's nurse consultant opined that the "medical information provided <u>does</u> indicate that EE has c/o pain for an extended period of time" and, importantly, that Ms. Valenote's "<u>functional ability is questionable</u> considering subjective complaints presented and <u>objective findings</u>."   MetLife Exhibit A at 6 (emphasis added). This was based on medical records from Dr. Anderson's pain clinic showing that the December 2002 MRI that revealed disc protrusions at L5-S1 and L3-4, pain complaints and surgical procedures performed on August 5, and September 16. Id.

Later that same day, Ms. Valenote told MetLife that Dr. Anderson had performed a discography and that she believed it showed "torn discs." Id. at 6. Then on November 4 MetLife reviewed the October 6 and October 14 medical

---

[30]   *Sin v. MetLife*, 2006 WL 3716750 (D.Or. December 13, 2006) at 5; *May v. MetLife*, 2004 WL 2011460 (N.D.Cal. 2004) at 8-9; *Baker v. MetLife*, 2006 WL 3782852 (M.D.Tenn. 2006) at 18.

Plaintiff's Reply and Opposition to Cross Motion for Summary Judgment
*Valenote v. MeLife*, Case No. 3:05-cv-00196 (TMB)
Page 19 of 38

requirement that a denial "set[] forth in a manner calculated to be understood by the claimant... [t]he specific reason or reasons for the denial."[33]  Nor does it comply with the requirements of 29 C.F.R. §2605-1(g) that the administrator provide specific reasons and a detailed description of additional material necessary to perfect the claim and why such information is necessary.  Thus, the other reasons included in the denials necessarily form the actual bases of the denials. Because MetLife does not even attempt to dispute that those reasons changed, ERISA precludes MetLife from arguing that its reasoning remained consistent throughout the claim process.

MetLife's response to the new rationale issue is unavailing.[34]  The only case cited by MetLife is *Provencio v. SBC Disability Income Plan*.[35]  Provencio worked as a communications systems technician in a physical job that required climbing telephone poles and lifting as much as 150 pounds.[36]  He suffered from mental depression and moderate chest pain and provided only limited medical records on his initial claim.[37]  Significantly, in direct contrast to this case and consistent with the other cases relied upon by MetLife, the initial denial in *Provincio* specifically advised the claimant that he needed to provide medical evidence "of how [his] 'level of functionality' impacted his ability to work and his daily activities" as well as referencing other specific information required of the claimant.[38]

Thus, unlike this case, in *Provencio*, the fiduciary complied with ERISA by clearly stating what it needed from the claimant.  It did not try to hide the ball by, for example, referring to an elimination period as a specific reason for the denial

---

[33]   *See Sin v. MetLife,* 2004 WL 2011460 (N.D.Cal. 2004) at 7.
[34]   Def. Cross Motion for SJ at 22-23.
[35]   2006 U.S. Dist. LEXIS 94845 (W.D.Tex. December 5, 2006).
[36]   *Id.* at 4.
[37]   *Id.* at 5-6.
[38]   *Id.* at 8.

Plaintiff's Reply and Opposition to Cross Motion for Summary Judgment
*Valenote v. MeLife*, Case No. 3:05-cv-00196 (TMB)
Page 22 of 38

when it really needed a functional capacity evaluation. It did not provide a "shifting justification" such as, for example, stating that the initial denial was based on an elimination period and then asserting that the final denial was based on an alleged failure to follow-up with the doctor after a surgical procedure.

Even a cursory review of the June 22, 2004 final denial demonstrates that MetLife finally abandoned the prior specific denial reasons in the November 26 denial and asserted a new rationale for the final denial. In other words, the final denial does not try to use the elimination period, nor does it rely on the previously asserted bogus issue of Ms. Valenote being "released to return to work." Instead, the final denial refers to the new independent consultant, which Ms. Valenote could not rebut, and the December 2003 IDET surgical procedure as the specific reasons for the final denial. The final denial then cherry-picks demonstrably false statements from the new consultant's report about the alleged lack of follow-up after the IDET and the alleged failure to become involved in physical therapy.

