records sent to it by Dr. Anderson. Id. at 8; MR225-230. The MetLife diary confirms that it knew that Dr. Anderson concluded that Ms. Valenote "is not medically stable." Id. The diary then cryptically notes that Dr. Anderson performed a discography on October 14. What the diary left out is that Dr. Anderson found a "<u>posterior tear extreme increase in pain that is concordant with patient's complaint</u>" and concluded that "<u>L5-S1 considered provocative and concordant pain</u>." MR228 (emphasis added). Of course, the October 14 discography provided more "objective" evidence in addition to the December 2002 MRI.

MetLife then sent records to its paid consultant for a file only review. The consultant indicated that MetLife wanted to know if there was an "objectively abnormal basis for the patient's complaint" and whether the "plan-of-treatment [was] consistent with severe impairment." MR244. The consultant answered that "abnormal findings" included the December 2002 MRI and October 2003 discography. MR244. The consultant also reviewed the numerous surgical procedures and stated "[s]uch intensity of service implies that the <u>patient's pain is severe</u>." MR244 (emphasis added). The consultant also noted that MetLife knew that Ms. Valenote was scheduled for a surgical operation called a "nucleolysis" on December 3, 2003. MR243.

This record not only demonstrates that Ms. Valenote provided substantial additional evidence in response to MetLife's vague and ambiguous request for "additional medical documentation." Perhaps more importantly, it reveals that contrary to its November 26, 2003 denial and its current position before this Court it expressly recognized that Ms. Valenote had provided objective evidence both of the fact of her condition and of its severity.

Plaintiff's Reply and Opposition to Cross Motion for Summary Judgment
*Valenote v. MeLife*, Case No. 3:05-cv-00196 (TMB)
Page 20 of 38

4. **DEFENDANT'S ARE EITHER SILENT AS TO NUMEROUS IRREGULARITIES AND THEREFORE CONCEDE THEM OR WHEN THEY ARE NOT SILENT FAIL TO OFFER ANY PERSUASIVE OPPOSITION TO VALENOTE'S CLAIMS**

Ms. Valenote addressed numerous irregularities in her initial brief. As to each one MetLife has either failed to address the irregularity at all or has failed to provide any persuasive opposition to Ms. Valenote's claims. Each irregularity is addressed in the order of Ms. Valenote's initial brief.

    a.    **MetLife Failed to Dispute that it Provided Inconsistent Reasons for its Denials**

In response to Ms. Valenote's claim that MetLife offered inconsistent reasons for denial, Metlife points to three vague statements which it asserts remained consistent in each denial. These statements as asserted by MetLife are: first, "no medical documentation to support your inability to work" from the August 29 denial; second, "objective medical evidence presented is incongruent with long-term disability" from the November 26 denial; and third, "lack of medical information." from the final June 22, 2004 final denial.[31] Yet, MetLife blithely ignores that all of the specific reasons preceding these vague statements was dramatically different between the second and third denials.

*Abatie* refers to "inconsistent reasons" for denial.[32] For this language to have any meaning at all, MetLife cannot rely on three vague and ambiguous statements included in otherwise dramatically different denials and insist that their reasoning remained consistent between its earlier and final denials. To hold otherwise, would be to allow an administrator to make an easy end run around the clear dictates of the law. Put differently, standing alone, the three statements relied upon by MetLife in its cross motion clearly could not comply with the

---

[31]    Def. Cross Motion for SJ at 22.
[32]    *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 968 (9th Cir. 2006).

Plaintiff's Reply and Opposition to Cross Motion for Summary Judgment
*Valenote v. MeLife*, Case No. 3:05-cv-00196 (TMB)
Page 21 of 38

requirement that a denial "set[] forth in a manner calculated to be understood by the claimant... [t]he specific reason or reasons for the denial."[33] Nor does it comply with the requirements of 29 C.F.R. §2605-1(g) that the administrator provide specific reasons and a detailed description of additional material necessary to perfect the claim and why such information is necessary. Thus, the other reasons included in the denials necessarily form the actual bases of the denials. Because MetLife does not even attempt to dispute that those reasons changed, ERISA precludes MetLife from arguing that its reasoning remained consistent throughout the claim process.