What makes the present case an example of flagrant bad faith is the fact that MetLife's own diary appears to suggest that it actually considered these new reasons to be irrelevant. Ms. Valenote previously pointed out that MetLife knew that these new specific reasons were completely false because it had Ms. Valenote's May 4, 2004 appeal.[39] And, she also previously pointed out federal court criticism of MetLife about inaccurate cherry-picking of information.[40] Regardless, the important point here is that MetLife flagrantly violated ERISA because its new last minute rationale in the final denial prevented a full and fair review of the new "specific reasons" at the administrative level.[41]

---

[39]     See Plaintiff's Opening Memorandum at pages 26-31.

[40]     See Plaintiff's Opening Memorandum at pages 39-40, citing *Glenn v. MetLife*, 461 F.3d 660, 672 n. 4 (6th Cir. 2006); *Rementer v. MetLife,* 2006 WL 66721 (M.D.Fla.) at 3. *See also Baker v. MetLife*, 2006 WL 3782852 (M.D.Tenn. December 20, 2006) at 20 (arbitrary to "hand-pick[] among medical evidence").

[41]     *Abatie*, 458 F.3d at 974.

Plaintiff's Reply and Opposition to Cross Motion for Summary Judgment
*Valenote v. MeLife*, Case No. 3:05-cv-00196 (TMB)
Page 23 of 38

**b.    MetLife Failed to Dispute that it Improperly Required Objective Medical Evidence of Ms. Valenote's Condition**

This is issue was addressed in section 2, above.  As argued above, to the extent that MetLife's reference to lack of objective evidence can be comprehended at all, it related to Ms. Valenote's medical condition.  It certainly cannot be argued that, at any time during the claim process, MetLife made any effort to meet its burden to distinguish clearly between "objective" evidence of Ms. Valenote's condition as opposed to "objective" evidence of the "impact" of that condition and then specifically request that information as required by ERISA.

**c.    MetLife Failed to Dispute that it did not to Give Ms. Valenote a Full and Fair Review of the Denial**

Although making various conclusory claims regarding its denials, MetLife failed to address head on the issue of its failure to give Ms. Valenote a full and fair review of its denial.  Specifically, MetLife failed even to dispute that part of a full and fair review requires that the complainant be clearly informed of the basis for the denial and that the administrator make clear what it requires from the claimant in order to respond to the denial.  This issue is addressed in detail in section 2, above.

**d.    MetLife Failed to Dispute that it did not Ask Ms. Valenote for Necessary Evidence and to Properly Investigate the Claim**

As discussed in section 2 above, MetLife failed to provide any specific requests to Ms. Valenote regarding the type and substance of the information required of her.   Indeed, ERISA requires and 29 C.F.R. § 2560.501-1(g)(iii) specifically states that the notification must provide "[a] description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary."  Although not mentioned by Defendants, Plaintiff's opening memorandum pointed out that

Plaintiff's Reply and Opposition to Cross Motion for Summary Judgment
*Valenote v. MeLife*, Case No. 3:05-cv-00196 (TMB)
Page 24 of 38

the Ninth Circuit decision in *Booton* is absolutely clear on this burden for the fiduciary, and that, if something more is needed, the fiduciary "must ask for it."[42] *Abatie* cites *Booton* for the procedural irregularities of "failure to adequately investigate a claim or ask the plaintiff for necessary evidence."[43]   Other Circuits support *Booton* on this important requirement.[44]  Vague and conclusory statements like that provided at the end of the November 26 denial clearly fail to discharge the administrator's burden under the law.

There is another aspect to MetLife's failure here that is mentioned in *Abatie* -- MetLife's failure to properly investigate Ms. Valenote's claim.  As to this issue, Ms. Valenote's initial brief included a detailed list of medical documents that MetLife simply failed to obtain despite requesting releases for those documents. Among those documents were various records from Dr. Anderson, Ms. Valenote's primary treating physician throughout most of the claim process.

Not only has MetLife failed to dispute any of these allegations, but its newly produced "diary" provides even further demonstration of its bad faith. Specifically, the "diary" demonstrates that despite explicitly requesting and

---

[42]      *Booton,* 110 F.3d 1463; (at the time of *Booton,* the CFR section was 29 CFR Section 2560.503-1(f)).