MetLife's response to the new rationale issue is unavailing.[34] The only case cited by MetLife is *Provencio v. SBC Disability Income Plan*.[35] Provencio worked as a communications systems technician in a physical job that required climbing telephone poles and lifting as much as 150 pounds.[36] He suffered from mental depression and moderate chest pain and provided only limited medical records on his initial claim.[37] Significantly, in direct contrast to this case and consistent with the other cases relied upon by MetLife, the initial denial in *Provincio* specifically advised the claimant that he needed to provide medical evidence "of how [his] 'level of functionality' impacted his ability to work and his daily activities" as well as referencing other specific information required of the claimant.[38]

Thus, unlike this case, in *Provencio*, the fiduciary complied with ERISA by clearly stating what it needed from the claimant. It did not try to hide the ball by, for example, referring to an elimination period as a specific reason for the denial

---

[33] *See Sin v. MetLife,* 2004 WL 2011460 (N.D.Cal. 2004) at 7.
[34] Def. Cross Motion for SJ at 22-23.
[35] 2006 U.S. Dist. LEXIS 94845 (W.D.Tex. December 5, 2006).
[36] *Id.* at 4.
[37] *Id.* at 5-6.
[38] *Id.* at 8.

Plaintiff's Reply and Opposition to Cross Motion for Summary Judgment
*Valenote v. MeLife,* Case No. 3:05-cv-00196 (TMB)
Page 22 of 38

when it really needed a functional capacity evaluation. It did not provide a "shifting justification" such as, for example, stating that the initial denial was based on an elimination period and then asserting that the final denial was based on an alleged failure to follow-up with the doctor after a surgical procedure.

Even a cursory review of the June 22, 2004 final denial demonstrates that MetLife finally abandoned the prior specific denial reasons in the November 26 denial and asserted a new rationale for the final denial. In other words, the final denial does not try to use the elimination period, nor does it rely on the previously asserted bogus issue of Ms. Valenote being "released to return to work." Instead, the final denial refers to the new independent consultant, which Ms. Valenote could not rebut, and the December 2003 IDET surgical procedure as the specific reasons for the final denial. The final denial then cherry-picks demonstrably false statements from the new consultant's report about the alleged lack of follow-up after the IDET and the alleged failure to become involved in physical therapy.

What makes the present case an example of flagrant bad faith is the fact that MetLife's own diary appears to suggest that it actually considered these new reasons to be irrelevant. Ms. Valenote previously pointed out that MetLife knew that these new specific reasons were completely false because it had Ms. Valenote's May 4, 2004 appeal.[39] And, she also previously pointed out federal court criticism of MetLife about inaccurate cherry-picking of information.[40] Regardless, the important point here is that MetLife flagrantly violated ERISA because its new last minute rationale in the final denial prevented a full and fair review of the new "specific reasons" at the administrative level.[41]

---

[39]   See Plaintiff's Opening Memorandum at pages 26-31.
[40]   See Plaintiff's Opening Memorandum at pages 39-40, citing *Glenn v. MetLife*, 461 F.3d 660, 672 n. 4 (6th Cir. 2006); *Rementer v. MetLife*, 2006 WL 66721 (M.D.Fla.) at 3. *See also Baker v. MetLife*, 2006 WL 3782852 (M.D.Tenn. December 20, 2006) at 20 (arbitrary to "hand-pick[] among medical evidence").
[41]   *Abatie*, 458 F.3d at 974.

Plaintiff's Reply and Opposition to Cross Motion for Summary Judgment
*Valenote v. MeLife*, Case No. 3:05-cv-00196 (TMB)
Page 23 of 38

 **b.**  **MetLife Failed to Dispute that it Improperly Required Objective Medical Evidence of Ms. Valenote's Condition**

This is issue was addressed in section 2, above. As argued above, to the extent that MetLife's reference to lack of objective evidence can be comprehended at all, it related to Ms. Valenote's medical condition. It certainly cannot be argued that, at any time during the claim process, MetLife made any effort to meet its burden to distinguish clearly between "objective" evidence of Ms. Valenote's condition as opposed to "objective" evidence of the "impact" of that condition and then specifically request that information as required by ERISA.

 **c.**  **MetLife Failed to Dispute that it did not to Give Ms. Valenote a Full and Fair Review of the Denial**

Although making various conclusory claims regarding its denials, MetLife failed to address head on the issue of its failure to give Ms. Valenote a full and fair review of its denial. Specifically, MetLife failed even to dispute that part of a full and fair review requires that the complainant be clearly informed of the basis for the denial and that the administrator make clear what it requires from the claimant in order to respond to the denial. This issue is addressed in detail in section 2, above.