[43]      *Abatie,* 458 F.3d at 968.

[44]      *See Schneider v. Century Group LTD Plan*, 442 F.3d 621, 628-29 (2005 7th Cir.) (holding that failure state specifically what is required of claimant to respond to denial violates 29 C.F.R. § 2560.503-1(g)(iii)); *White v. Aetna Life Ins. Co.,* 210 F.3d 412, (D.C.Cir. 2000) (vague statement about "lack of clinical information" did not meet ERISA requirement of specific reason and requesting additional information necessary to perfect claim; failed to indicate that treating doctor had failed to certify disability claim);  *Schleibaum v. Kmart Corp.*, 153 F.3d 496 (7th Cir. 1998) (vague statement  advising to "forward any additional information or medical reports you wish to have considered as part of your appeal" violated ERISA because it did not indicate "what information to submit to perfect his claim"); *Vanderklok v. Provident Life & Accident Ins. Co.*, 956 F.2d 610, 617 (6th Cir. 1992) (vague conclusion that "proof submitted does not establish" disability is a conclusion and not a reason and failed to apprise claimant of what was needed; significant error that required fiduciary's decision to be overturned);

Plaintiff's Reply and Opposition to Cross Motion for Summary Judgment
*Valenote v. MeLife*, Case No. 3:05-cv-00196 (TMB)
Page 25 of 38

receiving Dr. Anderson's telephone number,[45] neither MetLife nor its medical consultants ever even attempted to speak personally with Dr. Anderson.[46] This failure is indeed extraordinary given that MetLife was fully aware that Dr. Anderson had taken over Ms. Valenote's care from Dr. Beard as early as July 2003.

MetLife also failed to dispute (and the "diary" also confirms) that MetLife never provided its independent consultants with a variety of documents relevant to Ms. Valenote's claim.

MetLife's principal response to Ms. Valenote's claims here is to reiterate its claim that it is Ms. Valenote's burden to provide proof of disability. But this argument simply ducks the issue. In other words, MetLife's response ignores *Abatie*'s clear dictate that an administrator is obligated both to "adequately []" investigate a claim" and "ask the plaintiff for necessary evidence."[47] MetLife clearly failed to do both of these things.

### e.    MetLife Does Not Dispute that it Failed to Consider Evidence Received After the First Denial

In her initial motion, Ms. Valenote listed a series of specific evidence that she provided to MetLife following its initial denial, which MetLife failed to consider. Other than offering vague and conclusory claims regarding its consideration of Ms. Valenote's subsequently submitted evidence, MetLife failed to demonstrate that it in fact considered this evidence.

---

[45]    MetLife Exhibit A at 7.

[46]    *See* diary at MetLife Exhibit A, MR249, MR243.

[47]    *Abatie*, 458 F.3d at 968.

Plaintiff's Reply and Opposition to Cross Motion for Summary Judgment
*Valenote v. MeLife*, Case No. 3:05-cv-00196 (TMB)
Page 26 of 38

**f.    MetLife Cannot Dispute that it Failed to Credit Ms. Valenote's Reliable Evidence and Cherry Picked Other Evidence**

In her initial motion, Ms. Valenote listed a series of specific evidence that she provided to MetLife following its initial denial, which MetLife failed to consider.  In responding to this claim, MetLife lists a series of records that it claims its consultant did review.[48]  But conspicuously absent is any discussion of the documents that Ms. Valenote identified that MetLife did not review.

Indeed, MetLife's brief argument as to this issue offers the best possible demonstration of MetLife's failure.  Thus, MetLife quotes from its first consultant for the conclusion that "Available information does not include an opinion provided by any of patient's medical professionals that the patient's pain has been sufficiently severe to preclude work subsequent to 5/1/03."[49]  This claim flatly ignores that Ms. Valenote did provide the opinion of Dr. Lorenzten which concluded that Ms. Valenote's "injuries have been debilitating and at no time since she initiated care with my office has she been able to work." MR 308 As Ms. Valenote demonstrated in her initial brief, this conclusion was not only completely ignored, but MetLife actually distorted a singe sentence from the same opinion letter to support its conclusion final.   The very fact that MetLife would yet again return to a conclusion that was obviously contradicted by the record offers the strongest evidence of MetLife's failure to credit reliable evidence.