 **d.**  **MetLife Failed to Dispute that it did not Ask Ms. Valenote for Necessary Evidence and to Properly Investigate the Claim**

As discussed in section 2 above, MetLife failed to provide any specific requests to Ms. Valenote regarding the type and substance of the information required of her. Indeed, ERISA requires and 29 C.F.R. § 2560.501-1(g)(iii) specifically states that the notification must provide "[a] description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary." Although not mentioned by Defendants, Plaintiff's opening memorandum pointed out that

Plaintiff's Reply and Opposition to Cross Motion for Summary Judgment
*Valenote v. MeLife*, Case No. 3:05-cv-00196 (TMB)
Page 24 of 38

the Ninth Circuit decision in *Booton* is absolutely clear on this burden for the fiduciary, and that, if something more is needed, the fiduciary "must ask for it."[42] *Abatie* cites *Booton* for the procedural irregularities of "failure to adequately investigate a claim or ask the plaintiff for necessary evidence."[43] Other Circuits support *Booton* on this important requirement.[44] Vague and conclusory statements like that provided at the end of the November 26 denial clearly fail to discharge the administrator's burden under the law.

There is another aspect to MetLife's failure here that is mentioned in *Abatie* -- MetLife's failure to properly investigate Ms. Valenote's claim. As to this issue, Ms. Valenote's initial brief included a detailed list of medical documents that MetLife simply failed to obtain despite requesting releases for those documents. Among those documents were various records from Dr. Anderson, Ms. Valenote's primary treating physician throughout most of the claim process.

Not only has MetLife failed to dispute any of these allegations, but its newly produced "diary" provides even further demonstration of its bad faith. Specifically, the "diary" demonstrates that despite explicitly requesting and

---

[42] *Booton*, 110 F.3d 1463; (at the time of *Booton*, the CFR section was 29 CFR Section 2560.503-1(f)).

[43] *Abatie*, 458 F.3d at 968.

[44] *See Schneider v. Century Group LTD Plan*, 442 F.3d 621, 628-29 (2005 7th Cir.) (holding that failure state specifically what is required of claimant to respond to denial violates 29 C.F.R. § 2560.503-1(g)(iii)); *White v. Aetna Life Ins. Co.*, 210 F.3d 412, (D.C.Cir. 2000) (vague statement about "lack of clinical information" did not meet ERISA requirement of specific reason and requesting additional information necessary to perfect claim; failed to indicate that treating doctor had failed to certify disability claim); *Schleibaum v. Kmart Corp.*, 153 F.3d 496 (7th Cir. 1998) (vague statement advising to "forward any additional information or medical reports you wish to have considered as part of your appeal" violated ERISA because it did not indicate "what information to submit to perfect his claim"); *Vanderklok v. Provident Life & Accident Ins. Co.*, 956 F.2d 610, 617 (6th Cir. 1992) (vague conclusion that "proof submitted does not establish" disability is a conclusion and not a reason and failed to apprise claimant of what was needed; significant error that required fiduciary's decision to be overturned);

Plaintiff's Reply and Opposition to Cross Motion for Summary Judgment
*Valenote v. MeLife*, Case No. 3:05-cv-00196 (TMB)
Page 25 of 38

receiving Dr. Anderson's telephone number,[45] neither MetLife nor its medical consultants ever even attempted to speak personally with Dr. Anderson.[46] This failure is indeed extraordinary given that MetLife was fully aware that Dr. Anderson had taken over Ms. Valenote's care from Dr. Beard as early as July 2003.

MetLife also failed to dispute (and the "diary" also confirms) that MetLife never provided its independent consultants with a variety of documents relevant to Ms. Valenote's claim.

MetLife's principal response to Ms. Valenote's claims here is to reiterate its claim that it is Ms. Valenote's burden to provide proof of disability. But this argument simply ducks the issue. In other words, MetLife's response ignores *Abatie*'s clear dictate that an administrator is obligated both to "adequately [] investigate a claim" and "ask the plaintiff for necessary evidence."[47] MetLife clearly failed to do both of these things.

### e. MetLife Does Not Dispute that it Failed to Consider Evidence Received After the First Denial

In her initial motion, Ms. Valenote listed a series of specific evidence that she provided to MetLife following its initial denial, which MetLife failed to consider. Other than offering vague and conclusory claims regarding its consideration of Ms. Valenote's subsequently submitted evidence, MetLife failed to demonstrate that it in fact considered this evidence.