**g.    MetLife Does Not Dispute that it Failed to Provide Necessary Records to its "Independent" Consultants**

In response to Ms. Valenote's claims that MetLife failed to provide necessary records to its "independent" consultants, MetLife offers a single

_____

[48]    Def. Cross Motion for SJ at 13.
[49]    _Id. citing_ MR246.

Plaintiff's Reply and Opposition to Cross Motion for Summary Judgment
_Valenote v. MeLife_, Case No. 3:05-cv-00196 (TMB)
Page 27 of 38

conclusory sentence in a footnote.  As MetLife states: "Plaintiff's assertion that MetLife withheld information from Dr. Greenhood is specious; the fact that not all documents were referenced in his summary does not support the assertion that documents were withheld."[50]  In fact, Dr. Greenhood's report clearly lists the "reviewed material." That list does not include any of the documents related to Ms. Valenote's actual job duties.  MetLife seems to object to the word "withheld," but it certainly does not give any basis for this quibble.  MetLife had these documents, the documents were clearly relevant to a reasoned assessment of Ms. Valenote's entitlement to benefits, and MetLife's own record demonstrates that these documents were not reviewed by its "independent" consultant. MetLife certainly has not provided any evidence that these essential materials were, in fact, provided to the consultant and the consultant simply chose not to review them. But the result would be the same in either case.  In other words, whether the documents were withheld (everything indicates that they were) or simply ignored by the consultant, the failure of the both consultants to relate the medical condition to the job description renders their limited conclusions  arbitrary.[51]  In particular, the second report is arbitrary because it references the possibility of "sedentary to perhaps light work," which shows the consultant did not review any of the relevant job descriptions.

Contrary to MetLife's claim, Ms. Valenote does not argue that MetLife cannot use hired consultants.  Instead, she asserts that the undisputed facts show that the manner in which MetLife used its consultants contributed to its failure to provide her with a full and fair review of her claim.

---

[50]    Def. Cross Motion for SJ at 13 n.6.

[51]    *Smith v. Contintental Cas. Co.*, 450 F.3d 253, 264 (6th Cir. 2006); *Kalish v. Liberty Mutual.Liberty Life*, 419 F.3d 501, 509 (6th Cir. 2005).

Plaintiff's Reply and Opposition to Cross Motion for Summary Judgment
*Valenote v. MeLife*, Case No. 3:05-cv-00196 (TMB)
Page 28 of 38

Courts must view the hired consultant skeptically because he is paid by the insurance company.[52]  Consequently, although permitted, a file only review and the failure to perform a physical examination is a factor to be considered in abuse of discretion review.[53]  Moreover, the process is arbitrary if the fiduciary cherry-picks records and otherwise fails to provide the consultant with records supplied after the initial denial.[54]  The failure to interview the treating physician also supports finding the process arbitrary.[55]  The inability to show which documents the consultant reviewed is yet another factor.[56] All of these factors are present here.  Indeed, as to this last factor the second consultant gave no indication of what documents were provided to him.  What we do know is that his conclusion of no "follow up" gives strong indication that he lacked the relevant records.

MetLife's footnote also fails to address the numerous other documents that Ms. Valenote listed in her initial brief and which were not mentioned by either consultant.

5.  **METLIFE MISTATES THE LAW REGARDING THE ADMISSION OF ADDITIONAL EVIDENCE**

   a.   **Contrary to MetLife's Claims, *Abatie* Instructs that Additional Evidence May be Admitted in Several Circumstances**

Relying on *Abatie*, MetLife argues that the Court should reject any evidence not contained in the administrative record regardless of the standard of

---

[52]   *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 832 (2003);
[53]   *Glen v. MetLife*, 461 F.3d 660, 671 (6th Cir. 2006).
[54]   *Glen*, 461 F.3d at 672.
[55]   *Smith*, 450 F.3d 253, 261-263 (6th Cir. 2006).
[56]   *Smith*, 450 F.3d at 261-262 (no way of knowing which records were reviewed).