---

[45] MetLife Exhibit A at 7.
[46] *See* diary at MetLife Exhibit A, MR249, MR243.
[47] *Abatie*, 458 F.3d at 968.

Plaintiff's Reply and Opposition to Cross Motion for Summary Judgment
*Valenote v. MeLife*, Case No. 3:05-cv-00196 (TMB)
Page 26 of 38

### f. MetLife Cannot Dispute that it Failed to Credit Ms. Valenote's Reliable Evidence and Cherry Picked Other Evidence

In her initial motion, Ms. Valenote listed a series of specific evidence that she provided to MetLife following its initial denial, which MetLife failed to consider. In responding to this claim, MetLife lists a series of records that it claims its consultant did review.[48] But conspicuously absent is any discussion of the documents that Ms. Valenote identified that MetLife did not review.

Indeed, MetLife's brief argument as to this issue offers the best possible demonstration of MetLife's failure. Thus, MetLife quotes from its first consultant for the conclusion that "Available information does not include an opinion provided by any of patient's medical professionals that the patient's pain has been sufficiently severe to preclude work subsequent to 5/1/03."[49] This claim flatly ignores that Ms. Valenote did provide the opinion of Dr. Lorenzten which concluded that Ms. Valenote's "injuries have been debilitating and at no time since she initiated care with my office has she been able to work." MR 308 As Ms. Valenote demonstrated in her initial brief, this conclusion was not only completely ignored, but MetLife actually distorted a singe sentence from the same opinion letter to support its conclusion final. The very fact that MetLife would yet again return to a conclusion that was obviously contradicted by the record offers the strongest evidence of MetLife's failure to credit reliable evidence.

### g. MetLife Does Not Dispute that it Failed to Provide Necessary Records to its "Independent" Consultants

In response to Ms. Valenote's claims that MetLife failed to provide necessary records to its "independent" consultants, MetLife offers a single

---

[48]   Def. Cross Motion for SJ at 13.
[49]   *Id. citing* MR246.

Plaintiff's Reply and Opposition to Cross Motion for Summary Judgment
*Valenote v. MeLife*, Case No. 3:05-cv-00196 (TMB)
Page 27 of 38

conclusory sentence in a footnote. As MetLife states: "Plaintiff's assertion that MetLife withheld information from Dr. Greenhood is specious; the fact that not all documents were referenced in his summary does not support the assertion that documents were withheld."[50] In fact, Dr. Greenhood's report clearly lists the "reviewed material." That list does not include any of the documents related to Ms. Valenote's actual job duties. MetLife seems to object to the word "withheld," but it certainly does not give any basis for this quibble. MetLife had these documents, the documents were clearly relevant to a reasoned assessment of Ms. Valenote's entitlement to benefits, and MetLife's own record demonstrates that these documents were not reviewed by its "independent" consultant. MetLife certainly has not provided any evidence that these essential materials were, in fact, provided to the consultant and the consultant simply chose not to review them. But the result would be the same in either case. In other words, whether the documents were withheld (everything indicates that they were) or simply ignored by the consultant, the failure of the both consultants to relate the medical condition to the job description renders their limited conclusions arbitrary.[51] In particular, the second report is arbitrary because it references the possibility of "sedentary to perhaps light work," which shows the consultant did not review any of the relevant job descriptions.

Contrary to MetLife's claim, Ms. Valenote does not argue that MetLife cannot use hired consultants. Instead, she asserts that the undisputed facts show that the manner in which MetLife used its consultants contributed to its failure to provide her with a full and fair review of her claim.

---

[50] Def. Cross Motion for SJ at 13 n.6.
[51] *Smith v. Contintental Cas. Co.*, 450 F.3d 253, 264 (6th Cir. 2006); *Kalish v. Liberty Mutual.Liberty Life*, 419 F.3d 501, 509 (6th Cir. 2005).

Plaintiff's Reply and Opposition to Cross Motion for Summary Judgment
*Valenote v. MeLife*, Case No. 3:05-cv-00196 (TMB)
Page 28 of 38

Courts must view the hired consultant skeptically because he is paid by the insurance company.[52] Consequently, although permitted, a file only review and the failure to perform a physical examination is a factor to be considered in abuse of discretion review.[53] Moreover, the process is arbitrary if the fiduciary cherry-picks records and otherwise fails to provide the consultant with records supplied after the initial denial.[54] The failure to interview the treating physician also supports finding the process arbitrary.[55] The inability to show which documents the consultant reviewed is yet another factor.[56] All of these factors are present here. Indeed, as to this last factor the second consultant gave no indication of what documents were provided to him. What we do know is that his conclusion of no "follow up" gives strong indication that he lacked the relevant records.