Plaintiff's Reply and Opposition to Cross Motion for Summary Judgment
*Valenote v. MeLife*, Case No. 3:05-cv-00196 (TMB)
Page 29 of 38

review.[57] But Metlife overlooks that *Abatie* recognizes three instances where the district court may accept additional evidence outside the administrative record.

First, although *Abatie* does state that "in general" the district court only reviews the administrative record in abuse of discretion review, MetLife overlooks *Abatie's* continued recognition that where de novo review applies "the court is not limited to the administrative record and may take additional evidence."[58] In the face of this plain language, MetLife nevertheless asserts that "the Ninth Circuit has held that evidence outside of the record is flatly inadmissible even if the case is reviewed de novo."[59] The claim is not only wrong it is the exact opposite of the law of this Circuit.

As stated in her initial brief, Ms. Valenote submits that, consistent with *Abatie,* de novo review is justified here where the administrator's procedural violations are substantial.[60] In particular, *Abatie* states that changing the reasons at the last denial "violates ERISA's procedures" and justifies de novo review of the decision.[61] In addition, the post-*Abatie* decision, *Sin v. MetLife,*[62] holds that the use of ambiguous, general statements that fail to clearly state the specific reasons for a denial "in a manner calculated to be understood by the claimant" is a sufficiently egregious violation of ERISA to warrant de novo review. Both of these irregularities, along with numerous others, were present here and therefore justify de novo review.

---

[57]    Def. Opp/Cross Motion for SJ at 16-17.
[58]    *Abatie,* 458 F.3d at 973 (emphasis added).
[59]    Def. Motion to Strike at 8 (Dkt. 53).
[60]    *Abatie,* 458 F.3d at 971.
[61]    *Abatie,* 458 F.3d at 974, and 974 n. 9, *citing Lang v. Long-Term Disability Plan of Sponsor Applied Remote Technology, Inc.,* 125 F.3d 794, 798-99 (9th Cir. 1997) as holding that the district court "should review de novo the decision" where the reasons are changed at the last minute.
[62]    2006 WL 3716750 (D.Ore. December 13, 2006) at 5 and 7.

Plaintiff's Reply and Opposition to Cross Motion for Summary Judgment
*Valenote v. MeLife,* Case No. 3:05-cv-00196 (TMB)
Page 30 of 38

Second, and also directly contrary to MetLife's assertions, *Abatie* recognized that even where the abuse of discretion standard applies, and where the "procedural irregularities are smaller," the Court "may take additional evidence when the irregularities have prevented the full development of the administrative record."[63]    As *Abatie* explains, "if the administrator did not provide a full and fair hearing, as required by ERISA … the court must be in a position to assess the effect of that failure, and before it can do so, must permit the participant to present additional evidence."[64]    As above, MetLife's recitation of the law completely ignores *Abatie's* clear requirement that the court allow additional evidence when any irregularity, even small ones, prevented the full development of the administrative record.

Finally, MetLife overlooks that *Abatie* states that additional evidence may be admitted on the "nature, extent, and effect on the decision-making process of any conflict of interest."[65]    The skepticism and weight of the conflict of interest increases where the administrator "provides inconsistent reasons for the denial, fails to adequately investigate the claim or ask for necessary evidence, [or] fails to credit a claimant's reliable evidence."[66]    Thus, under *Abatie,* additional evidence is admissible on the effect of the conflict of interest such as where the administrator provides new reasons for the last denial or fails to ask for necessary evidence. [67]

---

[63]    *Abatie*, 458 F.3d at 973.

[64]    *Id*. at 973.

[65]    *Id.* (emphasis added).

[66]    *Abatie*, 458 F.3d at 968 (citations deleted).

[67]    See *Abatie*, 458 F.3d at 974 n. 9 (a "last minute switch" in the reasons for the final denial could suggest "serious self-dealing" and could be "also categorized as a procedural irregularity where, as here, the plan participant is foreclosed from presenting any response to the new reason.").