MetLife's footnote also fails to address the numerous other documents that Ms. Valenote listed in her initial brief and which were not mentioned by either consultant.

### 5. METLIFE MISTATES THE LAW REGARDING THE ADMISSION OF ADDITIONAL EVIDENCE

#### a. Contrary to MetLife's Claims, *Abatie* Instructs that Additional Evidence May be Admitted in Several Circumstances

Relying on *Abatie*, MetLife argues that the Court should reject any evidence not contained in the administrative record regardless of the standard of

---

[52] *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 832 (2003);
[53] *Glen v. MetLife*, 461 F.3d 660, 671 (6th Cir. 2006).
[54] *Glen*, 461 F.3d at 672.
[55] *Smith*, 450 F.3d 253, 261-263 (6th Cir. 2006).
[56] *Smith*, 450 F.3d at 261-262 (no way of knowing which records were reviewed).

Plaintiff's Reply and Opposition to Cross Motion for Summary Judgment
*Valenote v. MeLife*, Case No. 3:05-cv-00196 (TMB)
Page 29 of 38

review.[57] But Metlife overlooks that *Abatie* recognizes three instances where the district court may accept additional evidence outside the administrative record.

First, although *Abatie* does state that "in general" the district court only reviews the administrative record in abuse of discretion review, MetLife overlooks *Abatie's* continued recognition that where de novo review applies "the court is not limited to the administrative record and may take additional evidence."[58] In the face of this plain language, MetLife nevertheless asserts that "the Ninth Circuit has held that evidence outside of the record is flatly inadmissible even if the case is reviewed de novo."[59] The claim is not only wrong it is the exact opposite of the law of this Circuit.

As stated in her initial brief, Ms. Valenote submits that, consistent with *Abatie*, de novo review is justified here where the administrator's procedural violations are substantial.[60] In particular, *Abatie* states that changing the reasons at the last denial "violates ERISA's procedures" and justifies de novo review of the decision.[61] In addition, the post-*Abatie* decision, *Sin v. MetLife*,[62] holds that the use of ambiguous, general statements that fail to clearly state the specific reasons for a denial "in a manner calculated to be understood by the claimant" is a sufficiently egregious violation of ERISA to warrant de novo review. Both of these irregularities, along with numerous others, were present here and therefore justify de novo review.

---

[57] Def. Opp/Cross Motion for SJ at 16-17.
[58] *Abatie*, 458 F.3d at 973 (emphasis added).
[59] Def. Motion to Strike at 8 (Dkt. 53).
[60] *Abatie*, 458 F.3d at 971.
[61] *Abatie*, 458 F.3d at 974, and 974 n. 9, *citing Lang v. Long-Term Disability Plan of Sponsor Applied Remote Technology, Inc.*, 125 F.3d 794, 798-99 (9th Cir. 1997) as holding that the district court "should review de novo the decision" where the reasons are changed at the last minute.
[62] 2006 WL 3716750 (D.Ore. December 13, 2006) at 5 and 7.

Plaintiff's Reply and Opposition to Cross Motion for Summary Judgment
*Valenote v. MeLife*, Case No. 3:05-cv-00196 (TMB)
Page 30 of 38

Second, and also directly contrary to MetLife's assertions, *Abatie* recognized that even where the abuse of discretion standard applies, and where the "procedural irregularities are smaller," the Court "may take additional evidence when the irregularities have prevented the full development of the administrative record."[63] As *Abatie* explains, "if the administrator did not provide a full and fair hearing, as required by ERISA ... the court must be in a position to assess the effect of that failure, and before it can do so, must permit the participant to present additional evidence."[64] As above, MetLife's recitation of the law completely ignores *Abatie's* clear requirement that the court allow additional evidence when <u>any</u> irregularity, even small ones, prevented the full development of the administrative record.