Plaintiff's Reply and Opposition to Cross Motion for Summary Judgment
*Valenote v. MeLife*, Case No. 3:05-cv-00196 (TMB)
Page 31 of 38

**b.    Based on Defendant's Procedural Irregularities, The Court should Admit Ms. Valenote's Additional Evidence**

The primary additional evidence submitted by Plaintiff Valenote is Dr. Polston's February 2006 opinion that Ms. Valenote is disabled under the MetLife policy, (i.e., she could not earn 80% of her pre-disability earnings as an intern architect), and the February 2005 functional capacity examination, which showed that Ms. Valenote could not perform even a sedentary level of work for more than four hours. Dr. Polston is a specialist in pain medicine, and continued Ms. Valenote's treatment after Dr. Anderson, the prior primary attending doctor, left his pain clinic around March 2004. Dr. Polston reviewed the FCE and Ms. Valenote's October 2003 employer-approved intern architect job description, and the physical exertion requirements in 29 CFR Section 404.1567. Dr. Polston opined that Ms. Valenote's job duties as an intern architect indicated a light to medium level of work. Dr. Polston also opined that Ms. Valenote is incapable of sustaining a sedentary level of work for an 8 hour day.[68] Dr. Polston is qualified to provide these opinions as Ms. Valenote's treating physician. Not surprisingly, MetLife wants to strike this important additional evidence.[69]

Under *Abatie*, this evidence is admissible regardless of whether the Court applies a de novo review or an abuse of discretion standard. As stated above,

---

[68]    *See* Affidavit of Dr. Polston at Exhibits 1 through 7.

[69]    Valenote also provided Dr. Polston's treatment records from June 2004 to August 2006 as foundational support for his opinion. In addition, Ms. Valenote provided: (1) the affidavit of Daniela Valenote; (2) the affidavit of Virginia Valenote; (3) Dr. Anderson's full records, including her records showing Ms. Valenote's follow-up after the December 3, 2003 IDET (See V214-V266); (4) Dr. Lorentzen's medical records showing the foundation for his March 5, 2004 letter on disability to MetLife; (5) medical records of other medical providers that MetLife failed to gather during the administrative process; and (6) records of other medical providers showing Ms. Valenote's continuous treatment for her chronic pain condition.

Plaintiff's Reply and Opposition to Cross Motion for Summary Judgment
*Valenote v. MeLife*, Case No. 3:05-cv-00196 (TMB)
Page 32 of 38

*Abatie* states that changing the specific reasons at the last denial can be sufficiently egregious to justify de novo review of the decision.[70]   This principle gains additional support from *May v. MetLife* in which the court admitted two doctors' opinions on the claimant's disability that were drafted two years <u>after</u> the close of the administrative record.   *May* denied the defendant's motion to strike and explained that these documents were admissible to allow the claimant to respond to concerns raised by MetLife in the final appeal. [71]

Moreover, as also stated above, *Abatie* states that changing the specific reason at the last denial or failing to ask for relevant evidence in a clear manner permits admission of additional evidence on the effect of the conflict of the interest and the effect of procedural irregularities.   As shown above, the administrative record shows that MetLife subjected Ms. Valenote to numerous procedural irregularities. In particular, MetLife flagrantly violated ERISA by failing to clearly request specific information on November 29, 2003 denial that it now says it needed and by changing its rationale at the last minute in the June 22, 2004 final denial.   Both violations denied Ms. Valenote a full and fair review of her LTD claim.

At a minimum, these violations justify the expansion of the record to include the Dr. Polston's opinion on disability and the functional capacity examination regardless of whether the Court applies a de novo or an abuse of discretion standard. Simply put, this evidence shows serious self-dealing caused by the conflict of interest <u>and</u> the effect of the procedural irregularities in preventing a full and fair review of the claim at the administrative level. This additional evidence is admissible to show the distortions of the process and to

---

[70]   *Abatie*, 458 F.3d at 974, and 974 n. 9.
[71]   2004 WL 2011460 (N.D.Cal. 2004) at 6 and 8.

Plaintiff's Reply and Opposition to Cross Motion for Summary Judgment
*Valenote v. MeLife*, Case No. 3:05-cv-00196 (TMB)
Page 33 of 38

"recreate what the administrative record would have been had the procedure been correct."[72]

Metlife's other arguments regarding the admission of this additional evidence are similarly baseless. For example, MetLife asserts that Dr. Polston's affidavit should be stricken because "it is not within the province of as a physician to opine that an individual does or does not satisfy the definition of disability under an ERISA plan."[73] Not surprisingly, MetLife offers no citation for this remarkable proposition nor does MetLife offer any reason that Dr. Polston is unqualified as a physician to offer the opinion he does.