Finally, MetLife overlooks that *Abatie* states that additional evidence may be admitted on the "nature, extent, and effect on the decision-making process of any <u>conflict of interest</u>."[65] The skepticism and weight of the conflict of interest increases where the administrator "provides inconsistent reasons for the denial, fails to adequately investigate the claim or ask for necessary evidence, [or] fails to credit a claimant's reliable evidence."[66] Thus, under *Abatie,* additional evidence is admissible on the effect of the conflict of interest such as where the administrator provides new reasons for the last denial or fails to ask for necessary evidence.[67]

---

[63] *Abatie*, 458 F.3d at 973.
[64] *Id.* at 973.
[65] *Id.* (emphasis added).
[66] *Abatie*, 458 F.3d at 968 (citations deleted).
[67] See *Abatie*, 458 F.3d at 974 n. 9 (a "last minute switch" in the reasons for the final denial could suggest "serious self-dealing" and could be "also categorized as a procedural irregularity where, as here, the plan participant is foreclosed from presenting any response to the new reason.").

Plaintiff's Reply and Opposition to Cross Motion for Summary Judgment
*Valenote v. MeLife*, Case No. 3:05-cv-00196 (TMB)
Page 31 of 38

### b. Based on Defendant's Procedural Irregularities, The Court should Admit Ms. Valenote's Additional Evidence

The primary additional evidence submitted by Plaintiff Valenote is Dr. Polston's February 2006 opinion that Ms. Valenote is disabled under the MetLife policy, (i.e., she could not earn 80% of her pre-disability earnings as an intern architect), and the February 2005 functional capacity examination, which showed that Ms. Valenote could not perform even a sedentary level of work for more than four hours. Dr. Polston is a specialist in pain medicine, and continued Ms. Valenote's treatment after Dr. Anderson, the prior primary attending doctor, left his pain clinic around March 2004. Dr. Polston reviewed the FCE and Ms. Valenote's October 2003 employer-approved intern architect job description, and the physical exertion requirements in 29 CFR Section 404.1567. Dr. Polston opined that Ms. Valenote's job duties as an intern architect indicated a light to medium level of work. Dr. Polston also opined that Ms. Valenote is incapable of sustaining a sedentary level of work for an 8 hour day.[68] Dr. Polston is qualified to provide these opinions as Ms. Valenote's treating physician. Not surprisingly, MetLife wants to strike this important additional evidence.[69]

Under *Abatie*, this evidence is admissible regardless of whether the Court applies a de novo review or an abuse of discretion standard. As stated above,

---

[68] *See* Affidavit of Dr. Polston at Exhibits 1 through 7.

[69] Valenote also provided Dr. Polston's treatment records from June 2004 to August 2006 as foundational support for his opinion. In addition, Ms. Valenote provided: (1) the affidavit of Daniela Valenote; (2) the affidavit of Virginia Valenote; (3) Dr. Anderson's full records, including her records showing Ms. Valenote's follow-up after the December 3, 2003 IDET (See V214-V266); (4) Dr. Lorentzen's medical records showing the foundation for his March 5, 2004 letter on disability to MetLife; (5) medical records of other medical providers that MetLife failed to gather during the administrative process; and (6) records of other medical providers showing Ms. Valenote's continuous treatment for her chronic pain condition.

Plaintiff's Reply and Opposition to Cross Motion for Summary Judgment
*Valenote v. MeLife*, Case No. 3:05-cv-00196 (TMB)
Page 32 of 38

*Abatie* states that changing the specific reasons at the last denial can be sufficiently egregious to justify de novo review of the decision.[70] This principle gains additional support from *May v. MetLife* in which the court admitted two doctors' opinions on the claimant's disability that were drafted two years <u>after</u> the close of the administrative record. *May* denied the defendant's motion to strike and explained that these documents were admissible to allow the claimant to respond to concerns raised by MetLife in the final appeal.[71]

Moreover, as also stated above, *Abatie* states that changing the specific reason at the last denial or failing to ask for relevant evidence in a clear manner permits admission of additional evidence on the effect of the conflict of the interest and the effect of procedural irregularities. As shown above, the administrative record shows that MetLife subjected Ms. Valenote to numerous procedural irregularities. In particular, MetLife flagrantly violated ERISA by failing to clearly request specific information on November 29, 2003 denial that it now says it needed and by changing its rationale at the last minute in the June 22, 2004 final denial. Both violations denied Ms. Valenote a full and fair review of her LTD claim.

At a minimum, these violations justify the expansion of the record to include the Dr. Polston's opinion on disability and the functional capacity examination regardless of whether the Court applies a de novo or an abuse of discretion standard. Simply put, this evidence shows serious self-dealing caused by the conflict of interest <u>and</u> the effect of the procedural irregularities in preventing a full and fair review of the claim at the administrative level. This additional evidence is admissible to show the distortions of the process and to

---

[70] *Abatie*, 458 F.3d at 974, and 974 n. 9.
[71] 2004 WL 2011460 (N.D.Cal. 2004) at 6 and 8.