Indeed, MetLife appears to confuse the issue of admissibility of evidence with its weight. In other words, it is preposterous to say that Dr. Polston is not qualified to offer an opinion regarding Ms. Valenote's disabity. Indeed, if the plan's definition of disability were so complex that even a qualified physician could not interpret it how could it possibly be understood by a layperson. Notably, MetLife does not even attempt to argue that the opinion is incorrect or unsupported; both arguments that would go the weight of the evidence as opposed to its admissibility. This is no doubt because MetLife has no grounds to make such a claim. Dr. Polston's opinion concludes by stating: "Based on her clinical presentation, diagnosis and <u>objective findings on the physical capacity evaluation</u> I feel that Ms. Valenote does meet the definition of disability and disabled."[74] This is precisely the sort of evidence that MetLife now claims Ms. Valenote was lacking. This demonstrates not only that MetLife failed to ask for the kind of evidence it evidently required of Ms. Valenote, but it appears that even if she had somehow read the administrator's mind and provided such evidence it still would

---

[72]     *Abatie*, 458 F.3d at 973.
[73]     Def.Cross Motion for SJ at 9.
[74]     Polston Affidavit, Exhibit 1 at 1 (emphasis added).

Plaintiff's Reply and Opposition to Cross Motion for Summary Judgment
*Valenote v. MeLife*, Case No. 3:05-cv-00196 (TMB)
Page 34 of 38

have been rejected.  MetLife has created a clever catch-22.  But it forgets that as an administrator its role is as a fiduciary not a club wielding gate keeper.

Finally, MetLife makes the equally groundless argument that the affidavits of Ms. Valenote and her patient should be stricken as hearsay.[75]  MetLife fails to identify what parts of the affidavits fall within this category.  In any case, the only statements that could possibly constitute hearsay are statements by MetLife.  As such, these statements are not hearsay because they within the definition of admissions by a party opponent pursuant to Fed. R. Civ. P. 801(d)(2).

## 6.    JUDGMENT AWARDING BENEFITS IS A PROPER REMEDY

Metlife submits a footnote suggesting that this Court remand the disability determination to the fiduciary for further review under an abuse of discretion review.[76]  The footnote indicates that the conflicted fiduciary who has committed significant procedural irregularities should be permitted to delay the award of benefits and take other actions.  Granting judgment awarding Plaintiff back benefits, however, would not preclude MetLife from initiating further review of Ms. Valenote's continuing eligibility for long-term benefits.

First, the LTD denial here merits de novo review, and the Court will decide the disability issue on the merits.  In de novo review, the Court admits additional evidence to fully develop an inadequate administrative record in order "to enable the full exercise of informed and independent judgment."[77]  The affidavit of Dr. Polston and the other additional evidence completes the record here.

---

[75]    Def. Cross Motion for SJ at 9.

[76]    Def. Opp/Cross Motion for SJ at 24 n. 8.

[77]    *Mongeluzo v. Baxter Travenol Disability Ben. Plan*, 46 F.3d 938, 943 (9th Cir. 1995).  *See also, Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1096 (9th Cir. 1999) (Fletcher, C.J., concurring in part and dissenting).

Plaintiff's Reply and Opposition to Cross Motion for Summary Judgment
*Valenote v. MeLife*, Case No. 3:05-cv-00196 (TMB)
Page 35 of 38

Second, there is ample authority for granting judgment awarding retroactive ERISA benefits under either de novo review or abuse of discretion review.[78] Remand is not appropriate where there are no factual determinations to be made and remand is a useless formality. Again, the affidavit of Dr. Polston and the other additional evidence completes the record here.