Plaintiff's Reply and Opposition to Cross Motion for Summary Judgment
*Valenote v. MeLife*, Case No. 3:05-cv-00196 (TMB)
Page 33 of 38

"recreate what the administrative record would have been had the procedure been correct."[72]

Metlife's other arguments regarding the admission of this additional evidence are similarly baseless. For example, MetLife asserts that Dr. Polston's affidavit should be stricken because "it is not within the province of as a physician to opine that an individual does or does not satisfy the definition of disability under an ERISA plan."[73] Not surprisingly, MetLife offers no citation for this remarkable proposition nor does MetLife offer any reason that Dr. Polston is unqualified as a physician to offer the opinion he does.

Indeed, MetLife appears to confuse the issue of admissibility of evidence with its weight. In other words, it is preposterous to say that Dr. Polston is not qualified to offer an opinion regarding Ms. Valenote's disabity. Indeed, if the plan's definition of disability were so complex that even a qualified physician could not interpret it how could it possibly be understood by a layperson. Notably, MetLife does not even attempt to argue that the opinion is incorrect or unsupported; both arguments that would go the weight of the evidence as opposed to its admissibility. This is no doubt because MetLife has no grounds to make such a claim. Dr. Polston's opinion concludes by stating: "Based on her clinical presentation, diagnosis and <u>objective findings on the physical capacity evaluation</u> I feel that Ms. Valenote does meet the definition of disability and disabled."[74] This is precisely the sort of evidence that MetLife now claims Ms. Valenote was lacking. This demonstrates not only that MetLife failed to ask for the kind of evidence it evidently required of Ms. Valenote, but it appears that even if she had somehow read the administrator's mind and provided such evidence it still would

---

[72] *Abatie*, 458 F.3d at 973.
[73] Def.Cross Motion for SJ at 9.
[74] Polston Affidavit, Exhibit 1 at 1 (emphasis added).

Plaintiff's Reply and Opposition to Cross Motion for Summary Judgment
*Valenote v. MeLife*, Case No. 3:05-cv-00196 (TMB)
Page 34 of 38

have been rejected. MetLife has created a clever catch-22. But it forgets that as an administrator its role is as a fiduciary not a club wielding gate keeper.

Finally, MetLife makes the equally groundless argument that the affidavits of Ms. Valenote and her patient should be stricken as hearsay.[75] MetLife fails to identify what parts of the affidavits fall within this category. In any case, the only statements that could possibly constitute hearsay are statements by MetLife. As such, these statements are not hearsay because they within the definition of admissions by a party opponent pursuant to Fed. R. Civ. P. 801(d)(2).

### 6. JUDGMENT AWARDING BENEFITS IS A PROPER REMEDY

Metlife submits a footnote suggesting that this Court remand the disability determination to the fiduciary for further review under an abuse of discretion review.[76] The footnote indicates that the conflicted fiduciary who has committed significant procedural irregularities should be permitted to delay the award of benefits and take other actions. Granting judgment awarding Plaintiff back benefits, however, would not preclude MetLife from initiating further review of Ms. Valenote's continuing eligibility for long-term benefits.

First, the LTD denial here merits de novo review, and the Court will decide the disability issue on the merits. In de novo review, the Court admits additional evidence to fully develop an inadequate administrative record in order "to enable the full exercise of informed and independent judgment."[77] The affidavit of Dr. Polston and the other additional evidence completes the record here.

---

[75] Def. Cross Motion for SJ at 9.
[76] Def. Opp/Cross Motion for SJ at 24 n. 8.
[77] *Mongeluzo v. Baxter Travenol Disability Ben. Plan*, 46 F.3d 938, 943 (9th Cir. 1995). *See also, Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1096 (9th Cir. 1999) (Fletcher, C.J., concurring in part and dissenting).

Plaintiff's Reply and Opposition to Cross Motion for Summary Judgment
*Valenote v. MeLife*, Case No. 3:05-cv-00196 (TMB)
Page 35 of 38

Second, there is ample authority for granting judgment awarding retroactive ERISA benefits under either de novo review or abuse of discretion review.[78] Remand is not appropriate where there are no factual determinations to be made and remand is a useless formality. Again, the affidavit of Dr. Polston and the other additional evidence completes the record here.