Finally, the formulation of the remedy will need to be the subject of further briefing and proceedings. The Court has the discretion under ERISA "in forging equitable remedies.[79] This discretion has been exercised to award full benefits to the date of summary judgment where the fiduciary committed serious procedural violations that denied full and fair review of a claim.[80] Here the fiduciary

---

[78]    *See Canseco v. Const. Laborers Pension Trust*, 93 F.3d 600, 609 (9th Cir. 1996) (retroactive reinstatement of benefits; remand not required because reevaluation of merits was not required and no factual determinations needed to be made); *Dionida v. Reliance Standard Life Ins. Co.*, 50 F.Supp.2d 934, 942 (N.D.Cal. 1999) (de novo review and retroactive reinstatement of benefits); *Vanderklok v. Provident Life & Accident Ins. Co.*, 956 F.2d 610, 617 (6th Cir. 1992) (remand not necessary because fiduciary failed to follow statutory notice requirement and failed to give participant opportunity to present additional evidence); *Govindarajan v. FMC Corp.*, 932 F.2d 634 (7th Cir. 1991) (after remand produced another faulty decision, affirming award of retroactive entitlement to benefits under de novo and abuse of discretion review); *Grossmuller v. International Union, United Auto., Aerospace & Agric. Implement Workers of Am., UAW*,    715 F.2d 853, 858-59 (3rdCir. 1983) (affirming reinstatement of benefits when procedure failed to comply with the ERISA); *Baker v. MetLife*, 2006 WL 3782852 (M.D.Tenn. 2006) at 22-23 (awarding long-term disability benefits, prejudgment interest, costs and attorney fees); *De Dios Cortes v. MetLife, Inc.*, 122 F.Supp.2d 121, 132-33 (D.Puerto Rico 2000) (fiduciary abused discretion and finding claimant was disabled; awarding retroactive long term disability benefits because there were no factual determinations to be made); *Dabertin v. HCR Manor Care, Inc.*, 235 F.Supp.2d 853, 867(N.D.Ill. 2002) (remand was "useless formality" and awarding severance benefits under abuse of discretion review).

[79]    *Grossmuller*, 715 F.2d at 859.

[80]    *See e.g., Laucks v. Provident Companies*, 1999 WL 33320463 (M.D.Pa. 1999) (awarding benefits from date of termination to summary judgment because

Plaintiff's Reply and Opposition to Cross Motion for Summary Judgment
*Valenote v. MeLife*, Case No. 3:05-cv-00196 (TMB)
Page 36 of 38

committed significant procedural deficiencies that denied full and fair review of the claim. An award of benefits retroactive from the date of judgment provides the appropriate remedy in this case, and an award prejudgment interest, costs and attorney fees to Plaintiff are warranted.

## CONCLUSION

For the foregoing reasons and for the reasons stated in Ms. Valenote's initial motion, Ms. Valenote requests that the Court grant Plaintiff's motion for summary judgment and deny Defendants' cross motion for summary judgment.

DATED this 16th day of March 2007.

By:  s/ Timothy Seaver
Timothy W. Seaver
Seaver & Wagner, LLC
421 West First Ave., Suite 250
Anchorage, Alaska 99501
Tel. 907-646-9033
Fax. 907-276-8238
Email: tseaver@seaverwagner.com

By:s/ George T. Freeman
George T. Freeman
Attorney at Law
1152 P Street
Anchorage, Alaska 99501
Tel. 907-274-8497
Fax 907-274-8497 (call first)
Email: gtf@gci.net

---

fiduciary violated ERISA by failing to specifically provide the specific reasons for the denial).

Plaintiff's Reply and Opposition to Cross Motion for Summary Judgment
*Valenote v. MeLife*, Case No. 3:05-cv-00196 (TMB)
Page 37 of 38

CERTIFICATE OF SERVICE

I certify that on March 16, 2007
the foregoing document was served
electronically on:

Brewster H. Jamieson
Lane Powell LLC
301 West Northern Lights Blvd, Suite 301
Anchorage, Alaska 99503
Tel:  907-277-9511
Fax: 907-276-2631
Email: jamiesonb@lanepowell.com
Alaska Bar No. 84111122


s/ Timothy Seaver
Timothy Seaver

Plaintiff's Reply and Opposition to Cross Motion for Summary Judgment
*Valenote v. MeLife*, Case No. 3:05-cv-00196 (TMB)
Page 38 of 38