Finally, the formulation of the remedy will need to be the subject of further briefing and proceedings. The Court has the discretion under ERISA "in forging equitable remedies."[79] This discretion has been exercised to award full benefits to the date of summary judgment where the fiduciary committed serious procedural violations that denied full and fair review of a claim.[80] Here the fiduciary

---

[78]   *See Canseco v. Const. Laborers Pension Trust*, 93 F.3d 600, 609 (9th Cir. 1996) (retroactive reinstatement of benefits; remand not required because reevaluation of merits was not required and no factual determinations needed to be made); *Dionida v. Reliance Standard Life Ins. Co.*, 50 F.Supp.2d 934, 942 (N.D.Cal. 1999) (de novo review and retroactive reinstatement of benefits); *Vanderklok v. Provident Life & Accident Ins. Co.*, 956 F.2d 610, 617 (6th Cir. 1992) (remand not necessary because fiduciary failed to follow statutory notice requirement and failed to give participant opportunity to present additional evidence); *Govindarajan v. FMC Corp.*, 932 F.2d 634 (7th Cir. 1991) (after remand produced another faulty decision, affirming award of retroactive entitlement to benefits under de novo and abuse of discretion review); *Grossmuller v. International Union, United Auto., Aerospace & Agric. Implement Workers of Am., UAW*, 715 F.2d 853, 858-59 (3rd Cir. 1983) (affirming reinstatement of benefits when procedure failed to comply with the ERISA); *Baker v. MetLife*, 2006 WL 3782852 (M.D.Tenn. 2006) at 22-23 (awarding long-term disability benefits, prejudgment interest, costs and attorney fees); *De Dios Cortes v. MetLife, Inc.*, 122 F.Supp.2d 121, 132-33 (D.Puerto Rico 2000) (fiduciary abused discretion and finding claimant was disabled; awarding retroactive long term disability benefits because there were no factual determinations to be made); *Dabertin v. HCR Manor Care, Inc.*, 235 F.Supp.2d 853, 867(N.D.Ill. 2002) (remand was "useless formality" and awarding severance benefits under abuse of discretion review).

[79]   *Grossmuller*, 715 F.2d at 859.

[80]   *See e.g., Laucks v. Provident Companies*, 1999 WL 33320463 (M.D.Pa. 1999) (awarding benefits from date of termination to summary judgment because

Plaintiff's Reply and Opposition to Cross Motion for Summary Judgment
*Valenote v. MeLife*, Case No. 3:05-cv-00196 (TMB)
Page 36 of 38

committed significant procedural deficiencies that denied full and fair review of the claim. An award of benefits retroactive from the date of judgment provides the appropriate remedy in this case, and an award prejudgment interest, costs and attorney fees to Plaintiff are warranted.

## CONCLUSION

For the foregoing reasons and for the reasons stated in Ms. Valenote's initial motion, Ms. Valenote requests that the Court grant Plaintiff's motion for summary judgment and deny Defendants' cross motion for summary judgment.

DATED this 16th day of March 2007.

| By: s/ Timothy Seaver | By:s/ George T. Freeman |
|---|---|
| Timothy W. Seaver | George T. Freeman |
| Seaver & Wagner, LLC | Attorney at Law |
| 421 West First Ave., Suite 250 | 1152 P Street |
| Anchorage, Alaska 99501 | Anchorage, Alaska 99501 |
| Tel. 907-646-9033 | Tel. 907-274-8497 |
| Fax. 907-276-8238 | Fax 907-274-8497 (call first) |
| Email: tseaver@seaverwagner.com | Email: gtf@gci.net |

---

fiduciary violated ERISA by failing to specifically provide the specific reasons for the denial).

Plaintiff's Reply and Opposition to Cross Motion for Summary Judgment
*Valenote v. MeLife*, Case No. 3:05-cv-00196 (TMB)
Page 37 of 38

CERTIFICATE OF SERVICE

I certify that on March 16, 2007
the foregoing document was served
electronically on:

Brewster H. Jamieson
Lane Powell LLC
301 West Northern Lights Blvd, Suite 301
Anchorage, Alaska 99503
Tel: 907-277-9511
Fax: 907-276-2631
Email: jamiesonb@lanepowell.com
Alaska Bar No. 84111122

s/ Timothy Seaver
Timothy Seaver

Plaintiff's Reply and Opposition to Cross Motion for Summary Judgment
*Valenote v. MeLife*, Case No. 3:05-cv-00196 (TMB)
Page 38 of 38